UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CENTER FOR INQUIRY, INC., AND ERIC MCCUTCHAN; | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | Case No. 4:24-cv-01039-O |
| MARY LOUISE NICHOLSON IN HER CAPACITY AS CLERK OF TARRANT COUNTY, TEXAS, AND PHIL SORRELLS IN HIS CAPACITY AS DISTRICT ATTORNEY OF TARRANT COUNTY, TEXAS; | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

---

**DEFENDANT-INTERVENOR THE ATTORNEY GENERAL OF TEXAS'S MOTION TO DISMISS**

---

i

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ........................................................................................................ ii

**TABLE OF AUTHORITIES** ............................................................................................... iii

**I.    BACKGROUND** ............................................................................................................ 1

**II.   STANDARD OF REVIEW** ........................................................................................... 2

**III.  ARGUMENTS AND AUTHORITIES** ........................................................................ 4

  **A**.  **Plaintiffs lack standing**. ............................................................................................ 4

    1.  Plaintiffs fail to show injury-in-fact. ................................................................... 4

    2.  Plaintiffs' purported injuries are not fairly traceable to the Defendants. ........... 6

    3.  Plaintiffs' purported injuries are not redressable by a favorable decision. ........ 11

    4.  CFI cannot establish associational or organizational standing. ........................... 12

  **B**.  **Plaintiffs fail to state a claim**. ................................................................................ 13

    1.  Establishment Clause ........................................................................................... 14

    2.  Equal Protection Clause ....................................................................................... 20

    3.  Article VI, Clause Three of the United States Constitution ................................. 21

    4.  Freedom of Speech .............................................................................................. 23

    5.  Unconstitutional conditions doctrine .................................................................. 23

**IV.  CONCLUSION** ............................................................................................................ 24

# TABLE OF AUTHORITIES

## Cases

*Am. Legion v. Am. Humanist Ass'n*,
588 U.S. 29 (2019) ................................................................ 18, 22, 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................ 4

*Barber v. Bryant*,
860 F.3d 345 (5th Cir. 2017) ................................................ 7

*Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*,
512 U.S. 687 (1994) ................................................................ 18

*Bennett v. Spear*,
520 U.S. 154 (1997) ................................................................ 8

*Camacho v. Ford Motor Co.*,
993 F.3d 308 (5th Cir. 2021) ................................................ 10

*Carney v. Adams*,
592 U.S. 53 (2020) ................................................................ 15

*City of Cleburne v. Cleburne Living Ctr.*,
473 U.S. 432 (1985) ................................................................ 25

*Clapper v. Amnesty Intern. USA*,
568 U.S. 398 (2013) ................................................................ 8, 13

*Coury v. Prot*,
85 F.3d 244 (5th Cir. 1996) ................................................ 3

*Ctr. for Inquiry, Inc. v. Marion Circuit Court Clerk*,
758 F.3d 869 (7th Cir. 2014) ................................................ 11

*Ctr. for Inquiry, Inc. v. Warren*,
Fed. App'x 325 (5th Cir. 2021) ........................................ passim

*Cty. of Allegheny v. Am. Civ. Lib. Un. Greater Pittsburgh Chapter*,
492 U.S. 573 (1989) ................................................................ 18, 23

*Cutter v. Wilkinson*,
544 U.S. 709, 719 (2005) ........................................................ 17

*Dep't of Tex., Veterans of Foreign Wars of the U.S. v. Tex. Lottery Comm'n*,
760 F.3d 427 (5th Cir. 2014) ................................................ 29

*Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ................................................................ 5

*Graham v. Richardson*,
    403 U.S. 365 (1971) ................................................................................. 30

*Harris v. Hahn*,
    827 F.3d 359 (5th Cir. 2016) ................................................................... 26

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363, 379 (1982) ................................................................. 15, 16

*Heller v. Doe*,
    509 U.S. 312 (1993) ................................................................................. 26

*Hewitt v. Helms*,
    482 U.S. 755 (1987) ................................................................................. 14

*Hobbie v. Unemployment Appeals Comm'n of Fla.*,
    480 U.S. 136 (1987) ......................................................................... 18, 22

*Home Builders Ass'n of Miss, Inc. v. City of Madison*,
    143 F.3d 1006 (5th Cir. 1998) ................................................................... 3

*Howery v. Allstate Ins. Co.*,
    243 F.3d 912 (5th Cir. 2001) ..................................................................... 3

*Hunt v. Washington Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ................................................................................. 16

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) ................................................................................... 9

*Johnson's Heirs v. Raphael*,
    42 So. 470 (La. 1906) .............................................................................. 20

*Koontz v. St. Johns River Water Mgmt. Dist.*,
    570 U.S. 595, 606 (2013) ........................................................................ 29

*Lemon v. Kurtzman*,
    403 U.S. 602 (1971) ......................................................................... 23, 24

*Lewis v. Casey*,
    518 U.S. 343 (1996) ................................................................................... 7

*Littlefield v. Forney Indep. Sch. Dist.*,
    268 F.3d 275 (5th Cir. 2001) ............................................................. 6, 29

*Locke v. Davey*,
    540 U.S. 712 (2004) ................................................................................. 17

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ..................................................................... 4

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .......................................................................... 5, 7, 15

*LULAC v. City of Boerne*,
    659 F.3d 421 (5th Cir. 2011) ..................................................................... 8

iv

*Marsh v. Chambers,*
   463 U.S. 783 (1983)........................................................................................ 19, 22

*Martinez v. Clark Cty., Nev.,*
   846 F. Supp.2d 1131 (D. Nev. 2012) .................................................................. 27

*Menchaca v. Chrysler Credit Corp.,*
   613 F.2d 507 (5th Cir. 1980) ................................................................................ 3

*Miss. St. Democratic Party v. Barbour,*
   529 F.3d 538, 546 (5th Cir. 2008) ......................................................................... 6

*Mortensen v. First Federal Savings & Loan Ass'n,*
   549 F.2d 884, 891 (3d Cir. 1977) .......................................................................... 4

*NAACP v. City of Kyle, Tex.,*
   626 F.3d 233 (5th Cir. 2010) .............................................................................. 15

*Norris v. Hearst Trust,*
   500 F.3d 454 (5th Cir. 2007) ................................................................................ 5

*Perry v. Sindermann,*
   408 U.S. 593 (1972) .......................................................................................... 30

*Plotkin v. IP Axess Inc.,*
   407 F.3d 690 (5th Cir. 2005) ................................................................................ 4

