**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| CENTER FOR INQUIRY, INC., | § | |
| AND ERIC MCCUTCHAN, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 4:24-CV-01039-O |
| | § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| MARY LOUISE NICHOLSON in her | § | |
| capacity as Clerk of Tarrant County, Texas, | § | |
| and PHIL SORRELLS in his capacity as | § | |
| District Attorney of Tarrant County, Texas, | § | |
| | § | |
| Defendants. | § | |

---

**PLAINTIFFS' BRIEF IN OPPOSITION OF DEFENDANTS' MOTION TO DISMISS**

---

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 3

STANDARD OF LAW ........................................................................................................ 5

ARGUMENT ...................................................................................................................... 6

   I.     Plaintiffs Have Standing to Bring Their Constitutional Claims ........................................ 6

      a.    Eric McCutchan Has Individual Standing .................................................................. 7

      b.    CFI Has Associational Standing ................................................................................ 9

   II.     Section 2.202 Violates the Establishment Clause ..........................................................11

   III.   Section 2.202 Violates the Equal Protection Clause ...................................................... 13

   IV.   Section 2.202 Imposes an Impermissible Religious Test............................................... 15

   V.    Section 2.202 Violates the Freedom of Speech Clause.................................................. 16

   VI.   Section 2.202 Imposes an Unconstitutional Condition.................................................. 18

   VII.  Plaintiffs Are Entitled to Declaratory and Injunctive Relief......................................... 19

CONCLUSION.................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis,*
    600 U.S. 570 (2023).................................................................................17

*AFGE, Local 1617 v. FLRA,*
    103 F. App'x 802 (5th Cir. 2005) ............................................................5

*Allen v. Walmart Stores, LLC,*
    907 F.3d 170 (5th Cir. 2018) ...................................................................6

*Am. Humanist Ass'n v. McCarty,*
    851 F.3d 521 (5th Cir. 2017) ...........................................................11, 13

*Armour v. City of Indianapolis,*
    566 U.S. 673 (2012).................................................................................13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................6

*Babbitt v. UFW Nat'l Union,*
    442 U.S. 289 (1979)...................................................................................8

*Barber v. Bryant,*
    860 F.3d 345 (5th Cir. 2017) ....................................................................8

*Barker v. Conroy,*
    282 F. Supp. 3d 346 (D.D.C. 2017) ......................................................16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...................................................................................6

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013)...................................................................................6

*Ctr. for Inquiry, Inc. v. Marion Circuit Court Clerk,*
    758 F.3d 869 (7th Cir. 2014) .......................................................2, 12, 13

*Dep't of Texas, Veterans of Foreign Wars of U.S. v. Texas Lottery Comm'n,*
    760 F.3d 427 (5th Cir. 2014) ..................................................................19

*G & V Lounge, Inc. v. Michigan Liquor Control Comm'n,*
    23 F.3d 1071 (6th Cir. 1994) ..................................................................18

*Harold H. Huggins Realty, Inc. v. FNC Inc.*,
  634 F.3d 787 (5th Cir. 2011) ..................................................................6

*Heckler v. Mathews*,
  465 U.S. 728 (1984).............................................................................7

*Houston Chronicle v. City of League City*,
  488 F.3d 613 (5th Cir. 2007) ..................................................................9

*Hunt v. Wash. State Apple Adver. Comm'n*,
  432 U.S. 333 (1977).............................................................................10

*Integrity Collision Ctr. v. City of Fulshear*,
  837 F.3d 581 (5th Cir. 2016) ..................................................................13

*Jones v. Greninger*,
  188 F.3d 322 (5th Cir. 1999) ..................................................................6

*Justice v. Hosemann*,
  771 F.3d 285 (5th Cir. 2014) ..................................................................9

*Kennedy v. Bremerton School Dist.*,
  597 U.S. 507 (2022)..........................................................................2, 11

*La Unión del Pueblo Entero v. Abbott*,
  Case No. 5:21-CV-0844-XR, 2024 WL 4337515 (W.D. Tex. Sept. 28, 2024).........................9

*Lee v. Wesiman*,
  505 U.S. 577 (1992).............................................................................11

*March for Life v. Burwell*,
  128 F. Supp. 3d 116 (D.D.C. 2015) ..........................................................15

*Martinez v. Clark Cty., Nev.*,
  846 F. Supp. 2d 1131 (D. Nev. 2012) ....................................................2, 7, 16

*McLin v. Twenty-First Judicial Dist.*,
  79 F.4th 411 (5th Cir. 2023) ..................................................................5

*Murthy v. Missouri*,
  603 U.S. 43 (2024)...............................................................................6

*Nat'l Press Photographers Ass'n v. McCraw*,
  90 F.4th 770 (5th Cir. 2024) ..................................................................9

*Northeastern Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of
  Jacksonville, Fla.*,
  508 U.S. 658 (1993)..............................................................................7

*Perry v. Sindermann*,
 408 U.S. 593 (1972) ........................................................................................18, 19

*Planned Parenthood Ass'n of Hidalgo Cty. Texas, Inc. v. Suehs*,
 692 F.3d 343 (5th Cir. 2012) .............................................................................2, 19