*Prison Legal News v. Livingston,*
   683 F.3d 201 (5th Cir. 2012) ................................................................................ 7

*Ramming v. United States,*
   281 F.3d 158 (5th Cir. 2001) ................................................................................ 3

*Regan v. Taxation Without Representation of Wash.,*
   461 U.S. 540 (1983) .......................................................................................... 30

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.,*
   547 U47, 66 (2006) ........................................................................................... 28

*Sherbert v. Verner,*
   374 U.S. 398 (1963) .......................................................................................... 30

*Smith v. United States,*
   508 U.S. 223 (1993) ............................................................................................ 9

*Sosna v. Iowa,*
   419 U.S. 393 (1975) .......................................................................................... 25

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016) ............................................................................................ 7

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998) ............................................................................................ 14

*Stewart v. Washington,*
   301 F. Supp. 610 (D.D.C. 1969) ......................................................................... 27

*Stockman v. FEC*,
    138 F.3d 144 (5th Cir. 1998) ................................................................................ 3

*Stringer v. Whitley*,
    942 F.3d 715 (5th Cir. 2019) ............................................................................. 14

*Suhre v. Haywood County*,
    131 F.3d 1083(4th Cir.1997) ............................................................................... 6

*Texas v. Johnson*,
    491 U.S. 397 (1989) .......................................................................................... 29

*Torcaso v. Watkins*,
    367 U.S. 488 (1961) ...................................................................................... 9, 10

*Town of Greece, N.Y. v. Galloway*,
    572 U.S. 565 (2014) .................................................................................... 18, 22

*Voting for Am., Inc. v. Steen*,
    732 F.3d 382 (5th Cir. 2013) ............................................................................. 28

*Wood v. Collier*,
    836 F.3d 534 (5th Cir. 2016) ........................................................................ 25, 26

*Zablocki v. Redhail*,
    434 U.S. 374 (1978) .......................................................................................... 25

*Zimmerman v. City of Austin, Tex.*,
    881 F.3d 378 (5th Cir. 2018) ........................................................................... 6, 8

**Statutes**

Act of April 13, 1891, 22d Leg., R.S., ch. 78, § 1, 1891 Tex. Gen. Laws 96, 96 ...................... 21

Act of June 2, 1969, 61st Leg., R.S., ch. 888, § 1.83(4), 1969 Tex. Gen. Laws 2707, 2716 ....... 21

Act of June 5, 1837, 1st Cong., R.S., § 1, 1837 Repub. Tex. Laws 233, 233, *reprinted in* 1 H.P.N. Gammel, *The Laws of Texas* 1822-1897, at 1293, 1293 (1898) ............................................. 20

Act of May 15, 1957, 55th Leg., R.S., ch. 322, § 1, 1957 Tex. Gen. Laws 785, 785 .................. 21

An Act Concerning Marriages (1715), *reprinted in* 23 *The State Records of North Carolina* 1 (Walter Clark ed., 1904) ......................................................................................... 19

An Act for the Publication of Marriages (1692), reprinted in 13 Archives of Maryland 450-51 (William Hand Browne ed. 1894 ............................................................................. 19

An Act Regulating Marriages § 2 (1824), *reprinted in Statutes of the State of Ohio* 569 (Joseph R. Swan ed., 1854) ............................................................................................... 20

Texas Fam. Code § 2.202 ................................................................................. passim

**Other Authorities**

*Atheism*, MERRIAM-WEBSTER ............................................................................ 12

Hon. Edward Bates, *Laws Regulating the Forms of Marriage in the United States*, 12 Am. L. Reg. 129, 133 (1864). ......................................................................................... 21

*Religion*, MERRIAM-WEBSTER ............................................................................................ 9

*Secular*, MERRIAM-WEBSTER ........................................................................................... 12

**Rules**

Fed. R. Civ. P. 12(b)(1)............................................................................................... 2, 3

Fed. R. Civ. P. 12(b)(6)............................................................................................... 3, 4

**Constitutional Provisions**

Tex. Const. of 1845, art. I, §§ 3-4 ................................................................................ 21

U.S. Const. amend. I ..................................................................................................... 17

U.S. Const. amend. XIV, § 1 ........................................................................................ 25

U.S. Const. Art. VI, cl. 3............................................................................................... 27

U.S. Const., Art. VI, cl. 3.............................................................................................. 27

TO THE HONORABLE UNITED STATES DISTRICT JUDGE REED O'CONNOR:

Defendant-Intervenor Ken Paxton in his Official Capacity as the Attorney General of Texas ("Attorney General") files this Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs' claims must be dismissed for lack of jurisdiction pursuant to Rule 12(b)(1) because the Plaintiffs lack standing. Alternatively, the Plaintiffs fail to state a claim upon which relief can be granted and their claims must be dismissed pursuant to Rule 12(b)(6).

## I.  BACKGROUND

Plaintiff Center for Inquiry, Inc. ("CFI") describes itself as "a purely secular organization" that "promotes values often denominated as 'secular humanism.'" Dkt. 11 at ¶ 19-20. Plaintiff Eric McCutchan is a "certified secular celebrant with the [CFI]" who "wishes to conduct marriage licenses for those seeking a non-religious marriage ceremony in Texas" and that McCutchan "has been requested to conduct multiple weddings," *Id.* at ¶ 22, 29. Plaintiffs claim that McCutchan has been prevented from conducting such ceremonies by Texas Family Code Section 2.202 ("Section 2.202"), which provides that a marriage ceremony may only be conducted by a licensed or ordained Christian minister or priest, a Jewish rabbi, a current, former, or retired federal judge, or, most relevant for this lawsuit, "a person who is an officer of a religious organization and who is authorized by the organization to conduct a marriage ceremony." Tex. Fam. Code § 2.202(a). Plaintiffs contend that Defendant Mary Louise Nicholson, the Tarrant County Clerk, "has not and will not record licenses returned by secular celebrants and other qualified officials that are not authorized to conduct marriage ceremonies, depriving Plaintiffs of rights secured by the U.S. Constitution." Dkt. 11 at ¶ 31. Plaintiffs contend that Defendant Phil Sorrells, the Tarrant County District Attorney, "may bring criminal charges against Mr. McCutchan or any other secular celebrant who attempts to solemnize a marriage in Texas in violation of Section 2.202 and is

therefore depriving Plaintiffs of rights secured by the U.S. Constitution." *Id*. Specifically, Plaintiffs argue that Section 2.202 violates the Establishment Clause, the Equal Protection Clause, Article VI of the United States Constitution, the Free Speech Clause and the unconstitutional conditions doctrine. *Id.* at 8-10.