*Reed v. Town of Gilbert*,
 576 U.S. 155 (2015)............................................................................................1, 2

*Roake v. Brumley*,
 No. 24-517-JWD-SDJ, 2024 WL 4746342 (M.D. La. Nov. 12, 2024) ...................11

*Skelly Oil Co. v. Phillips Petrol. Co.*,
 339 U.S. 667 (1950)................................................................................................19

*Society of Separationists, Inc. v. Herman*,
 939 F.2d 1207 (5th Cir. 1991) ...............................................................................16

*Speech First, Inc. v. Fenves*,
 979 F.3d 319 (5th Cir. 2020) ..............................................................................1, 9

*Steffel v. Thompson*,
 415 U.S. 452 (1974)..................................................................................................8

*Texas Cable & Telecommunications Ass'n v. Hudson*,
 265 F. App'x 210 (5th Cir. 2008) .......................................................................7, 8

*Texas Democratic Party v. Benkiser*,
 459 F.3d 582 (5th Cir. 2006) .................................................................................10

*Torcaso v. Watkins*,
 367 U.S. 488 (1961).......................................................................................*passim*

*Town of Greece v. Galloway*,
 572 U.S. 565 (2014)..........................................................................................11, 12

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
 582 U.S. 449 (2017)................................................................................................18

*United States v. Barlow*,
 41 F.3d 935 (5th Cir. 1994) ...................................................................................12

*Universal Life Church Monastery Storehouse v. Nabors*,
 35 F.4th 1021 (6th Cir. 2022) ..................................................................................8

*Vill. of Willowbrook v. Olech*,
 528 U.S. 562 (2000)..................................................................................................2

*Wallace v. Jaffree*,
  472 U.S. 38 (1985)................................................................................................12

*West Virginia State Board of Education v. Barnette*,
  319 U.S. 624 (1943)..............................................................................................17

*Wood v. Collier*,
  836 F.3d 534 (5th Cir. 2016) ...............................................................................13

*Zorach v. Clauson*,
  343 U.S. 306 (1952)..............................................................................................11

**Statutes, Rules, and Other Authority**

Fed. Decl. Judgment Act, 28 U.S.C. § 2202 .............................................................19

TEX. FAM. CODE § 2.009 ............................................................................................5

TEX. FAM. CODE §§ 2.202-2.208 ...............................................................................5

TEX. FAM. CODE § 2.202.................................................................................. *passim*

TEX. FAM. CODE § 2.302 ........................................................................................4, 14

FED. R.CIV. P. 12(b)(1) ..............................................................................................5

FED. R.CIV. P. 12(b)(6) .............................................................................................5, 6

FED. R.CIV. P. 17(d) ...................................................................................................5

U.S. CONST. art. VI ......................................................................................... *passim*

U.S. CONST. amend. I...................................................................................... *passim*

U.S. CONST. amend. XIV .........................................................................................2, 13

Plaintiffs file this opposition to the Motion to Dismiss filed by Defendants, the Clerk and District Attorney of Tarrant County, Texas. Plaintiffs' First Amended Complaint challenges Texas Family Code Section 2.202 ("Section 2.202"), which requires a marriage to be solemnized by either religious officiants or certain government officials, while denying any other secular individuals the same right to solemnize a marriage. Plaintiffs have adequately plead a violation of their constitutional rights, and consequently have standing to bring this suit and Defendants' Motion to Dismiss should be denied.

## <u>INTRODUCTION</u>

The United States Constitution protects the rights of non-religious individuals to the same extent as it protects the rights of religious individuals. The idea that every United States citizen is entitled to the freedom to choose any religion—or none at all—is interwoven throughout the fabric of the Constitution. The First Amendment precludes the government from requiring a person to proclaim religious faith to serve in a government role. *See Torcaso v. Watkins*, 367 U.S. 488, 495-96 (1961). That same amendment also forbids the government from taking actions that constitute an "establishment of religion." U.S. Const. amend. I. Moreover, that amendment also "prohibits the enactment of laws 'abridging the freedom of speech.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting U.S. Const. amend I.). Separately, Article VI of the United States Constitution provides that "no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States." U.S. Const. art. VI, cl. 3.

Section 2.202 flies in the face of the principles of religious freedom and free speech deeply rooted in our Constitution by preventing secular individuals from performing the government function of solemnizing marriages, while affording this function to religious officiants. Section 2.202 is unconstitutional for five separate reasons. *First*, it is unconstitutional under the