Plaintiffs have previously brought a similar lawsuit against the Dallas County Clerk, in which the Fifth Circuit ruled that the Plaintiffs lacked standing because, by only suing the County Clerk and not the "County Prosecutor," "[a] favorable decision would not [have] fully redress[ed] the appellants' purported injury and eradicate barrier to legally solemnizing marriages" because the Plaintiffs "would still be open to prosecution" even if an injunction was entered against the County Clerk. *Ctr. for Inquiry, Inc. v. Warren*, Fed. App'x 325, 329 (5th Cir. 2021).[1] While Plaintiffs bring the present suit against both the Tarrant County Clerk and District Attorney, Plaintiffs' claims should nonetheless be dismissed once again for lack of standing or, alternatively, for failure to state a claim.

## II.    STANDARD OF REVIEW

**Rule 12(b)(1):**

Rule 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998). Accordingly, "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n*

---

[1] Although the constitutionality of Section 2.202 was not addressed by the Fifth Circuit (because the Fifth Circuit dismissed on standing grounds), the district court in *Warren*, considering substantially identical claims as in the present case, found that Section 2.202 was constitutional. *Ctr. for Inquiry, Inc. v. Warren*, No. 3:18-CV-2943-B, 2019 WL 3859310, at *13 (N.D. Tex. Aug. 16, 2019), *vacated on other grounds*, 845 F. App'x 325 (5th Cir. 2021).

*of Miss, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citing *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

**Rule 12(b)(6):**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the Court must accept all factual allegations as true, the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679. When reviewing a motion to dismiss for failure to state a claim, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383,

387 (5th Cir. 2010). "[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

### III.    ARGUMENTS AND AUTHORITIES

#### A.  Plaintiffs lack standing.

To establish standing, a plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant (causation); and (3) that is likely to be redressed by a favorable decision (redressability). *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). All three elements are "an indispensable part of the plaintiff's case" and the party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Both McCutchan and the CFI lack standing because they cannot show that they have suffered an injury-in-fact and because, even if they did suffer an injury-in-fact, such injury is not fairly traceable to the Defendants and cannot be redressed by a favorable decision.

#### 1.  Plaintiffs fail to show injury-in-fact.

To establish standing, a plaintiff must show an actual or imminent, concrete and particularized injury-in-fact. *Friends of the Earth*, 528 U.S. at 180. "[R]ules of standing recognize that noneconomic or intangible injury may suffice to make an Establishment Clause claim justiciable." *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 294 n.31 (5th Cir. 2001) (quoting *Suhre v. Haywood County*, 131 F.3d 1083, 1086 (4th Cir.1997)). Plaintiffs have not suffered any injury at all, even noneconomic or intangible, and thus fail to establish standing.

Plaintiffs allege that both McCutchan and CFI Austin have "been requested to conduct multiple weddings" but that they have been "required to inform these couples that secular celebrants, under Texas law, may not solemnize the marriage itself." Dkt. 11 at ¶ 29. As discussed below, CFI celebrants (including McCutchan) actually can solemnize marriages under Texas law.

But even if Plaintiffs were correct in their belief that they are prohibited from solemnizing marriages under Section 2.202, they cannot establish injury-in-fact because they have "failed to establish a serious intention to engage in conduct proscribed by law." *Zimmerman v. City of Austin, Tex.*, 881 F.3d 378, 389 (5th Cir. 2018). "Without concrete plans or any objective evidence to demonstrate a 'serious interest'" in violating a statute, McCutchan has "suffered no threat of *imminent* injury." *Miss. St. Democratic Party v. Barbour*, 529 F.3d 538, 546 (5th Cir. 2008). Plaintiffs directly state that they do not intend to perform marriage solemnizations which, they believe, would violate Section 2.202. Dkt. 11 at ¶ 29. Plaintiffs have not identified a concrete instance in which they would have solemnized a marriage but for Section 2.202. Therefore, they do not allege a "serious intent" to violate Section 2.202 and do not allege an actual or imminent injury-in-fact sufficient to establish standing.

Further, to establish standing the Plaintiffs must establish that they have suffered "an invasion of a legally protected interest." *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (quoting *Lujan*, 504 U.S. at 561). Plaintiffs do "not even argue for[] a free-standing right" under the Constitution to solemnize marriages; accordingly, not being able to do so is "not a 'relevant injury in fact'" for an Establishment Clause claim, or any other constitutional claim. *Prison Legal News v. Livingston*, 683 F.3d 201, 212 (5th Cir. 2012) (quoting *Lewis v. Casey*, 518 U.S. 343, 353 n.4 (1996)) (emphasis omitted). And even if there were such a right, it would not be violated by Section 2.202 because CFI celebrants can solemnize marriages under Section 2.202, as discussed *infra* at Section III.A.2. For an injury to be "concrete" for Article III purposes, "it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). The alleged harm to Plaintiffs is "no

harm" at all. *Id*. at 342.[2] Plaintiffs' claims should be dismissed for lack of standing because they have not alleged and cannot establish an actual or imminent concrete harm.

### 2.   Plaintiffs' purported injuries are not fairly traceable to the Defendants.

"The causation element does not require a party to establish proximate causation, but only requires that the injury be 'fairly traceable' to the defendant." *LULAC v. City of Boerne*, 659 F.3d 421, 428 (5th Cir. 2011) (citing *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997)). "[S]tanding cannot be conferred by a self-inflicted injury," as a self-inflicted injury would not be traceable to anyone besides the plaintiff himself. *Zimmerman*, 881 F.3d at 389; *see also Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 416 (2013) (A plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."). To the extent Plaintiffs do allege an injury-in-fact (they do not), their purported injury is entirely self-inflicted and is based on an (unfounded) fear of hypothetical future prosecution were they to try to solemnize a marriage in Texas. Plaintiffs contend that they are harmed by Section 2.202 because the CFI is not a religious organization and are therefore unable to solemnize marriages under Section 2.202. But the CFI is, in fact, a religious organization whose officers can lawfully solemnize marriages in Texas.