Establishment Clause of the First Amendment because Section 2.202 is inconsistent with historical practices and understandings; and nevertheless, unconstitutionally coerces individuals to associate with a religious organization to solemnize marriages or for individuals to be married by those who did not share their belief system. *See Kennedy v. Bremerton School Dist.*, 597 U.S. 507, 535, 537 (2022). *Second*, Section 2.202 violates the Equal Protection Clause of the Fourteenth Amendment because it treats secular celebrants differently from similarly situated religious clergy, without a conceivable rational reason for the differing treatment. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). *Third*, Section 2.202 violates Article VI of the Constitution because it impermissibly requires a religious test for any individual seeking the authority to solemnize a marriage by requiring a person to profess a religious faith before being given the legal authority to solemnize a marriage. U.S. Const. art. VI, cl. 3. *Fourth*, it violates the Freedom of Speech Clause of the First Amendment because it abridges freedom of speech by denying secular individuals the ability to solemnize marriages and express its belief system and philosophies during legal marriage ceremonies. *See Reed*, 576 U.S. at 163. *Fifth*, Section 2.202 imposes an unconstitutional condition on the receipt of a government benefit by requiring secular celebrants to refrain from exercising their constitutional right to choose not to practice any religion. *See Planned Parenthood Ass'n of Hidalgo Cty. Texas, Inc. v. Suehs*, 692 F.3d 343, 348-49 (5th Cir. 2012).

Moreover, Plaintiffs have standing to bring this suit, as they have been denied the opportunity to lawfully solemnize marriage ceremonies due to the fact they are unable to truly claim a religious faith. Several courts across the country have already considered the validity of similar state laws. *See, e.g., Ctr. for Inquiry, Inc. v. Marion Circuit Court Clerk*, 758 F.3d 869, 874-75 (7th Cir. 2014) (issuing an injunction allowing certified secular celebrants to solemnize marriages in Indiana with legal effect and without risk of criminal penalties); *Martinez v. Clark*

*Cty., Nev.*, 846 F. Supp. 2d 1131, 1140, 1144-45, 1147 (D. Nev. 2012) (finding standing and denying motion to dismiss claims based on violations of the Establishment Clause, the Religious Test Clause, and the Equal Protection Clause). For these reasons, and as further detailed below, Defendants' Motion to Dismiss should be denied.

## BACKGROUND

Plaintiff CFI is a non-profit organization whose mission is to foster a secular society based on reason, science, freedom of inquiry, and humanist values. First Amended Complaint ¶ 18 [ECF No. 11] (hereinafter, "Am. Compl."). Its vision is a world where people value evidence and critical thinking, where superstition and prejudice subside, and where science and compassion guide public policy. *Id.* CFI is a secular organization, but maintains that there are basic human values and ethical principles that should govern human behavior. *Id.* ¶ 19. Those core values include integrity, trustworthiness, benevolence, and fairness. *Id.* ¶ 20. CFI offers a secular template that may guide persons in pursuing fulfilling and humane lives—lives that are rich intellectually, ethically, and emotionally—without reliance on religious faith. *Id.* ¶ 21. CFI, therefore, presents for its supporters[1] a detailed and structured philosophy of life. *Id.* CFI has over 30,000 supporters throughout the country, and over 1,000 supporters in Texas. *Id.* ¶ 17.

One important component of CFI's vision for a secular society is its secular celebrants program. Through this program, CFI trains individuals like Plaintiff Eric McCutchan, to solemnize marriage ceremonies in a way that both conveys the appropriate gravity and respect for the occasion, and that enables a couple to integrate their philosophical and ethical beliefs into the ceremony—much the same way that a religious officiant conducts a religious wedding ceremony. *See id.* ¶¶ 3, 22-23. As an organization, CFI desires that its secular celebrants perform weddings

---

[1] CFI more commonly refers to its members as supporters.

for all those who request them, both supporters and non-supporters. *Id.* ¶ 26. CFI believes this to be an important community service for persons desiring to have a meaningful, but non-religious marriage ceremony. *Id.* Moreover, having its secular celebrants perform marriages is an important way for CFI to assert, express, and publicize the organization's philosophical and ethical views. McCutchan is a member/supporter of CFI and a graduate of the secular celebrants program who is authorized by CFI to solemnize marriage ceremonies. *Id.* ¶ 7, 22.

However, neither McCutchan nor any other CFI certified secular celebrant is able to lawfully solemnize marriages in Texas because Section 2.202 specifies that marriages must be conducted by only a small number of secular officials—namely current and retired judges—and a large number of persons associated with religious organizations. Section 2.202 provides, in relevant part:

> (a)    The following persons are authorized to conduct a marriage ceremony:
>
> > (1)    a licensed or ordained Christian minister or priest;
> >
> > (2)    a Jewish rabbi;
> >
> > (3)    a person who is an officer of a religious organization and who is authorized by the organization to conduct a marriage ceremony; and
> >
> > (4)    a current, former, or retired federal judge or state judge.

TEX. FAM. CODE § 2.202(a). A marriage ceremony conducted by an unauthorized person may be invalid, and a person who knowingly conducts a marriage ceremony in Texas without requisite authority is guilty of a criminal offense (i.e., a Class A misdemeanor). *Id.* §§ 2.202(c), 2.302.

Accordingly, persons seeking to celebrate a secular marriage ceremony in Texas must either choose from a list of unfamiliar state and federal judges or forsake their secular philosophies and employ a religious celebrant. While Section 2.202 provides a range of potential officiants for religious couples, for secular couples the statute offers just a single option—current, former, or

4

retired judges. *See id.* § 2.202(a)(4). In doing so, Section 2.202 restricts secular couples from choosing an officiant that knows them personally and/or an officiant that shares the couples' philosophical and moral belief system that can incorporate that belief system into the wedding ceremony.