Plaintiffs assert that "[n]either Mr. McCutchan, nor any other [CFI] supporter in Texas who is a certified secular celebrant, is a person authorized to solemnize marriages pursuant to [Section 2.202]." Dkt. 11 at ¶ 27. Plaintiffs are mistaken. Any other CFI-certified secular celebrant,

---

[2] Plaintiffs complain that "ceremony solemnized by secular elected officials is often not an acceptable alternative." Dkt. 11 at ¶ 25. This is not a legally cognizable injury, but even if it was it would be an injury to the couple attempting to get married, not to the Plaintiffs. But even if a couple attempting to get married were plaintiffs in this suit, there would be no injury because a couple can perform whatever kind of ceremony they want and provide the County Clerk with proof of an informal marriage under Subchapter E of Section 2.202, obviating the need for a ceremony solemnized by a secular elected official. Tex. Fam. Code § 2.401 *et seq*.

including McCutchan, is authorized to solemnize a marriage pursuant to Section 2.202. Indeed, it would be unconstitutional to deny CFI celebrants the ability to solemnize marriages in Texas where that same right is extended to other religious organizations: "neither a State nor the Federal Government can constitutionally… aid those religions based on a belief in the existence of God as against those religions founded on different beliefs," such as "Buddhism, Taoism, Ethical Culture, Secular Humanism, and others." *Torcaso v. Watkins*, 367 U.S. 488, 495 & n.11 (1961). The CFI "promotes values often denominated as 'secular humanism.'" Dkt. 11 at ¶ 20. This Court should therefore interpret the term "religious organization" to include the CFI, as to hold otherwise would "raise serious constitutional doubts." *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018). ("Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems.").

Regardless of the constitutional-avoidance canon, the CFI is a "religious organization" within the ordinary meaning of that term. "When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993). The CFI  maintains that they are not a religious organization because they are laboring under the false notion that "the term 'religion' is defined as 'the service and worship of God or the supernatural." Dkt. 11 at ¶ 15 (quoting *Religion*, Merriam-Webster, at http://www.merriam-webster.com/dictionary/religion (as of December 19, 2024)). But Plaintiffs quote only one of three definitions of "religion" provided by Merriam-Webster, leaving out the following two definitions of religion: (1) "a personal set or institutionalized system of religious attitudes, beliefs, and practices;" or (2) "a cause, principle, or system of beliefs held with ardor and faith." *Religion*, Merriam-Webster; *see also Camacho v. Ford Motor Co.*, 993 F.3d 308, 312 (5th Cir. 2021) (To

determine the ordinary meaning of a term, courts "may consider a variety of sources, including dictionary definitions, judicial constructions of the term, and other statutory definitions."). There can be no doubt that the beliefs promoted by the CFI constitute "a cause, principle, or system of beliefs held with ardor and faith." It is not clear why Plaintiffs insist on incorrectly interpreting the term "religious organization" in a way that prevents them from solemnizing marriages. They need not do so. Their (mistaken) belief that they cannot solemnize marriages under Section 2.202 is therefore entirely self-inflicted and cannot be fairly traced to anyone else but the Plaintiffs themselves.

Further, and more importantly, it is commonly understood that a religious organization need not profess a belief in God or the supernatural to be considered a religion. As discussed above, the Supreme Court has recognized that a belief in God is not necessary to qualify an organization as a religious one and recognized that nontheistic and non-supernatural belief systems such as "Ethical Culture" and "Secular Humanism" are religions. *Torcaso*, 367 U.S. at 495 n.11. The Seventh Circuit recognized in a case similar to (but distinguishable from) this one, that many religious people, including "[a]dherents to Buddhism, Jainism, Shinto, and some forms of Taoism call themselves 'religious' despite the absence of gods in their faiths." *Ctr. for Inquiry, Inc. v. Marion Circuit Court Clerk*, 758 F.3d 869, 872 (7th Cir. 2014).[3] The point being there are

---

[3] The district court in *Warren* distinguished the statute at issue in *Marion* from Section 2.202 for several reasons. First, "the Indiana statute only allowed marriages to be solemnized by religious organizations who had 'clergy' and specifically provided accommodations for certain enumerated religions" that did not have clergy. *Warren*, 2019 WL 3859310, at *13 (citing *Marion*, 758 F.3d at 871). Second, in *Marion*, "counsel for Indiana had argued that certain religious and nonreligious groups, such as Buddhists and Humanists, were excluded under the statute because they 'do[ ] not treat marriage as a sacrament and do[ ] not have ... an "organizational commitment to marriage,"' yet the court found that other groups (Baha'i and German Baptists) would be ineligible for those same reasons, 'except that they ha[d] their own exceptions in [the statute].'" *Id*. But Section 2.202 "avoids these concerns by permitting any official of any religious organization, regardless of

numerous nontheistic or atheistic organizations that an ordinary person would immediately recognize as a religious organization. The ordinary meaning of the term "religious organization" therefore does not require belief in God or the supernatural.

The actual interpretation and implementation of Section 2.202 in practice also shows that it is not necessary to profess a belief in God or the supernatural to qualify as a religious organization under Section 2.202. As the Northern District noted in *Warren*, the Universal Life Church ("ULC"), which does not profess a belief in any God or the supernatural, can "lawfully solemnize marriages under Section 2.202." *Warren*, 2019 WL 3859310, at *9; *see also* "About the Universal Life Church," https://www.ulc.org/about (as of December 18, 2024) (Stating that the only two principles of the ULC are to "[d]o only that which is right" and that "[e]very individual is free to practice their religion however they like."). And the ULC does indeed regularly solemnize marriages in Texas. Universal Life Church, "How to get Ordained in Texas to Officiate," https://www.ulc.org/officiate-a-wedding/texas (as of January 13, 2025).[4]

Plaintiffs nonetheless assert that the CFI is a "purely secular organization that maintains that scientific methods and reasoning should be utilized in examining religious claims." Dkt. 11 at ¶ 19. Plaintiffs' use of the word "secular" is imprecise here because the CFI is not secular in the strict sense of that word, i.e. as an adjective to describe things, persons, or organizations that have

---

whether such official is 'clergy,' and by refraining from any test or inquiry in the sincerity or validity of any religious official's beliefs." *Id*. "Thus, unlike the Indiana statute and Indiana's actions in favoring certain religious sects over others, Texas's hands-off approach to marriage solemnization in this case does not constitute a violation of the Establishment Clause." *Id*.