Defendant Mary Louise Nicholson is the duly elected County Clerk of Tarrant County, Texas, and was sued in her official capacity pursuant to Federal Rule of Civil Procedure 17(d). Texas law mandates that the county clerk issue marriage licenses to those who intend to become or have already become legally married. *Id.* § 2.009. However, because Section 2.202 prohibits Plaintiffs from legally solemnizing a marriage, Texas clerks cannot lawfully accept a marriage certificate signed by secular celebrants such as Plaintiff McCutchan. *Id.* §§ 2.202-2.208.

Defendant Phil Sorrells is the duly elected District Attorney of Tarrant County, Texas, and was sued in his official capacity pursuant to Federal Rule of Civil Procedure 17(d). Pursuant to Section 2.202(c), Phil Sorrells may bring criminal charges against McCutchan or any other secular celebrant who attempts to solemnize a marriage in Texas in violation of Section 2.202. *Id.* § 2.202.

## **STANDARD OF LAW**

Defendants bring their Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A defendant may challenge subject-matter jurisdiction pursuant to Rule 12(b)(1). *McLin v. Twenty-First Judicial Dist.*, 79 F.4th 411, 415 (5th Cir. 2023). Courts analyzing a Rule 12(b)(1) Motion must "take[] the plaintiff's alleged facts as true." *AFGE, Local 1617 v. FLRA*, 103 F. App'x 802, 804 (5th Cir. 2005). Further, "[a] Rule 12(b)(1) motion may be granted only when it appears certain that the plaintiffs cannot prove any set of facts in support of their claim that would entitle them to relief." *Id.*

5

Under Rule 12(b)(6), a complaint may be dismissed only for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Courts analyzing a complaint must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). A complaint will survive a motion to dismiss where it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Allen v. Walmart Stores, LLC*, 907 F.3d 170, 177 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Harold H. Huggins Realty, Inc. v. FNC Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678). The court may draw such an inference where the factual allegations are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

### I.    Plaintiffs Have Standing to Bring Their Constitutional Claims

Plaintiffs have standing to bring their constitutional claims because they have suffered a cognizable injury in fact. A plaintiff has standing when they can show that (1) they have "suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent;" (2) "fairly traceable to the challenged action;" and (3) "redressable by a favorable ruling.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Defendants make no arguments in their Motion alleging that Plaintiffs have failed to show that their injury in fact is "fairly traceable" to the challenged action or that it is redressable by a favorable ruling. *See* Ds' Mot. at 3-6. As such, Plaintiffs focus on Defendants' arguments concerning that there is no cognizable injury in fact that is actual or imminent.

### a. Eric McCutchan Has Individual Standing

McCutchan has standing as an individual to challenge the constitutionality of Section 2.202. A constitutional injury, such as the injuries alleged, is an injury-in-fact sufficient to confer standing. Courts note that "[d]iscriminatory treatment at the hands of the government is an injury 'long recognized as judicially cognizable.'" *Texas Cable & Telecommunications Ass'n v. Hudson*, 265 F. App'x 210, 218 (5th Cir. 2008) (quoting *Heckler v. Mathews*, 465 U.S. 728, 738 (1984)). The Supreme Court has held repeatedly that, "[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Northeastern Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 658, 666 (1993); *see also Martinez*, 846 F. Supp. 2d at 1140 (finding plaintiffs had standing to challenge Nevada's marriage solemnization law).

McCutchan has suffered an injury in fact because Section 2.202 has erected a barrier that makes it more difficult to obtain a benefit. CFI's belief system provides its members with moral and ethical principles that guide the way its members interact with other people and their environment, much the same way that a religion provides moral and ethical guidance to its adherents. CFI's secular celebrants are trained to bring solemnity and gravity to a marriage ceremony in a manner that reflects the couple's moral and philosophical beliefs, much the same way religious clergy are trained to bring solemnity and gravity to a religious marriage ceremony. Secular celebrants and religious celebrants are similarly situated parties, yet they are treated unequally under the law. Section 2.202 allows religious celebrants to obtain a benefit—the ability

to lawfully solemnize a marriage—but erects a barrier that prevents secular celebrants from being able to do the same. "[N]o further showing of suffering based on unequal positioning is required for purposes of standing." *Texas Cable*, 265 F. App'x at 218.

Moreover, Defendants' attempts to pigeonhole McCutchan's claims as merely stigmatic based on Section 2.202's statutory text is inapposite. *See* Ds' Mot. at 3-4. To make this argument, Defendants wholly rely on *Barber v. Bryant*, which involved a constitutional challenge towards a Mississippi statute because the statute's language sent a "'clear message' . . . that the 'state government disapproves of and is hostile to same-sex couples, to unmarried people who engage in sexual relations, and to transgender people.'" *See Barber v. Bryant*, 860 F.3d 345, 351-52 (5th Cir. 2017). However, Plaintiffs are not bringing constitutional violation claims based on the "message" that Section 2.202 solicits, but rather bring claims based on the unequal and disparate treatment of secular individuals wishing to solemnize marriages or be married by secular celebrants. As explained above, this "unequal positioning" is all that is required for purposes of standing. *See Texas Cable*, 265 F. App'x at 218.