[4] Explicitly atheist religious organizations also qualify as religious organizations. As Plaintiffs themselves note, the "Church of Bacon" is a religious organization that can solemnize marriages in Texas. Dkt. 11 at ¶ 15 n.1. The Church of Bacon advertises it is "made up of 95% atheists and agnostics" and that "if you believe in the existence of Bacon… you're welcome in our church!" *See* United Church of Bacon, https://unitedchurchofbacon.org/ (as of January 13, 2025).

no relation to religious belief. *See Secular*, MERRIAM-WEBSTER, at http://www.merriam-webster.com/dictionary/secular (as of December 23, 2024) (defining secular as "not overtly or specifically religious"). For example, a for-profit corporation that intentionally avoids taking a stance on any religious issue is a secular organization. The CFI is not secular because it adopts clear, specific, and overt religious beliefs, namely that it "denies that a supernatural source is required for life to have and for people to be guided by values and ethics." Dkt. 11 at ¶ 20. The rejection of God and the supernatural is a religious belief; a truly secular organization would take no stance on the issue. Thus, regardless of what they call themselves, the CFI is a religious organization both within the meaning of Section 2.202 and within the ordinary meaning of that term. Atheism is a religious belief. *Atheism*, MERRIAM-WEBSTER, at http://www.merriam-webster.com/dictionary/atheism (as of December 23, 2024) ("a philosophical *or religious* position characterized by disbelief in the existence of a god or any gods") (emphasis added).[5]

All this to say that the CFI is a religious organization within the meaning of Section 2.202(a)(3) and the CFI's officials can lawfully solemnize a marriage under Section 2.202. Any purported injury resulting from the Plaintiffs' inability to solemnize marriages in therefore entirely self-inflicted and cannot be fairly traced to the Defendants in this lawsuit, or, indeed, to any persons

---

[5] It seems that the CFI's resistance to calling itself a religious organization stems from the fact that the word "secular" is sometimes colloquially used synonymously with "atheist" or to describe a person or organization that professes atheism. It is therefore important to distinguish between "secular" used in the proper sense (an adjective to describe something that has no relation to religion at all) and the colloquial meaning of secular as synonymous with "atheist." The CFI is undoubtedly a secular organization in the colloquial sense of the word. But the fact that the CFI is "secular" in the colloquial sense does not mean that they are also secular in the proper sense. The Plaintiffs are, apparently, confused about this, and insist that the CFI's atheism means that they are therefore not a religious organization. The CFI is mistaken, however, because, again, atheism is a religious belief. The Plaintiffs' resistance to the religious label is the sole source of their purported injury in this case and is entirely the result of the Plaintiffs' mistaken conflation of the colloquial and proper meanings of the word secular.

or entities other than the Plaintiffs themselves. Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. If the Plaintiffs wish to persist in their mistaken belief that they are not a religious organization and therefore cannot solemnize a marriage under Section 2.202 they are welcome to do so, but they cannot establish standing in federal court based on that self-inflicted injury.

### 3. Plaintiffs' purported injuries are not redressable by a favorable decision.

In *Warren*, the Fifth Circuit held that the plaintiff-appellants lacked standing because the "County Prosecutor [was] not a party" to the case, thus even if the County Clerk was compelled to record marriages conducted by CFI officials (which was the relief requested) the appellants would "still be open to prosecution" under Section 2.202 and a "favorable decision would not fully redress the appellants' purported injury." *Warren*, 845 Fed. App'x at 328-29. Although the Plaintiffs now name both the Tarrant County Clerk and District Attorney as defendants, their purported injuries would still not be redressed by a favorable decision.

Plaintiffs request only injunctive and declaratory relief. "Requests for injunctive and declaratory relief implicate the intersection of the redressability and injury-in-fact requirements." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). "The redressability requirement limits the relief that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries." *Id.* "Because injunctive and declaratory relief 'cannot conceivably remedy any past wrong,' plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998)). "That continuing or threatened future injury, like all injuries supporting Article III standing, must be an injury in fact." *Id.* "For a threatened future injury to satisfy the imminence requirement, there must be at least a 'substantial risk' that the

injury will occur." *Id*. Because Plaintiffs have not alleged a continuing or threatened future injury, as discussed *supra* at Section III.A.1, their purported injuries are not redressable by the relief requested.

More importantly, "[r]edress is sought *through* the court, but *from* the defendant." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987). "The real value of the judicial pronouncement —what makes it a proper judicial resolution of a case or controversy rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*." *Id*. Plaintiffs have not alleged that Nicholson, in her capacity as County Clerk, would refuse to record a marriage solemnized by a CFI celebrant, nor have they alleged that Sorrells, in his capacity as District Attorney, would prosecute Plaintiffs under Section 2.202 if they conducted a ceremony without authorization. The injunctive relief requested against Defendants would therefore not actually "affect the behavior of the defendant towards the plaintiff" and would render any such relief a mere advisory opinion. *Id*.; *see also Carney v. Adams*, 592 U.S. 53, 54 (2020) (federal courts cannot issue advisory opinions).

### 4. CFI cannot establish associational or organizational standing.

The CFI lacks standing because it cannot establish associational or organizational standing. An organization may have Article III standing under a theory of either "associational standing" or "organizational standing*." NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010).

The CFI lacks organizational standing. An organization has standing to sue in its own right under an organizational theory if it satisfies the same well-known Article III requirements of injury-in-fact, causation, and redressability that apply to individuals. *NAACP*, 626 F.3d at 237 (citing *Lujan*, 504 U.S. at 560–61). "[A]n organization may establish injury in fact by showing that it had diverted significant resources to counteract the defendant's conduct; hence, the defendant's conduct significantly and 'perceptibly impaired' the organization's ability to provide its

'activities—with the consequent drain on the organization's resources. . . .'" *Id.* (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). The injury-in-fact must be "concrete and demonstrable" and must constitute "far more than simply a setback to the organization's abstract social interests." *Havens*, 455 U.S. at 379. The CFI has not alleged that it has "diverted significant resources to counteract the defendant's conduct" resulting in a "drain on the organization's resources." In fact, the CFI alleges that it has intentionally declined to engage in the solemnization of marriages. Further, for the reasons discussed above with regard to traceability, any such drain on the CFI's resources that did occur was an entirely self-inflicted injury and therefore traceable only to the CFI itself. Finally, and again for the reasons discussed above, the relief requested by Plaintiffs would not redress their alleged injuries. The CFI therefore lacks organizational standing.

The Supreme Court has recognized that an association may have standing to assert the claims of its members even where the association itself has suffered no injury from the challenged activity. *Hunt v. Washington Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id*. For the reasons discussed above, individual members of the CFI (such as McCutchan) do not have standing to sue in their own right because they cannot establish injury-in-fact, traceability, or redressability. For this reason, the CFI lacks associational standing.