Further, Defendants' arguments that McCutchan's claims are not imminent because he has not indicated a current plan to illegally solemnize a marriage, sign a wedding license, and return it to the clerk should be disregarded. *See Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 302 (1979) ("[W]hen fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative a plaintiff need not 'first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute.'" (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974))). McCutchan is a resident of Tarrant County, Texas, and has been trained as an officiant—a secular celebrant—and would perform marriage ceremonies in Tarrant County if he were not at risk of criminal prosecution. *See* Am. Compl. ¶¶ 1, 7, 22, 29; *see also Universal Life Church Monastery*

8

*Storehouse v. Nabors*, 35 F.4th 1021, 1034-36 (6th Cir. 2022) (finding standing to sue district attorneys when individual plaintiffs resided in that county and sought to solemnize marriages in that county).

In addition, Plaintiffs' freedom of speech claims are provided even more pre-enforcement protection as courts have "repeatedly held . . . that '[c]hilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement.'" *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330-31 (5th Cir. 2020) (quoting *Houston Chronicle v. City of League City*, 488 F.3d 613, 618 (5th Cir. 2007)); *see also Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024) ("[S]tanding rules are relaxed for First Amendment cases so that citizens whose speech might otherwise be chilled by fear of sanction can prospectively seek relief." (quoting *Justice v. Hosemann*, 771 F.3d 285, 294 (5th Cir. 2014))). Notably, nowhere in Defendants' Motion do they claim they would not prosecute under Section 2.202—they merely state that "McCutchan does not allege that the District Attorney has ever prosecuted someone for violating Section 2.202." *See* Ds' Mot. at 5. But "[t]o establish a credible fear of enforcement . . . a plaintiff may, but need not, rely on a history of past enforcement of similar policies or direct threats to enforce the challenged policies." *La Unión del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR, 2024 WL 4337515, at *20 (W.D. Tex. Sept. 28, 2024). Instead, a "plaintiff whose speech is subject to the challenged restriction can establish standing even when the defendant disavows any intention to enforce the policy." *Id.; see also Fenves*, 979 F.3d at 337 ("[I]f there is no history of inappropriate or unconstitutional past enforcement, and no intention to pursue discipline . . . under these policies for speech that is protected by the First Amendment, then why maintain the policies at all?").

### b. CFI Has Associational Standing

To the extent that CFI asserts that Section 2.202 harms its supporters/members who are seeking to solemnize marriages and/or become married, CFI has adequately alleged associational

standing to bring this claim and to withstand a motion to dismiss.  An association has standing to sue on behalf of its members where "(1) the association's members would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members." *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

CFI has standing because its supporters/members, including McCutchan, have suffered an injury-in-fact and would have standing to bring their constitutional claims.  As explained above, CFI outlines a set of ethical and moral standards that serve the same function in its supporters' lives as religion does in the lives of non-secular individuals.  Yet Section 2.202 provides religious couples a benefit that it denies to secular couples—the ability to have a wedding performed by a celebrant who shares their ethical and moral values, and is trained to incorporate those values into the ceremony.  Section 2.202 plainly treats like groups unequally, and no further showing of suffering is necessary to establish injury-in-fact; CFI's supporters would have standing to bring their claims.

Further, CFI's stated mission is to "foster a secular society based on reason, science, freedom of inquiry, and humanist values." Am. Compl. ¶ 18.  By bringing this lawsuit, CFI seeks to protect its supporters' constitutional right to have their secular, humanist values reflected in their wedding ceremonies.  This interest is not only germane, but central to CFI's stated purpose of fostering a secular and humanist society.  And while CFI can adequately protect this interest and assert these claims without the participation of individual supporters/members, McCutchan is a supporter/member who is a party to the suit.

Section 2.202 treats Plaintiffs unequally before the law. As a result, Plaintiffs have suffered a cognizable injury-in-fact and have standing to bring their claims to protect their constitutional interests.