### B. Plaintiffs fail to state a claim.

In *Warren*, the Northern District correctly concluded that Plaintiffs failed to state a claim upon which relief can be granted for their Establishment Clause, Equal Protection Clause, Article VI, and unconstitutional conditions claims. *Warren*, The 2019 WL 3859310, at *6-17. As

discussed below, the district court's analysis in that case remains applicable here. In addition to those four claims, Plaintiffs claim that Section 2.202 also violates the Freedom of Speech Clause of the First Amendment. For the reasons set forth below, Plaintiffs fail to state a claim for the violation of the Freedom of Speech Clause.

### 1. Establishment Clause

The First Amendment's Religion Clauses, made applicable to the States via the Fourteenth Amendment, provide: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. "The first of the two Clauses, commonly called the Establishment Clause, commands a separation of church and state." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). "The second, the Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Id*. "While the two Clauses express complementary values, they often exert conflicting pressures." *Id*. (citing *Locke v. Davey*, 540 U.S. 712, 718 (2004) ("These two Clauses ... are frequently in tension."). This tension exists in part because the Supreme Court "has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause." *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144–45 (1987) (footnote omitted). "A proper respect for both the Free Exercise and the Establishment Clauses compels the State to pursue a course of 'neutrality' toward religion, ... favoring neither one religion over others nor religious adherents collectively over nonadherents.*" Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 696 (1994) (cleaned up).

"[T]he Establishment Clause must be interpreted 'by reference to historical practices and understandings.'" *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 577 (2014). (quoting *Cty. of Allegheny v. Am. Civ. Lib. Un. Greater Pittsburgh Chapter*, 492 U.S. 573, 670 (1989) (Kennedy,

J., concurring)). The Establishment Clause was created out of "respect and tolerance for differing views, an honest endeavor to achieve inclusivity and nondiscrimination, and a recognition of the important role that religion plays in the lives of many Americans." *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 60 (2019) (plurality op.). When "monuments, symbols, and *practices* with a longstanding history follow in that tradition, they are [] constitutional." *Id.* (emphasis added). However, the Establishment Clause "must not be understood as permitting a practice that would amount to a constitutional violation if not for its historical foundation." *Town of Greece*, 572 U.S. at 577 (citing *Marsh v. Chambers*, 463 U.S. 783 (1983)).

### i. Section 2.202 reflects a longstanding practice that follows the tradition of religious neutrality.

From the founding of this Country to the present day, States have limited the class of individuals authorized to solemnize a marriage. Ceremonial marriage, as a religious sacrament, was generally recognized first in the Church. In England, for instance, only religious ministers—and only those of the Anglican Church—could validly solemnize a marriage. The marriage ceremony, moreover, could take place only inside of an Anglican "parish church or publick chapel." An Act for the Better Preventing of Clandestine Marriages, 26 Geo. II c. 33 (1753); *see also* Wendy Kennett, *The Place of Worship in Solemnization of a Marriage*, 30 J.L. & Religion 260, 266-67 (2015). Many Colonies carried similar rules over to America. *See, e.g.*, An Act for the Publication of Marriages (1692), reprinted in 13 Archives of Maryland 450-51 (William Hand Browne ed. 1894). Sometimes, however, practical difficulties prevented couples from using a minister. In 1715, for example, the General Assembly of North Carolina noted that "there is yet no Minister in this Country by whom the said persons may be joined in Wedlock, according to the Rites & Customs of our natural Country, the Kingdom of England." An Act Concerning Marriages (1715), *reprinted in* 23 *The State Records of North Carolina* 1 (Walter Clark ed., 1904).

15

Accordingly, it passed a law permitting couples to have their marriages solemnized—and recognized by the State—by civil authorities as an alternative. Couples could "repair[] to the Governor or any one of the Council" to solemnize a marriage. *Id*. In that case the couple would be deemed lawfully married "as if they had been married by a Minister according to the Rites and Customs of England." *Id*.

The States continued this practice after forming into a Union without an established religion. Some States continued to limit the class of officiants to religious officiants. Maryland, for example, permitted only religious ministers to solemnize a marriage. An Act Concerning Marriages (1777), *reprinted in Laws of Maryland* ch. 12 (Frederick Green ed., 1787). Other States maintained slightly broader rules. Ohio authorized "any ordained minister of any religious society" and "any justice of the peace in his county" to solemnize a marriage. An Act Regulating Marriages § 2 (1824), *reprinted in Statutes of the State of Ohio* 569 (Joseph R. Swan ed., 1854). Louisiana and Georgia did the same. *See Johnson's Heirs v. Raphael*, 42 So. 470, 470 (La. 1906) (noting Louisiana laws "have always required" solemnization "by [1] a priest, minister, or [2] some duly authorized public officer").

Texas's laws tell a similar story. The First Congress of the Republic of Texas passed a marriage law providing that only "ordained Ministers of the Gospel" and state and local judges were "authorized to celebrate the rites of matrimony." Act of June 5, 1837, 1st Cong., R.S., § 1, 1837 Repub. Tex. Laws 233, 233*, reprinted in* 1 H.P.N. Gammel, *The Laws of Texas* 1822-1897, at 1293, 1293 (1898). When Texas entered the Union in 1845, it had the same law on the books even though the State Constitution contained disestablishment provisions. See Tex. Const. of 1845, art. I, §§ 3-4. It maintained the same laws after the Fourteenth Amendment was ratified roughly twenty years later. Over the next 100 years, the Texas Legislature gradually expanded the category

of individuals authorized to solemnize marriages to include ministers of other religions and federal judges. *See* Act of April 13, 1891, 22d Leg., R.S., ch. 78, § 1, 1891 Tex. Gen. Laws 96, 96, *reprinted in* 10 Gammel, *supra*, at 98 (adding Jewish rabbis); Act of May 15, 1957, 55th Leg., R.S., ch. 322, § 1, 1957 Tex. Gen. Laws 785, 785 (adding "officers of [other] religious organizations"); Act of June 2, 1969, 61st Leg., R.S., ch. 888, § 1.83(4), 1969 Tex. Gen. Laws 2707, 2716 (adding federal judges). But consistent with the longstanding practice across this country, Texas law always provided that a marriage "in order to be valid, had, under usage and custom, to be celebrated under one of two forms—before a magistrate or with some religious sanction." Hon. Edward Bates, *Laws Regulating the Forms of Marriage in the United States*, 12 Am. L. Reg. 129, 133 (1864).