## II.    Section 2.202 Violates the Establishment Clause

The Establishment Clause prohibits the government from making any law which constitutes an "establishment of religion." U.S. Const. amend. I. This remains the case despite the recent changing landscape of the Establishment Clause. Prior to the Supreme Court's recent decision in *Kennedy v. Bremerton School District*, "[t]he Supreme Court generally applied at least one of three tests under the Establishment Clause." *Roake v. Brumley*, No. 24-517-JWD-SDJ, 2024 WL 4746342, at *55 (M.D. La. Nov. 12, 2024) (quoting *Am. Humanist Ass'n v. McCarty*, 851 F.3d 521, 525 (5th Cir. 2017)). These three tests included (1) the *Lemon* Test, (2) the Endorsement Test, and (3) the Coercion Test. *Id.* Under the coercion test, "unconstitutional coercion occurs where '(1) the government directs (2) a formal religious exercise (3) in such a way as to oblige the participation of objectors.'" *Id.* (quoting *McCarty*, 851 F.3d at 525 n.12). In *Kennedy*, the Supreme Court denounced the *Lemon* and Endorsement Tests and noted that the Establishment Clause must be interpreted by "reference to historical practices and understandings." *Kennedy*, 597 U.S. at 535 (quoting *Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014)). However, the Supreme Court re-emphasized that it "has long held that government may not, consistent with a historically sensitive understanding of the Establishment Clause, 'make a religious observance compulsory.'" *Id.* at 536-37 (quoting *Zorach v. Clauson*, 343 U.S. 306, 314 (1952)). For example, the "Government 'may not coerce anyone to attend church,' . . . nor may it force citizens to engage in 'a formal religious exercise[.]'" *Id.* (quoting *Lee v. Wesiman*, 505 U.S. 577, 589 (1992)). Section 2.202 violates the Establishment Clause because (1) it is inconsistent with historical practices and understandings; and (2) it unconstitutionally coerces individuals to

associate with a religious organization to solemnize weddings and to be married by individuals who do not share their belief system.

Courts have long recognized that the First Amendment protects secular belief systems to the same extent it protects religious beliefs. *See, e.g., Wallace v. Jaffree*, 472 U.S. 38, 52-53 (1985) ("[T]he Court has unambiguously concluded that the individual freedom of conscience protected by the First Amendment embraces the right to select any religious faith or none at all."); *Torcaso*, 367 U.S. at 495 n.11 (including secular humanism in a list of "religions" that do not involve belief in a deity); *United States v. Barlow*, 41 F.3d 935, 944 (5th Cir. 1994) (noting the First Amendment encompasses "the right of an individual to practice the religion of his choice *or to be free from the practice of religion altogether*"). Courts have recognized that "[f]or hundreds of years, in the legal tradition that we inherited from England, the persons who could solemnize marriages included clergy, public officials, sea captains, notaries public, and the celebrants themselves." *Ctr. for Inquiry, Inc.*, 758 F.3d at 875. The fact that Texas has historical practices of limiting solemnization to religious individuals and state and local judges (and notably excluding others like notaries public) is not enough to dismiss Plaintiffs' claims. *See* Ds' Mot. at 7-8. As the Supreme Court wrote in *Town of Greece, N.Y. v. Galloway*, the law "must not be understood as permitting a practice that would amount to a constitutional violation if not for its historical foundation." 572 U.S. at 577. Plaintiffs do not contend that religious leaders have not been authorized to perform marriage ceremonies since the foundation of Texas, nor do they contend that religious leaders should now be prohibited from doing so. Plaintiffs likewise do not claim that states should not be allowed to specify which individuals may perform marriage ceremonies: Plaintiffs seek only to be included among those the state does authorize to perform such ceremonies.

Moreover, Section 2.202 unconstitutionally coerces secular celebrants to affiliate with a religion in order to solemnize a marriage or for a couple to be married by someone outside their own belief system.  Put another way—the government (through Section 2.202) is directing a formal religious exercise in such a way that obliges the participation of objectors.  *See McCarty*, 951 F.3d at 525 n.12.  The Defendants would have Mr. McCutchan or any other CFI secular celebrant simply become ordained by an Internet "church" because Section 2.202 does not concern the sincerity or validity of any religious official's beliefs.  However, this "fix" blatantly ignores the Plaintiffs' constitutional right to "select any religious faith or none at all," and would encourage the kind of "marriages performed by hypocrites" that the Seventh Circuit has already condemned. *See Ctr. for Inquiry*, 758 F.3d at 874.  Section 2.202 allows religious officials and couples to make their beliefs an integral part of their weddings but denies secular people the same right.

### III.    Section 2.202 Violates the Equal Protection Clause

Under the Equal Protection Clause of the Fourteenth Amendment, a state may not "deny any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  The Fourteenth Amendment prohibits a government entity from engaging in discrimination that (1) burdens a fundamental right, (2) targets a suspect class, or (3) treats one group or individual differently from a similarly situated group without a rational basis for the difference.  *See Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012).  The third type of claim is "cognizable as a so-called 'class of one.'"  *Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016).  A plaintiff may successfully prove a class of one claim by showing that "he or she was intentionally treated differently from others similarly situated" and "there was no rational basis for the difference in treatment."  *Id.*; *see also Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 586 (5th Cir. 2016).

Here, Plaintiffs have plausibly alleged that they are similarly situated to religious celebrants, but treated differently under Section 2.202. CFI's secular belief system serves the same purpose in its members' lives as a theistic religion. It is well settled that, for the purposes of constitutional analyses, secular beliefs should be considered on equal footing as religious ones. *See, e.g., Torasco*, 367 U.S. at 495 (noting the government may not "aid those religions based on a belief in the existence of God as against those religions founded on different beliefs"). In the same way that theistic religion provides ethical guidance to its adherents, CFI's belief system provides moral tenants to guide its members' lives. Similarly, just how religious couples seek to affirm their commitment to one another in a ceremony that reflects their beliefs, secular couples and CFI members wish to solemnize their commitment in a ceremony that reflects their moral and ethical views. And in the same way that ministers, clergy, and other religious officials are trained to bring gravity and solemnity to the proceedings, so too are CFI's celebrants trained to bring dignity to marriage ceremonies of secular couples. Accordingly, Plaintiffs are similarly situated to religious celebrants.