For nearly two hundred years, the State of Texas has limited marriage solemnization to religious and civil officers. Other States (and the colonies before them) have done the same thing for even longer—even after they disestablished state churches and even after the ratification of the Fourteenth Amendment. "In light of the unambiguous and unbroken history of more than 200 years, there can be no doubt" that Texas may, consistent with the Establishment Clause, recognize solemnity only where a marriage ceremony has been officiated by a religious official or a judge. *Marsh v. Chambers*, 463 U.S. 783, 792 (1983). That history is dispositive: A "practice[] with a longstanding history" like the history detailed here is constitutional. *Am. Legion*, 139 S. Ct. at 2089 (plurality op.); *see Town of Greece*, 572 U.S. at 575 (noting the *Marsh* Court "found [other] tests unnecessary"). The text of Section 2.202 provides for the neutrality required by the Establishment Clause, as it allows any religious official from any organization which so much as claims to be a religious organization to solemnize marriages.

If Section 2.202(a)(1)-(3) did not exist, the only way a couple could solemnize a marriage would be through a current, former, or retired judge. Tex. Fam. Code § 2.202(a). The fact that Section 2.202 recognizes marriages solemnized by religious officials, following the longstanding tradition of such marriages detailed above, does not amount to an establishment of religion. *Am. Legion*, 588 U.S. at 60. Allowing solemnization by religious officials is an accommodation for the free exercise of religion, as permitted by the Free Exercise Clause of the First Amendment. *Hobbie*, 480 U.S. at 144–45 ("[T]he government may (and sometimes must) accommodate religious practices and [] it may do so without violating the Establishment Clause."); *see also Cty. of Allegheny v. Am. Civ. Lib. Un. Greater Pittsburgh Chapter*, 492 U.S. 573, 672 (1989) ("Some endorsement is inherent in these reasonable accommodations, yet the Establishment Clause does not forbid them.") (Kennedy, J., concurring). The only thing governments may not do is "coerce anyone to support or participate in any religion" or give direct benefits to a religion that "in fact establishes a [state] religion." *Id*. at 659; *see id*. at 672. Section 2.202 does neither. Section 2.202 is perfectly neutral, as it allows officials of any religious organization to solemnize marriage. Tex. Fam. Code § 2.202(a)(3). The fact that officials of non-religious organizations are prohibited from solemnizing marriages does not mean that Section 2.202 is an establishment of religion. Neither the Establishment Clause nor the Free Exercise Clause requires the government to provide accommodations for non-religious beliefs when it has chosen to accommodate religious ones. No one could seriously contend that any official of any non-religious organization should be permitted to solemnize a marriage. Thus, even Plaintiffs were correct that CFI celebrants cannot solemnize marriages because the CFI is not a "religious organization" within the meaning of Section 2.202, it would make no difference, as Section 2.202 simply does not violate the Establishment Clause.

18

### ii.  The *Lemon* test should not apply here, but Section 2.202 nevertheless satisfies it.

The *Lemon* test states that a statute violates the Establishment Clause if it: (1) lacks a legitimate secular purpose; (2) has the primary effect of advancing or inhibiting a religion; or (3) fosters an excessive entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971). While *Lemon* has not been outright overruled, it has long been recognized as a lemon: "*Lemon* Court ambitiously attempted to find a grand unified theory of the Establishment Clause, in later cases, we have taken a more modest approach that focuses on the particular issue at hand and looks to history for guidance." *Am. Legion*, 588 U.S. at 60; *see also id.* at 49 ("In many cases, this Court has either expressly declined to apply the test or has simply ignored it… This pattern is a testament to *Lemon*'s shortcomings."); *id.* at 78 (The *Lemon* test has been "long-discredited.") (Thomas, J., concurring in the judgment).[6] Because the Statue reflects a longstanding practice and follows the tradition of religious neutrality, it is unnecessary to apply *Lemon*. However, even if the *Lemon* test could be properly applied to this case, Section 2.202 satisfies that test.

First, Section 2.202 plainly has a legitimate secular purpose: it establishes what kinds of ceremonies will be recognized by the (secular) State authorities as legitimate for purposes of solemnizing a marriage. *See* Tex. Fam. Code § 2.202(a).  The fact that it provides an accommodation for religious ceremonies does not negate this legitimate secular purpose. Second, Section 2.202 does not have the "primary effect of advancing or inhibiting a religion," as it treats all religions equally and provides for secular ceremonies for those who do not desire a religious

---

[6] The district court in *Warren* (mis)applied the *Lemon* test on the basis that "the historical foundation of this Statute [Section 2.202] supports only part of the Statute as written." That was a mistake; Section 2.202 is constitutional because Section 2.202 reflects a longstanding practice that follows in the tradition of religious neutrality. It is neither necessary nor proper to apply *Lemon*, and Plaintiffs implicitly recognize this as they do not bring up *Lemon* in their Complaint. *See generally* Dkt. 11.

ceremony. *See id*. Third, it does not "foster excessive entanglement with religion" because, again, it allows for secular ceremonies for those who wish. Thus, although the *Lemon* test should not apply to this case, Section 2.202 nevertheless is constitutional under that test.

### 2. Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment prohibits a government entity from engaging in three categories of discriminatory acts: those that (1) burden a fundamental right; (2) target a suspect class; or (3) treat one group or individual differently from a similarly situated group without a rational basis for the difference. *See Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016); U.S. Const. amend. XIV, § 1. This case does not implicate the fundamental right to marry. *See Zablocki v. Redhail*, 434 U.S. 374, 383 (1978) (fundamental right to marry is protected by the Fourteenth Amendment). Plaintiffs do not argue that Section 2.202 somehow prevents humanist couples from entering into a marital union. Nor is there a fundamental right to officiate a wedding celebration with follow-on recognition of solemnity by a state government. The State, rather, has the "absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created." *Sosna v. Iowa*, 419 U.S. 393, 404 (1975). Nor does this case involve a suspect classification. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-42 (1985) (collecting suspect classes). "Therefore, Section 2.202 involves the third category of equal-protection claims: a so-called 'class of one' claim where Plaintiffs bear the burden to show that: (1) Section 2.202 intentionally treats them differently from similarly situated individuals; and (2) that there is no rational basis for that unequal treatment." *Warren*, 2019 WL 3859310, at *14 (citing *Wood*, 836 F.3d at 539). "Typically, a class of one involves a discrete group of people, who do not themselves qualify as a suspect class, alleging the government has singled them out for differential treatment absent a rational reason." *Wood*, 836 F.3d at 541. This test is highly deferential: "Statutory classifications are given broad deference under rational basis review and will survive

20

'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Harris v. Hahn*, 827 F.3d 359, 365 (5th Cir. 2016) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