Yet, despite the overwhelming similarities, Plaintiffs are treated differently under Section 2.202 than celebrants who profess to have ties to a religious organization. Under Section 2.202, celebrants tied to a religious organization—even those that obtain their credentials without training through an online church such as the Universal Life Church—may perform a wedding ceremony and simultaneously solemnize the marriage. TEX. FAM. CODE § 2.202. CFI's secular celebrants, on the other hand, would commit a criminal misdemeanor offense if they attempted to do the same. *Id.* §§ 2.202(c), 2.302. To become legally married under Texas law, a secular couple must either disregard their deeply held personal beliefs and have their wedding ceremony performed by a religious clergy or public official or else have two marriage ceremonies—one performed by the

14

celebrant of their choosing (without legal effect), and one performed by a civil celebrant prescribed in the Family Code. By limiting secular couples to only one non-religious option—i.e., current, former, or retired judges—Section 2.202 effectively denies secular couples the opportunity to be legally married by a person the couple knows and/or by a person who shares their belief system and can incorporate that belief system into the wedding ceremony.

To be sure, Plaintiffs have alleged facts that plausibly show that there is no rational basis for allowing those connected to a religious organization—however tenuously—to perform marriage ceremonies, while denying Plaintiffs that same right. As discussed above, Section 2.202 condones marriages solemnized by "ministers" of the Universal Life Church which does not require any formal training or even that their clergy hold an articulable set of beliefs. This fact undermines any possible reasoning the Defendants might offer for treating secular celebrants differently from religious ones. Courts have recognized that when a statute "singl[es] out a specific trait for accommodation, and then exercis[es] from its protection an organization with that precise trait, it sweeps in arbitrary and irrational strokes that simply cannot be countenanced, even under the most deferential of lenses." *March for Life v. Burwell*, 128 F. Supp. 3d 116, 128 (D.D.C. 2015) (holding the contraceptive mandate as unconstitutional under the Equal Protection Clause because it treated March for Life differently than similarly situated employers). Accordingly, there can be no rational basis for the state to discriminate between secular celebrants and non-secular ones.

### IV.    Section 2.202 Imposes an Impermissible Religious Test

Article VI of the Constitution states that "no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States." U.S. Const. art. VI, cl. 3. Defendants' entire argument for dismissing Plaintiffs' Article VI cause of action is that "Article VI deals exclusively with senators, representatives, executive and judicial officers of the federal and state governments." Ds' Mot. at 10. While Plaintiffs agree that the area of law concerning the

Impermissible Religious Test is relatively limited, Defendants wholly fail to recognize that many courts have acknowledged that the Impermissible Religious Test applies to state officials like notaries public, jurors, and trial witnesses. *Barker v. Conroy*, 282 F. Supp. 3d 346, 366 (D.D.C. 2017) (noting that "jurors and notaries public . . . have been found by other courts to constitute offices of public trust") (citing *Torcaso*, 367 U.S. at 489; *Society of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1220-21 (5th Cir. 1991)). And at least one court has extended that protection to marriage officiants. In *Martinez v. Clark County*, the court denied the state's motion to dismiss an Article VI claim because the law at issue "limite[d] a position of public trust, the authority to solemnize marriages, only to persons who identify themselves with a religious organization." 846 F. Supp. 2d at 1145.

Requiring a person to "profess a belief or disbelief in any religion" in order to obtain a position of public trust is impermissible under Article VI. *See Torcaso*, 367 U.S. at 493; *Martinez*, 846 F. Supp. at 1144-45. The Texas law requires a person to profess a faith by associating themselves with a religious organization to be allowed to legally solemnize weddings. TEX. FAM. CODE § 2.202. The Texas law plainly violates Article VI and the fact that Defendants are state officials does not prevent Plaintiffs from bringing their claims.

## V.      Section 2.202 Violates the Freedom of Speech Clause

The Freedom of Speech Clause of the First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Protections under the First Amendment are quite broad:

> [T]he First Amendment protects an individual's right to speak his mind regardless of whether the government considers his speech sensible and well intentioned or deeply "misguided," and likely to cause "anguish" or "incalculable grief[.]" Equally, the First Amendment protects acts of expressive association. Generally too, the government may not compel a person to speak its own preferred messages. ***Nor does it matter whether the government seeks to compel a person to speak its***

> *message when he would prefer to remain silent or to force an individual to include other ideas with his own speech that he would prefer not to include.*

*303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023) (internal citations omitted) (emphasis added).