This case does not involve a "class of one," as Plaintiffs cannot show that Section 2.202 singles out either McCutchan or the CFI for differential treatment, nor can they show that secular humanists as a group are singled out for differential treatment. *Wood*, 836 F.3d at 539. And even if this case did involve a class of one, it is both rational and a legitimate goal for Texas to accommodate both religious belief and secular belief, while still maintaining some limitations on who is authorized to perform marriages, in order to maintain the respect and solemnity that marriage deserves. Further, as the district court in *Warren* recognized, "there is a rational basis for Section 2.202's limitation based on both the historical practice of allowing judicial and religious officials to solemnize marriages, and because these individuals and their respective organizations can reasonably be expected to ensure the prerequisites to marriage are met and that the ceremony contains the necessary level of respect and solemnity without the need for significant involvement and oversight by the state." *Warren*, 2019 WL 3859310, at *15. Plaintiffs therefore fail to state a claim for a violation of the Equal Protection Clause.

### 3. Article VI, Clause Three of the United States Constitution

Article VI, clause 3 of the United States Constitution, sometimes known as the Religious Test Clause, provides that "no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States." U.S. Const., Art. VI, cl. 3. The plain text of this clause indicates that "Office of public Trust" is limited to individuals holding public office through election or appointment, such as the "Senators," "Representatives," "Members of the several State Legislatures," and "executive and judicial Officers" included in the clause as "bound by Oath or Affirmation, to support this Constitution." U.S. Const. Art. VI, cl. 3. The original purpose also

makes clear that it is limited to individuals holding elected or appointed office, as it was enacted in response to "the odious test oaths that emerged in Britain in the 17th century, and which disqualified from public office all Catholics and non-conformists not subscribing to the doctrines of the Church of England." *Stewart v. Washington*, 301 F. Supp. 610, 611 (D.D.C. 1969); *see also* An Act for Preventing Dangers Which May Happen from Popish Recusants, 25 Car. II, c. 2 (1673) (applying to persons holding "any Office or Offices Civill or Military").

In light of the plain text and original purpose of the clause, it cannot reasonably be read to mean that persons "grant[ed] the official authority to solemnize marriages to private individuals" are officers of public trust, but that is nonetheless the reading that Plaintiffs urge. Dkt. 11 at ¶ 50. In support, Plaintiffs cite a decision from District of Nevada, in which the parties "failed to adequately brief the issue" and in which the Court simply assumed without discussion or decision that the authority to solemnize marriages was a position of public trust. *Martinez v. Clark Cty., Nev.*, 846 F. Supp.2d 1131, 1145 (D. Nev. 2012). The Nevada court decided that a Nevada statute similar to Section 2.202 at issue here may have violated the Religious Test Clause because "[p]ractically speaking, it is fair to say that religious organizations do not tend to place in those types of positions people who do not profess to believe the religious organization's tenets." *Id*. This is poor reasoning for two reasons. First, practically speaking, there are numerous "churches" which do not actually require a person to profess religious beliefs of any kind and will ordain as a minister anybody with an email address. *See*, e.g., Universal Life Church, "Become an Ordained Minister https://www.ulc.org/#begin-ordination (which allows individuals to "Get Ordained Instantly" without professing any beliefs at all, religious or otherwise). Second, it is the religious organizations themselves who determine if a celebrant is qualified to solemnize a marriage, not the State. The fact that Section 2.202 allows for religious organizations to determine whether an

official is qualified to solemnize marriage does not mean that Section 2.202 creates a religious test for an office or public trust in violation of the Religious Test Clause.

### 4. Freedom of Speech

Plaintiffs assert that "[o]n its face and as applied to Plaintiffs, Section 2.202 restricts expression and speech based on content and viewpoint because it only denied individuals who wish to perform marriage ceremonies in a non-religious way." Dkt. 11 at ¶ 59. Section 2.202 is not a content-based or viewpoint-based restriction on speech. In fact, it is not a restriction on speech in any way at all, because Section 2.202 does not restrict any expressive conduct. As a threshold matter for First Amendment Freedom of Speech claims, "only conduct that is 'inherently expressive' is entitled to First Amendment protection." *Voting for Am., Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013) (quoting *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U47, 66 (2006)). "In evaluating whether particular conduct possesses 'sufficient communicative elements' to implicate First Amendment protections, courts must ask whether '[a]n intent to convey a particularized message was present, and … [whether] the likelihood was great that the message would be understood by those who viewed it.'" *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 283 (5th Cir. 2001) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)). While the performance of a marriage ceremony is doubtless expressive conduct, Section 2.202 does not place any restrictions on what type of marriage ceremony can be performed. Any person can perform any kind of marriage ceremony they want to perform; Section 2.202 merely provides for ceremonies that have legal effect. Section 2.202 therefore places no restrictions on any expressive conduct and does not violate the First Amendment.

### 5. Unconstitutional conditions doctrine

The unconstitutional conditions doctrine prohibits States from "burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise

them." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013), The preceding discussion demonstrates that the Plaintiffs' constitutional rights have not been burdened at all. Further, the unconstitutional conditions doctrine requires the denial of a "valuable governmental benefit." *Dep't of Tex., Veterans of Foreign Wars of the U.S. v. Tex. Lottery Comm'n*, 760 F.3d 427, 437 (5th Cir. 2014) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). The State's recognition of certain marriage ceremonies as sufficient to solemnize marriages does not confer a "valuable government benefit" on anyone within the meaning of the doctrine. "Valuable government benefits" include, for example, tax exemptions, *Regan v. Taxation Without Representation of Wash.*, 461 U.S. 540 (1983); welfare payments, *Graham v. Richardson*, 403 U.S. 365 (1971); and unemployment benefits, *Sherbert v. Verner*, 374 U.S. 398 (1963). No court has ever held that the right to solemnize a marriage is a valuable government benefit under the unconstitutional conditions doctrine.

## IV.    CONCLUSION

For all the foregoing reasons, the Attorney General asks that Plaintiffs claims be dismissed with prejudice in their entirety.

Respectfully submitted.

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

*/s/ Mason Currah*
**MASON CURRAH**
Texas Bar No. 24133305
Assistant Attorney General
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 475-4072
Fax: (512) 320-0667
Mason.Currah@oag.texas.gov
**LEAD COUNSEL FOR DEFENDANT**

### CERTIFICATE OF SERVICE

I certify that on January 15, 2025, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Mason Currah*
**MASON CURRAH**
Assistant Attorney General