Defendants' contentions that Section 2.202 does not restrict speech, but conduct, does not align with recent Supreme Court precedent.  In *303 Creative LLC*, the Supreme Court addressed a Colorado law that "prohibits a public accommodation from denying 'the full and equal enjoyment' of its goods and services to any customer based on his race, creed, disability, sexual orientation, or other statutorily enumerated trait."  *Id.* at 581.  Plaintiff brought a cause of action alleging that this Colorado law violates the Freedom of Speech Clause of the First Amendment because "if she enters the wedding website business to celebrate marriages she does endorse, she faces a credible threat that Colorado will see to use [the statute] to compel her to create websites celebrating marriages she does not endorse."  *Id.*  Colorado argued that the case only involved "incidental" speech since the statute's language was just dealing with the sale of an ordinary commercial product (i.e., on its face did not restrict speech).  *Id.* at 593.  The Supreme Court, however, held that "Colorado does not seek to impose an incidental burden on speech" but instead "seeks to force an individual to 'utter what is not in [her] mind' about a question of political and religious significance."  *Id.* at 596 (quoting *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 634 (1943)).  Similarly, in the present case, this Court should disregard Defendants' characterization that because Section 2.202 regulates a marriage ceremony and does not explicitly regulate speech, that the freedom of speech clause is inapplicable to the statute.  As was the case in *303 Creative LLC*, the result of the statute was to either limit speech or force an individual to engage in speech that person does not wish to engage in.  *See id.*

Section 2.202 restricts expression and speech based on content and viewpoint because it only denies individuals who wish to perform marriage ceremonies in a non-religious way—and as a byproduct—only non-religious individuals are forced to either limit or change their intended speech. Moreover, Defendants minimize CFI's mission of expressing its deeply-held belief system with couples espousing that same belief system by providing different (and some would say lesser) options for speech outside of a legal marriage ceremony by indicating that secular celebrants can still "celebrate a wedding" or "hold education and social activities." Ds.' Mot. at 12-13. These alternatives are not sufficient to avoid the plain fact that Plaintiffs are being denied their freedom of speech rights.

## VI.    Section 2.202 Imposes an Unconstitutional Condition

The Supreme Court has long held that "[i]t is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 463 (2017) (internal quotations omitted). Under the Unconstitutional Conditions Doctrine, "[a] state actor cannot constitutionally condition the receipt of a benefit . . . on an agreement to refrain from exercising one's constitutional rights." *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1077 (6th Cir. 1994).

Defendants mischaracterize the Unconstitutional Conditions Doctrine by asserting that there is no violation of the doctrine because there is no constitutional right to solemnize marriages. *See* Ds' Mot. at 13. A law can nevertheless violate the doctrine whether or not an individual has a right to a government benefit. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). The courts have made it "clear that even though a person has no 'right' to a valuable governmental benefit . . . [i]t may not deny a benefit to a person on a basis that infringes his constitutionally protected interests."

*Dep't of Texas, Veterans of Foreign Wars of U.S. v. Texas Lottery Comm'n*, 760 F.3d 427, 437 (5th Cir. 2014) (quoting *Perry*, 408 U.S. at 597).

Here, the government is conferring a benefit to certain private individuals—the ability to legally solemnize marriages—and condition that benefit on the *express condition* that those individuals profess a religious faith. Secular celebrants are excluded based on this condition because they do not affiliate themselves with a religious organization or subscribe to a religious faith. It is irrelevant that the privilege is not expressly conferred in the constitution, because "the government, having no obligation to furnish a benefit, nevertheless cannot force a citizen to choose between a benefit and" his First Amendment rights. *Planned Parenthood Ass'n*, 692 F.3d at 348-49. Section 2.202 requires secular celebrants to choose between the government-provided benefit of authority to solemnize marriages, and the constitutional right not to be coerced into professing a religious affiliation. *See Torasco*, 367 U.S. at 492-93. The Plaintiffs have therefore plausibly stated a claim that Section 2.202 fails under the Unconstitutional Conditions Doctrine.

## VII.    Plaintiffs Are Entitled to Declaratory and Injunctive Relief

Section 2.202 is invalid, as it violates the Establishment Clause, the Equal Protection Clause, Article VI, the Freedom of Speech Clause, and the Unconstitutional Conditions Doctrine of the United States Constitution. Accordingly, Plaintiffs are entitled to declaratory and injunctive relief. *See* Fed. Decl. Judgment Act, 28 U.S.C. § 2202; *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950) (internal quotation marks omitted).

## CONCLUSION

Section 2.202 is unconstitutional because it violates (1) the Establishment Clause; (2) the Equal Protection Clause; (3) Article VI; (4) the Freedom of Speech Clause; and (5) the Unconstitutional Conditions Doctrine.  As such, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.

Dated: January 21, 2025

Respectfully submitted,

*/s/ M. Scott Barnard*
M. Scott Barnard
Texas State Bar No. 24001690
sbarnard@akingump.com
Madison M. Gafford
Texas State Bar No. 24120833
mgafford@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

ATTORNEYS FOR PLAINTIFFS

## Certificate of Service

I certify that on January 21, 2025, a copy of the above document was served on all counsel of record via ECF pursuant to Federal Rule of Civil Procedure 5.

*/s/ M. Scott Barnard*
M. Scott Barnard