**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| CENTER FOR INQUIRY, INC., | § | |
| AND ERIC MCCUTCHAN, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 4:24-CV-01039-O |
| | § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| MARY LOUISE NICHOLSON in her | § | |
| capacity as Clerk of Tarrant County, Texas, | § | |
| and PHIL SORRELLS in his capacity as | § | |
| District Attorney of Tarrant County, Texas, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' BRIEF IN OPPOSITION OF DEFENDANT-INTERVENOR THE
ATTORNEY GENERAL OF TEXAS'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................................. 1

**BACKGROUND** ................................................................................................................. 3

**STANDARD OF LAW** ...................................................................................................... 5

**ARGUMENT**...................................................................................................................... 6

    **I.**     **Plaintiffs Have Standing to Bring Their Constitutional Claims**................................... 6

        **a.**     **Plaintiffs Have Suffered a Cognizable Injury-in-Fact**............................................... 6

        **b.**     **Plaintiffs' Injuries Are Fairly Traceable to Defendants** ........................................... 8

        **c.**     **Plaintiffs' Injuries Are Redressable**......................................................................... 10

        **d.**     **CFI Has Associational Standing** ...............................................................................11

    **II.**     **Section 2.202 Violates the Establishment Clause** ..................................................... 12

        **a.**     **Section 2.202 is Not Neutral and Violates the Establishment Clause Under** *Kennedy* ..................................................................................................................... 12

        **b.**     **Section 2.202 Also Fails the** *Lemon* **Test**................................................................ 16

    **III.**     **Section 2.202 Violates the Equal Protection Clause**................................................. 18

    **IV.**     **Section 2.202 Imposes an Impermissible Religious Test**......................................... 20

    **V.**     **Section 2.202 Violates the Freedom of Speech Clause** ........................................... 22

    **VI.**     **Section 2.202 Imposes an Unconstitutional Condition** ........................................... 23

**CONCLUSION** ................................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
  600 U.S. 570 (2023) ....................................................................................................22, 23

*AFGE, Local 1617 v. FLRA*,
  103 F. App'x 802 (5th Cir. 2005) .................................................................................5

*Allen v. Walmart Stores, LLC*,
  907 F.3d 170 (5th Cir. 2018) .......................................................................................6

*Am. Civil Liberties Union of Ohio Found., Inc. v. DeWeese*,
  633 F.3d 424 (6th Cir. 2011) ......................................................................................17

*Am. Humanist Ass'n v. McCarty*,
  851 F.3d 521 (5th Cir. 2017) .................................................................................13, 15

*Armour v. City of Indianapolis*,
  566 U.S. 673 (2012) ....................................................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................6

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. Of Internal Med.*,
  103 F.4th 383 (5th Cir. 2024) .....................................................................................10

*Babbitt v. UFW Nat'l Union*,
  442 U.S. 289 (1979) ......................................................................................................7

*Backer ex rel. Freedman v. Shah*,
  788 F.3d 341 (2d Cir. 2015) .........................................................................................9

*Barker v. Conroy*,
  282 F. Supp. 3d 346 (D.D.C. 2017) ............................................................................20

*Bd. Of Educ. Of Kiryas Joel Vill. Sch. Dist. v. Grumer*,
  512 U.S. 687 (1994) ....................................................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................6

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ......................................................................................................6

*Committee for Public Ed. & Religious Liberty v. Nyquist*,
  413 U.S. 756 (1973)......................................................................................12

*Consumer Data Indus. Ass'n v. Texas*,
  No. 21-51038, 2023 WL 4744918 (5th Cir. July 25, 2023)....................................10

*Country of Allegheny v. ACLU Greater Pittsburgh Chapter*,
  492 U.S. 573 (1989)......................................................................................17

*Croft v. Perry*,
  624 F.3d 157 (5th Cir. 2010) .........................................................................17

*Ctr. for Inquiry, Inc. v. Marion Circuit Court Clerk*,
  758 F.3d 869 (7th Cir. 2014) ...............................................................14, 15, 21

*Ctr, for Inquiry, Inc. v. Warren*,
  No. 3:18-cv-02943, ECF No. 11 (N.D. Tex. Dec. 28, 2018)..................................2, 9

*Ctr. for Inquiry, Inc. v. Warren*,
  No. 19-11029, ECF No. 39 (5th Cir. Feb. 21, 2020) .........................................2, 9

*Ctr. for Inquiry, Inc. v. Warren*,
  845 F. App'x 325 (5th Cir. 2021) ..................................................................11

*Dep't of Texas, Veterans of Foreign Wars of U.S. v. Texas Lottery Comm'n*,
  760 F.3d 427 (5th Cir. 2014) .........................................................................24

*G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*,
  23 F.3d 1071 (6th Cir. 1994) .........................................................................23

*Glass v. Paxton*,
  900 F.3d 233 (5th Cir. 2018) .........................................................................10

*Harold H. Huggins Realty, Inc. v. FNC Inc.*,
  634 F.3d 787 (5th Cir. 2011) ..........................................................................6

*Heckler v. Mathews*,
  465 U.S. 728 (1984).......................................................................................6

*Hobbie v. Unemployment Appeals Comm'n of Fla.*,
  480 U.S. 136 (1987)......................................................................................14

*Houston Chronicle v. City of League City*,
  488 F.3d 613 (5th Cir. 2007) ..........................................................................8

*Hunt v. Wash. State Apple Adver. Comm'n*,
  432 U.S. 333 (1977)......................................................................................11

iv

*Integrity Collision Ctr. v. City of Fulshear,*
    837 F.3d 581 (5th Cir. 2016) ...................................................................................18

*Jones v. Greninger,*
    188 F.3d 322 (5th Cir. 1999) .....................................................................................5

*Justice v. Hosemann,*
    771 F.3d 285 (5th Cir. 2014) .....................................................................................8

*Kennedy v. Bremerton Sch. Dist.,*
    597 U.S. 507 (2022)............................................................................................12, 13

*Kinetica Partners, LLC v. U.S. Dep't of the Interior,*
    505 F. Supp. 3d 653 (S.D. Tex. 2020) .......................................................................9

*La Unión del Pueblo Entero v. Abbott,*
    No. 5:21-CV-0844-XR, 2024 WL 4337515 (W.D. Tex. Sept. 28, 2024)..................8

*Laird v. Tatum,*
    408 U.S. 1 (1972)......................................................................................................10

*Larkin v. Grendel's Den, Inc.,*
    459 U.S. 116 (1982)..................................................................................................18

*League of United Latin American Citizens, Dist. 19 v. City of Boerne,*
    659 F.3d 421 (5th Cir. 2011) .....................................................................................9

*Lee v. Wesiman,*
    505 U.S. 577 (1992)..................................................................................................13

*Lemon v. Kurtzman,*
    403 U.S. 602 (1971)..............................................................................13, 16, 17, 18

*Lynch v. Donnelly,*
    465 U.S. 668 (1984)..................................................................................................16

*March for Life v. Burwell,*
    128 F. Supp. 3d 116 (D.D.C. 2015) .........................................................................20

*Martinez v. Clark County,*
    846 F. Supp. 2d 1131 (D. Nev. 2012)...................................................................7, 21

*McLin v. Twenty-First Judicial Dist.,*
    79 F.4th 411 (5th Cir. 2023) ......................................................................................5

*Missouri v. Biden,*
    83 F.4th 350 (5th Cir. 2023) ....................................................................................11

*Murthy v. Missouri*,
603 U.S. 43 (2024) ......................................................................................................6

*Nat'l Press Photographers Ass'n v. McCraw*,
90 F.4th 770 (5th Cir. 2024) ......................................................................................8

*Northeastern Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*,
508 U.S. 658 (1993) ....................................................................................................7

*Perry v. Sindermann*,
408 U.S. 593 (1972) ..............................................................................................23, 24

*Roake v. Brumley*,
No. 24-517-JWD-SDJ, 2024 WL 4746342 (M.D. La. Nov. 12, 2024) ....................13

*Smith v. Jefferson County Bd. of School Com'rs.*,
788 F.3d 580 (6th Cir. 2015) ....................................................................................18

*Society of Separationists, Inc. v. Herman*,
939 F.2d 1207 (5th Cir. 1991) ..................................................................................21

*Speech First, Inc. v. Fenves*,
979 F.3d 319 (5th Cir. 2020) ......................................................................................8

*Steffel v. Thompson*,
415 U.S. 452 (1974) ....................................................................................................8

*Texas Cable & Telecommunications Ass'n v. Hudson*,
265 F. App'x 210 (5th Cir. 2008) ..........................................................................6, 7

*Texas Democratic Party v. Benkiser*,
459 F.3d 582 (5th Cir. 2006) ....................................................................................11

*Torcaso v. Watkins*,
367 U.S. 488 (1961) ................................................................................14, 19, 21, 24

*Town of Greece v. Galloway*,
572 U.S. 565 (2014) ..............................................................................................13, 14

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
582 U.S. 449 (2017) ..................................................................................................23

*Turtle Island Foods, S.P.V. v. Strain*,
65 F.4th 211 (5th Cir. 2023) ....................................................................................10

*United States v. Barlow*,
41 F.3d 935 (5th Cir. 1994) ......................................................................................14

*Universal Life Church Monastery Storehouse v. Nabors*,
  35 F.4th 1021 (6th Cir. 2022) ...............................................................................8

*Van Orden v. Perry*,
  351 F.3d 173 (5th Cir. 2003) ...............................................................................17

*Wallace v. Jaffree*,
  472 U.S. 38 (1985)..........................................................................................13, 16

*Warth v. Seldin*,
  422 U.S. 490 (1975)................................................................................................9

*West Virginia State Board of Education v. Barnette*,
  319 U.S. 624 (1943)..............................................................................................23

*Wood v. Collier*,
  836 F.3d 534 (5th Cir. 2016) ...............................................................................18

*Zimmerman v. City of Austin*,
  881 F.3d 378 (5th Cir. 2018) ...............................................................................10

*Zorach v. Clauson*,
  343 U.S. 306 (1952)..............................................................................................13

**Statutes and Other Authorities**

U.S. CONST. art. VI, cl. 3 .........................................................................................20

U.S. CONST. amend. I............................................................................................ *passim*

U.S. CONST amend. XIV ...........................................................................................18

FED. R. CIV. P. 12(b)(1) .............................................................................................5

FED. R. CIV. P. 12(b)(6) .............................................................................................5

FED. R. CIV. P. 17(d) ..................................................................................................5

TEX. FAM. CODE § 2.202......................................................................................... *passim*

TEX. FAM. CODE § 2.302.........................................................................................4, 19

Act of April 13, 1891, 22d Leg., R.S., ch. 78, § 2, 1892 Tex. Gen. Laws 96...............15

Act of June 2, 1969, 61st Leg., R.S., ch. 888, § 1.83(4), 1969 Tex. Gen. Laws
  2707.......................................................................................................................15

Act of May 15, 1957, 55th Leg., R.S., ch. 322, § 1, 1957 Tex. Gen. Laws 785...........15

Church of Body Modifications, Minister Application,
https://churchofbodmod.com/minister-application/ (last visited Feb. 3, 2025).......................17

Universal Life Church Monastery, Ordination,
https://www.themonastery.org/ordination (last visited Feb. 3, 2025) ....................................17

Plaintiffs file this opposition to Defendant-Intervenor the Attorney General of Texas's Motion to Dismiss. Plaintiffs' First Amended Complaint challenges Texas Family Code Section 2.202 ("Section 2.202"), which requires a marriage to be solemnized by either religious officiants or certain government officials, while denying any other secular individuals the same right to solemnize a marriage. Plaintiffs have adequately plead a violation of their constitutional rights, and consequently have standing to bring this suit and Defendant-Intervenor's Motion to Dismiss should be denied.

**<u>INTRODUCTION</u>**

The United States Constitution unequivocally protects the rights of both religious and non-religious individuals, ensuring true freedom of belief. By enshrining every citizen's right to practice any religion—or none at all—the Constitution upholds the very foundation of liberty and equality in the United States. Section 2.202 undermines these hallowed principles of religious freedom and free speech deeply rooted in our Constitution by preventing secular individuals from performing the government function of solemnizing marriages, while affording this function to religious officiants. Specifically, Section 2.202 is unconstitutional for five separate reasons: (1) Section 2.202 is inconsistent with historical practices and understandings in violation of the Establishment Clause; (2) it treats secular celebrants differently from similarly situated religious clergy, without a conceivable rational reason for the differing treatment in violation of the Equal Protection Clause; (3) it impermissibly requires a religious test for any individual seeking the authority to solemnize a marriage by requiring a person to profess a religious faith before being given the legal authority to solemnize a marriage in violation of Article VI; (4) it abridges freedom of speech by denying secular individuals the ability to solemnize marriages and express its belief system and philosophies during legal marriage ceremonies in violation of the Freedom of Speech

1

Clause; and (5) it imposes an unconstitutional condition on the receipt of a government benefit by requiring secular celebrants to refrain from exercising their constitutional right to choose not to practice any religion.

Moreover, Plaintiffs have standing to bring this suit as they have suffered, or will suffer, a cognizable injury-in fact that is "fairly traceable" to Section 2.202 and would be redressed by a favorable ruling. Worth mentioning at the outset, for the first time Defendant-Intervenor makes a novel argument that Plaintiff McCutchan and other secular celebrants on behalf of Plaintiff CFI can actually solemnize marriages under Section 2.202 as CFI should be considered a "religious organization." *See* Defendant-Intervenor the Attorney General of Texas's Motion to Dismiss [ECF No. 20] (the "<u>AG Motion</u>") at 6. At least in part, this is because Defendant-Intervenor agrees that "it would be unconstitutional to deny CFI celebrants the ability to solemnize marriages in Texas where that same right is extended to other religious organizations[.]" *See id.* at 7. This new position directly conflicts with arguments made by the government in a similar lawsuit brought by Plaintiffs CFI and McCutchan,[1] and Defendants' positions in this matter.[2] Prior to the AG Motion, all parties involved have consistently interpreted the term, "Religious Organization," in Section 2.202 as to ***exclude*** CFI, a purely secular organization. In any event, given that a bedrock tenet of the Plaintiff organization is to eschew religion, it seems incongruous that CFI could properly be considered a "religious organization" under the statute. For these reasons, and as further detailed below, the AG Motion should be denied.

---

[1] *See Ctr. for Inquiry, Inc. v. Warren*, No. 19-11029, ECF No. 39 at 28 (5th Cir. Feb. 21, 2020); *Ctr, for Inquiry, Inc. v. Warren*, No. 3:18-cv-02943, ECF No. 11 at 4 (N.D. Tex. Dec. 28, 2018).
[2] *See* Defendants' Motion to Dismiss First Amended Complaint with Brief in Support [ECF No. 16] at 3, 8-9.

**BACKGROUND**

Plaintiff CFI is a non-profit organization whose mission is to foster a secular society based on reason, science, freedom of inquiry, and humanist values. First Amended Complaint [ECF No. 11] ¶ 18 (hereinafter, "Am. Compl."). Its vision is a world where people value evidence and critical thinking, where superstition and prejudice subside, and where science and compassion guide public policy. *Id.* CFI is a secular organization, but maintains that there are basic human values and ethical principles that should govern human behavior. *Id.* ¶ 19. Those core values include integrity, trustworthiness, benevolence, and fairness. *Id.* ¶ 20. CFI offers a secular template that may guide persons in pursuing fulfilling and humane lives—lives that are rich intellectually, ethically, and emotionally—without reliance on religious faith. *Id.* ¶ 21. CFI, therefore, presents for its supporters[3] a detailed and structured philosophy of life. *Id.* CFI has over 30,000 supporters throughout the country, and over 1,000 supporters in Texas. *Id.* ¶ 17.

One important component of CFI's vision for a secular society is its secular celebrants program. Through this program, CFI trains individuals like Plaintiff Eric McCutchan, to solemnize marriage ceremonies in a way that both conveys the appropriate gravity and respect for the occasion, and that enables a couple to integrate their philosophical and ethical beliefs into the ceremony—much the same way that a religious officiant conducts a religious wedding ceremony. *See id.* ¶¶ 3, 22-23. As an organization, CFI desires that its secular celebrants perform weddings for all those who request them, both supporters and non-supporters. *Id.* ¶ 26. CFI believes this to be an important community service for persons desiring to have a meaningful, but non-religious marriage ceremony. *Id.* Moreover, having its secular celebrants perform marriages is an important way for CFI to assert, express, and publicize the organization's philosophical and ethical views.

---

[3] CFI more commonly refers to its members as supporters.

McCutchan is a member/supporter of CFI and a graduate of the secular celebrants program who is authorized by CFI to solemnize marriage ceremonies.  *Id.* ¶ 7, 22.

However, neither McCutchan nor any other CFI certified secular celebrant is legally able to lawfully solemnize marriages in Texas because Section 2.202 specifies that marriages must be conducted by only a small number of secular officials—namely current and retired judges—and a large number of persons associated with religious organizations.  Section 2.202 provides, in relevant part:

(a) The following persons are authorized to conduct a marriage ceremony:

(1) a licensed or ordained Christian minister or priest;

(2) a Jewish rabbi;

(3) a person who is an officer of a religious organization and who is authorized by the organization to conduct a marriage ceremony; and

(4) a current, former, or retired federal judge or state judge.

TEX. FAM. CODE § 2.202(a).  A marriage ceremony conducted by an unauthorized person may be invalid, and a person who knowingly conducts a marriage ceremony in Texas without requisite authority is guilty of a criminal offense (i.e., a Class A misdemeanor).  *Id.* §§ 2.202(c), 2.302.

Accordingly, persons seeking to celebrate a secular marriage ceremony in Texas must either choose from a list of unfamiliar state and federal judges—who are not aligned with Plaintiffs' belief system—or  forsake their secular philosophies and employ a religious celebrant.  While Section 2.202 provides a range of potential officiants for religious couples, for secular couples the statute offers just a single option—current, former, or retired judges.  *See id.* § 2.202(a)(4).  In doing so, Section 2.202 restricts secular couples from choosing an officiant that knows them personally and/or an officiant that shares the couples' philosophical and moral belief system that can incorporate that belief system into the wedding ceremony.

Defendant Mary Louise Nicholson is the duly elected County Clerk of Tarrant County, Texas, and was sued in her official capacity pursuant to Federal Rule of Civil Procedure 17(d). Texas law mandates that the county clerk issue marriage licenses to those who intend to become or have already become legally married. *Id.* § 2.009. However, because Section 2.202 prohibits Plaintiffs from legally solemnizing a marriage, Texas clerks cannot lawfully accept a marriage certificate signed by secular celebrants such as Plaintiff McCutchan. *Id.* §§ 2.202-2.208.

Defendant Phil Sorrells is the duly elected District Attorney of Tarrant County, Texas, and was sued in his official capacity pursuant to Federal Rule of Civil Procedure 17(d). Pursuant to Section 2.202(c), Phil Sorrells may bring criminal charges against McCutchan or any other secular celebrant who attempts to solemnize a marriage in Texas in violation of Section 2.202. *Id.* § 2.202.

### STANDARD OF LAW

Defendant-Intervenor brings its Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A defendant may challenge subject-matter jurisdiction pursuant to Rule 12(b)(1). *McLin v. Twenty-First Judicial Dist.*, 79 F.4th 411, 415 (5th Cir. 2023). Courts analyzing a Rule 12(b)(1) Motion must "take[] the plaintiff's alleged facts as true." *AFGE, Local 1617 v. FLRA*, 103 F. App'x 802, 804 (5th Cir. 2005). Further, "[a] Rule 12(b)(1) motion may be granted only when it appears certain that the plaintiffs cannot prove any set of facts in support of their claim that would entitle them to relief." *Id.*

Under Rule 12(b)(6), a complaint may be dismissed only for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Courts analyzing a complaint must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). A complaint will survive a motion to dismiss where it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Allen v. Walmart Stores, LLC*, 907 F.3d 170, 177 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Harold H. Huggins Realty, Inc. v. FNC Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678). The court may draw such an inference where the factual allegations are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

### I.       Plaintiffs Have Standing to Bring Their Constitutional Claims

Plaintiffs have standing to bring their constitutional claims because they have suffered a cognizable injury in fact. A plaintiff has standing when it can show that (1) it has "suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent;" (2) "fairly traceable to the challenged action;" and (3) "redressable by a favorable ruling.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Both Plaintiffs McCutchan and CFI satisfy the above elements of standing and Defendant-Intervenor's nuanced standing claims—including but not limited to that CFI actually constitutes as a "religious organization" and its secular celebrants can solemnize marriages in Texas—should be disregarded.

#### a.  Plaintiffs Have Suffered a Cognizable Injury-in-Fact

Plaintiffs have established that they have suffered an actual or imminent, concrete and particularized injury-in-fact. A constitutional injury, such as the injuries alleged, is an injury-in-fact sufficient to confer standing. Courts note that "[d]iscriminatory treatment at the hands of the government is an injury 'long recognized as judicially cognizable.'" *Texas Cable & Telecommunications Ass'n v. Hudson*, 265 F. App'x 210, 218 (5th Cir. 2008) (quoting *Heckler v. Mathews*, 465 U.S. 728, 738 (1984)). The Supreme Court has held repeatedly that, "[w]hen the

government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Northeastern Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 658, 666 (1993); *see also Martinez v. Clark County*, 846 F. Supp. 2d 1131, 1140 (D. Nev. 2012) (finding plaintiffs had standing to challenge Nevada's marriage solemnization law).

Plaintiffs have suffered an injury in fact because Section 2.202 has erected a barrier that makes it more difficult to obtain a benefit. CFI's belief system provides its members with moral and ethical principles that guide the way its members interact with other people and their environment, much the same way that a religion provides moral and ethical guidance to its adherents. CFI's secular celebrants are trained to bring solemnity and gravity to a marriage ceremony in a manner that reflects the couple's moral and philosophical beliefs, much the same way religious clergy are trained to bring solemnity and gravity to a religious marriage ceremony. Secular celebrants and religious celebrants are similarly situated parties, yet they are treated unequally under the law. Section 2.202 allows religious celebrants to obtain a benefit—the ability to lawfully solemnize a marriage—but erects a barrier that prevents secular celebrants from being able to do the same. "[N]o further showing of suffering based on unequal positioning is required for purposes of standing." *Texas Cable*, 265 F. App'x at 218.

Further, Defendant-Intervenor's arguments that Plaintiffs lack standing because they have "failed to establish a serious intention to engage in conduct proscribed by law" should be disregarded. *Cf. Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 302 (1979) ("[W]hen fear of criminal

prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative a plaintiff need not 'first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute.'" (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974))). McCutchan is a resident of Tarrant County, Texas, and has been trained as an officiant—a secular celebrant—and would perform marriage ceremonies in Tarrant County if he were not at risk of criminal prosecution. *See* Am. Compl. ¶¶ 1, 7, 22, 29; *see also Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1034-36 (6th Cir. 2022) (finding standing to sue district attorneys when individual plaintiffs resided in that county and sought to solemnize marriages in that county).

In addition, Plaintiffs' freedom of speech claims are provided even more pre-enforcement protection as courts have "repeatedly held . . . that '[c]hilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement.'" *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330-31 (5th Cir. 2020) (quoting *Houston Chronicle v. City of League City*, 488 F.3d 613, 618 (5th Cir. 2007)); *see also Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782 (5th Cir. 2024) ("[S]tanding rules are relaxed for First Amendment cases so that citizens whose speech might otherwise be chilled by fear of sanction can prospectively seek relief." (quoting *Justice v. Hosemann*, 771 F.3d 285, 294 (5th Cir. 2014))). Notably, "[t]o establish a credible fear of enforcement . . . a plaintiff may, but need not, rely on a history of past enforcement of similar policies or direct threats to enforce the challenged policies." *La Unión del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR, 2024 WL 4337515, at *20 (W.D. Tex. Sept. 28, 2024). Instead, a "plaintiff whose speech is subject to the challenged restriction can establish standing even when the defendant disavows any intention to enforce the policy." *Id.; see also Fenves*, 979 F.3d at 337.

### b. Plaintiffs' Injuries Are Fairly Traceable to Defendants

Plaintiffs' injuries—namely the inability for McCutchan and other CFI secular celebrants to legally solemnize marriages—is "fairly traceable" to Section 2.202. To prove causation, a

plaintiff need not "establish proximate causation, but only . . . that the injury [is] 'fairly traceable' to the defendant." *League of United Latin American Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011). "Traceability . . . requires that the injury 'resulted,' in some 'concretely demonstrable way' from the challenged practice – that the injury is 'the consequence of the defendants' actions, or that prospective relief will remove the harm.'" *Kinetica Partners, LLC v. U.S. Dep't of the Interior*, 505 F. Supp. 3d 653, 668 (S.D. Tex. 2020) (quoting *Warth v. Seldin*, 422 U.S. 490, 505 (1975))). Here, Plaintiffs' constitutional injuries—namely, the inability to solemnize marriages in Texas—are not only "fairly traceable" to Section 2.202, but directly caused by it.

Additionally, Defendant-Intervenor's new and interesting argument that any injury is self-inflicted by Plaintiffs should be disregarded. "An injury is 'self-inflicted' so as to defeat standing only if 'the injury is so completely due to the plaintiff's own fault as to break the causal chain.'" *Id.* (quoting *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015)). Specifically, Defendant-Intervenor argues that Plaintiffs' injuries are self-inflicted because "CFI is, in fact, a religious organization whose officers can lawfully solemnize marriages in Texas." AG Motion at 6. Plaintiffs, however, are surprised by this sudden reversal in position by the government because it goes directly against arguments previously made by the government (1) in a similar lawsuit brought in the Northern District of Texas in Dallas County,[4] (2) in the corresponding appeal to the Fifth Circuit,[5] and (3) in its motion to dismiss in this matter.[6] Under its plain meaning, an

---

[4] *See Ctr, for Inquiry, Inc. v. Warren*, No. 3:18-cv-02943, ECF No. 11 at 4-5 (N.D. Tex. Dec. 28, 2018) ("CFI's 'celebrants' fare little better, as they have no legally cognizable *right* to perform marriage ceremonies—and thus their failure to fall into one of § 2.202's categories does not invade a *legally protected* interest.").

[5] *See Ctr. for Inquiry, Inc. v. Warren*, No. 19-11029, ECF No. 39 at 28 (5th Cir. Feb. 21, 2020) ("Section 2.202(a) accommodates religious couples by permitting private religious officiants to solemnize their weddings in addition to state officials. Texas has no constitutional obligation to accommodate secular humanists' non-religious commitments in the same way.").

[6] *See* Defendants' Motion to Dismiss First Amended Complaint with Brief in Support [ECF No. 16] at 3 ("But there is no constitutional right to conduct a marriage ceremony—let along solemnize a marriage. Accordingly, McCutchan's inability to do so is not an injury-in-fact relevant to any of the constitutional claims he asserts." (internal citation omitted)), 8 ("In short, Texas has always limited the authority to solemnize marriages to religious officials

organization that eschews religion cannot qualify as a "religious organization" under the statute at issue here. Defendant-Intervenor's novel "11th hour" interpretation of Section 2.202 should not undermine Plaintiffs' standing in this case.

Further, arguments of self-infliction to defeat the traceability requirement generally fail in freedom of speech cases. In the First Amendment context, courts "will assume a credible threat of prosecution [or enforcement] in the absence of compelling contrary evidence." *Consumer Data Indus. Ass'n v. Texas*, No. 21-51038, 2023 WL 4744918, at *5 (5th Cir. July 25, 2023) (quoting *Turtle Island Foods, S.P.V. v. Strain*, 65 F.4th 211, 218 (5th Cir. 2023)). "[G]overnment action that chills protected speech without prohibiting it can give rise to a constitutionally cognizable injury." *Glass v. Paxton*, 900 F.3d 233, 238 (5th Cir. 2018) (quoting *Zimmerman v. City of Austin*, 881 F.3d 378, 391 (5th Cir. 2018)). "Such governmental action may therefore 'be subject to constitutional challenge even though it has only an indirect effect on the exercise of First Amendment rights.'" *Id.* (quoting *Laird v. Tatum*, 408 U.S. 1, 12-13 (1972)). In the present case, Section 2.202 has undoubtedly chilled protected speech as Plaintiffs have not performed any currently illegal marriage ceremonies.

### c. Plaintiffs' Injuries Are Redressable

Plaintiffs' injuries are clearly redressable as Plaintiffs have brought claims against both the Clerk and District Attorney for Tarrant County, Texas. To establish that a plaintiff's injuries are redressable, a plaintiff must "demonstrate that it was 'likely, as opposed to merely speculative, that the [alleged] injury will be redressed by a favorable decision.'" *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. Of Internal Med.*, 103 F.4th 383, 392 (5th Cir. 2024) (quoting

---

and judges. Thus, history confirms that Section 2.202 does not violate the Establishment Clause."), 9 ("Because this view of marriage is consistent with the purpose of Section 2.202, it is reasonable to allow a religious official to solemnize marriages. That Texas does not extend the same accommodation to others—whether secular humanists, the Masons, the Boy Scouts, or any other group—does not render Section 2.202 unconstitutional.").

*Missouri v. Biden*, 83 F.4th 350, 371 (5th Cir. 2023)).  As Defendant-Intervenor notes, in a similar case brought my McCutchan and CFI, the Fifth Circuit held that plaintiff-appellants lacked standing because the "County Prosecutor [was] not a party . . . [a] favorable decision would not [have] fully redress[ed] the appellants' purported injury and eradicate[d] the barrier to legally solemnizing marriages."  *Ctr. for Inquiry, Inc. v. Warren*, 845 F. App'x 325, 329 (5th Cir. 2021).  Here, however, that is not the case.  If Ms. Nicholson, as the County Clerk, records licenses returned by secular celebrants and other qualified officials—and Mr. Sorrells, as the District Attorney, is prevented from prosecuting the secular celebrant or other qualified official—then Plaintiffs' alleged injuries would be redressed by a favorable decision.

### d.  CFI Has Associational Standing

To the extent that CFI asserts that Section 2.202 harms its supporters/members who are seeking to solemnize marriages and/or become married, CFI has adequately alleged associational standing to bring this claim and to withstand a motion to dismiss.  An association has standing to sue on behalf of its members where "(1) the association's members would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members."  *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

CFI has standing because its supporters/members, including McCutchan, have suffered an injury-in-fact, that is traceable to Section 2.202, and would be redressable based on this Court's decision.  As explained above, CFI outlines a set of ethical and moral standards that serve the same function in its supporters' lives as religion does in the lives of non-secular individuals.  Yet Section 2.202 provides religious couples a benefit that it denies to secular couples—the ability to have a wedding performed by a celebrant who shares their ethical and moral values, and is trained to

11

incorporate those values into the ceremony. Section 2.202 plainly treats like groups unequally, and no further showing of suffering is necessary to establish injury-in-fact; CFI's supporters would have standing to bring their claims.

Further, CFI's stated mission is to "foster a secular society based on reason, science, freedom of inquiry, and humanist values." Am. Compl. ¶ 18. By bringing this lawsuit, CFI seeks to protect its supporters' constitutional right to have their secular, humanist values reflected in their wedding ceremonies. This interest is not only germane, but central to CFI's stated purpose of fostering a secular and humanist society. And while CFI can adequately protect this interest and assert these claims without the participation of individual supporters/members, McCutchan is a supporter/member who is a party to the suit.

## II. Section 2.202 Violates the Establishment Clause

The Religion Clauses of the First Amendment—known as the Establishment Clause and the Free Exercise Clause—provide that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. As Defendant-Intervenor correctly notes, "A proper respect for both the Free Exercise and the Establishment Clause compels the State to pursue a course of 'neutrality' toward religion, . . . favoring neither one religion over others nor religious adherents collectively over nonadherents." *Bd. Of Educ. Of Kiryas Joel Vill. Sch. Dist. v. Grumer*, 512 U.S. 687, 696 (1994) (quoting *Committee for Public Ed. & Religious Liberty v. Nyquist*, 413 U.S. 756, 792-93 (1973)). The U.S. Constitution does not recommend neutrality but demands it.

### a. Section 2.202 is Not Neutral and Violates the Establishment Clause Under *Kennedy*

The Establishment Clause demands neutrality toward different religions, as well as non-religious individuals and religious individuals. This remains the case despite the recent changing

12

landscape of the Establishment Clause.  Prior to the Supreme Court's recent decision in *Kennedy v. Bremerton School District*, "[t]he Supreme Court generally applied at least one of three tests under the Establishment Clause."  *Roake v. Brumley*, No. 24-517-JWD-SDJ, 2024 WL 4746342, at \*55 (M.D. La. Nov. 12, 2024) (quoting *Am. Humanist Ass'n v. McCarty*, 851 F.3d 521, 525 (5th Cir. 2017)).  These three tests included (1) the *Lemon* Test, (2) the Endorsement Test, and (3) the Coercion Test.  *Id.*  Under the coercion test, "unconstitutional coercion occurs where '(1) the government directs (2) a formal religious exercise (3) in such a way as to oblige the participation of objectors.'"  *Id.*  (quoting *McCarty*, 851 F.3d at 525 n.12).  In *Kennedy*, the Supreme Court denounced the *Lemon* and Endorsement Tests and noted that the Establishment Clause must be interpreted by "reference to historical practices and understandings."  *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 535 (2022) (quoting *Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014)).  However, the Supreme Court re-emphasized that it "has long held that government may not, consistent with a historically sensitive understanding of the Establishment Clause, 'make a religious observance compulsory.'"  *Id.* at 536-37 (quoting *Zorach v. Clauson*, 343 U.S. 306, 314 (1952)).  For example, the "Government 'may not coerce anyone to attend church,' . . . nor may it force citizens to engage in 'a formal religious exercise[.]'"  *Id.* (quoting *Lee v. Wesiman*, 505 U.S. 577, 589 (1992)).  Section 2.202 violates the Establishment Clause because (1) it is inconsistent with historical practices and understandings; and (2) it unconstitutionally coerces individuals to associate with a religious organization to solemnize weddings and to be married by individuals who do not share their belief system.

The Supreme Court has long recognized that the First Amendment protects secular belief systems to the same extent it protects religious beliefs.  *See, e.g., Wallace v. Jaffree*, 472 U.S. 38, 52-53 (1985) ("[T]he Court has unambiguously concluded that the individual freedom of

13

conscience protected by the First Amendment embraces the right to select any religious faith or none at all."); *Torcaso v. Watkins*, 367 U.S. 488, 495 n.11 (1961) (including secular humanism in a list of "religions" that do not involve belief in a deity); *United States v. Barlow*, 41 F.3d 935, 944 (5th Cir. 1994) (noting the First Amendment encompasses "the right of an individual to practice the religion of his choice *or to be free from the practice of religion altogether*").  Courts have recognized that "[f]or hundreds of years, in the legal tradition that we inherited from England, the persons who could solemnize marriages included clergy, public officials, sea captains, notaries public, and the celebrants themselves."  *Ctr. for Inquiry, Inc. v. Marion Circuit Court Clerk*, 758 F.3d 869, 875 (7th Cir. 2014).  The fact that Texas has historical practices of limiting solemnization to religious and civil officers (and notably excluding others like notaries public) is not enough to dismiss Plaintiffs' claims.  *See* AG Motion at 17.  As the Supreme Court wrote in *Town of Greece, N.Y. v. Galloway*, the law "must not be understood as permitting a practice that would amount to a constitutional violation if not for its historical foundation."  *Town of Greece, N.Y.*, 572 U.S. at 577. Plaintiffs do not contend that religious leaders have not been authorized to perform marriage ceremonies since the foundation of Texas, nor do they contend that religious leaders should now be prohibited from doing so.  Plaintiffs likewise do not claim that states should not be allowed to specify which individuals may perform marriage ceremonies:  Plaintiffs seek only to be included among those the state does authorize to perform such ceremonies.

Further, as Defendant-Intervenor recognizes, there is a tension between the Free Exercise Clause and the Establishment Clause.  *See* AG Motion at 14.  Specifically, "[t]his tension exists in part because the Supreme Court 'has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause.'"  *Id.* (quoting *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144-45

(1987)).  Because of the Free Exercise Clause and the need to accommodate different religions, "the Texas Legislature [has] gradually expanded the category of individuals authorized to solemnize marriages to include ministers of other religions and federal judges." *Id.* at 16-17 (citing Act of April 13, 1891, 22d Leg., R.S., ch. 78, § 2, 1892 Tex. Gen. Laws 96, 96 *reprinted in* 10 Gammel, *supra*, at 98 (adding Jewish rabbis); Act of May 15, 1957, 55th Leg., R.S., ch. 322, § 1, 1957 Tex. Gen. Laws 785, 785 (adding "officers of [other] religious organizations")); Act of June 2, 1969, 61st Leg., R.S., ch. 888, § 1.83(4), 1969 Tex. Gen. Laws 2707, 2716 (adding federal judges)).  However, Texas has let the tension pull too tight on the Establishment Clause in favor of the Free Exercise Clause.  While Texas has made various accommodations—as Defendant-Intervenor acknowledges—for other religions, it has made no accommodations for secular individuals.

As a result, Section 2.202 unconstitutionally coerces secular celebrants to affiliate with a religion in order to solemnize a marriage or for a couple to be married by someone outside their own belief system.  Put another way—the government (through Section 2.202) is directing a formal religious exercise in such a way that obliges the participation of objectors.  *See McCarty*, 951 F.3d at 525 n.12.  The Defendants would have McCutchan or any other CFI secular celebrant simply become ordained by an Internet "church" because Section 2.202 does not concern the sincerity or validity of any religious official's beliefs.  However, this "fix" blatantly ignores the Plaintiffs' constitutional right to "select any religious faith or none at all," and would encourage the kind of "marriages performed by hypocrites" that the Seventh Circuit has already condemned. *See Ctr. for Inquiry*, 758 F.3d at 874.  Section 2.202 allows religious officials and couples to make their beliefs an integral part of their weddings but denies secular people the same right.

**b. Section 2.202 Also Fails the *Lemon* Test**

As noted above, recent Supreme Court cases have called into question the *Lemon* Test. However, unlike Defendant-Intervenor's position, Section 2.202 also fails under this test. Under the *Lemon* Test, a law must be invalidated if (1) it does not have a secular purpose, (2) it has the principal effect of advancing or inhibiting religion, or (3) it fosters excessive government entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971). A law is unconstitutional under the *Lemon* Test if it fails any one of the three prongs. Section 2.202 fails all three.

A law fails the first prong of the *Lemon* Test if it has no secular purpose. *Id.* The purpose prong asks "whether government's actual purpose is to endorse or disapprove of religion." *Wallace*, 472 U.S. at 56 (quoting *Lynch v. Donnelly*, 465 U.S. 668, 690 (1984) (O'Connor, J., concurring)). Section 2.202 fails this test because the only purpose for allowing religious clergy to solemnize marriages while preventing non-religious celebrants from doing so is to endorse a religion—a decidedly non-secular purpose. Defendant-Intervenor argues that the legitimate secular purpose is Section 2.202 "establishes what kinds of ceremonies will be recognized by the (secular) State authorities as legitimate for purposes of solemnizing a marriage." AG Motion at 19. However, simply including the word "secular" does not make it a secular purpose. Nor does this purpose explain why religious individuals are accommodated and secular individuals are not. Plaintiff McCutchan and other trained secular celebrants have undergone training, among other requirements, run by CFI to perform marriage ceremonies. Secular celebrants are just as

legitimate, if not more legitimate, than many other "religious" organizations like the Universal Life Church[7] or the Church of Body Modification.[8]

Section 2.202 also fails under the second prong, which asks whether a government action has the "purpose or effect of endorsing religion." *See Country of Allegheny v. ACLU Greater Pittsburgh Chapter*, 492 U.S. 573, 592 (1989), *abrogated in part by Town of Greece, N.Y.*, 572 U.S. at 577; *Am. Civil Liberties Union of Ohio Found., Inc. v. DeWeese*, 633 F.3d 424, 434 (6th Cir. 2011) (applying the endorsement test as a clarification of the second part of the *Lemon* Test). A law fails the second prong of the *Lemon* Test if a person could "'fairly understand [its] purpose' to be the endorsement of religious belief." *Croft v. Perry*, 624 F.3d 157, 168 (5th Cir. 2010) (quoting *County of Allegheny*, 492 U.S. at 594). A law scrutinized under the second prong is "seen from the eyes of a reasonable observer, informed and aware of his surroundings." *Van Orden v. Perry*, 351 F.3d 173, 180 (5th Cir. 2003). Here, Plaintiffs have pled sufficient facts to demonstrate that a reasonable observer would view Section 2.202 as endorsing religion over non-religion because it allows religious celebrants to solemnize marriages while denying secular celebrants that same right. *See* Am. Complaint ¶¶ 23-31. Moreover, Section 2.202 does not provide a benefit to religion that is merely indirect or incidental; by permitting any religious official to solemnize a wedding while asking secular celebrants to falsely tie themselves to an online "faith" such as those discussed above, the state is sending a clear message that religion (any religion) is preferred over secularism.

---

[7] The Universal Life Church allows anyone over the age of 18 to become a legally ordained minister by simply completing an online ordination form. The "minister" then receives a confirmation email that "serves as receipt of [their] ordination," giving the applicant "full legal status required to officiate marriages. *See* Universal Life Church Monastery, Ordination, https://www.themonastery.org/ordination (last visited Feb. 3, 2025).

[8] The Church of Body Modification asks a series of questions on their Minister Application, including but not limited to, (1) "What do you think the differences are between a person who modifies their body with piercings, tattoos, etc., and a person who never explores body modification" and (2) "Can a person with only a naval or ear piercing claim to be as spiritually modified as someone with brandings and a split tongue?" Church of Body Modifications, Minister Application, https://churchofbodmod.com/minister-application/ (last visited Feb. 3, 2025).

Finally, Section 2.202 fails the third prong because a law is unconstitutional if "the cumulative impact of the entire relationship arising under the statute[] . . . involves excessive entanglement between government and religion." *Lemon*, 403 U.S. at 614. "[R]elationships between the government and a religious institution may result in excessive entanglement when essential governmental functions are delegated to religious entities." *Smith v. Jefferson County Bd. of School Com'rs.*, 788 F.3d 580, 594 (6th Cir. 2015). Consequently, the Supreme Court has invalidated laws where "important, discretionary governmental powers would be delegated to or shared with religious institutions." *See, e.g., Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 127 (1982) (striking down a statute that delegated authority to churches to veto liquor licenses). Here, Plaintiffs have pled sufficient facts to plausibly show that Section 2.202 delegates the government function of solemnizing marriages to religious celebrants but not to secular people. In doing so, it excessively entangles government and religion in violation of the third prong.

### III. Section 2.202 Violates the Equal Protection Clause

Under the Equal Protection Clause of the Fourteenth Amendment, a state may not "deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Fourteenth Amendment prohibits a government entity from engaging in discrimination that (1) burdens a fundamental right, (2) targets a suspect class, or (3) treats one group or individual differently from a similarly situated group without a rational basis for the difference. *See Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012). The third type of claim is "cognizable as a so-called 'class of one.'" *Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016). A plaintiff may successfully prove a class of one claim by showing that "he or she was intentionally treated differently from others similarly situated" and "there was no rational basis for the difference in treatment." *Id.*; *see also Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 586 (5th Cir. 2016).

Here, in contrast to Defendant-Intervenor's position, Plaintiffs have plausibly alleged that they are similarly situated to religious celebrants, but treated differently under Section 2.202. CFI's secular belief system serves the same purpose in its members' lives as a theistic religion. It is well settled that, for the purposes of constitutional analyses, secular beliefs should be considered on equal footing as religious ones. *See, e.g., Torasco*, 367 U.S. at 495 (noting the government may not "aid those religions based on a belief in the existence of God as against those religions founded on different beliefs"). In the same way that theistic religion provides ethical guidance to its adherents, CFI's belief system provides moral tenants to guide its members' lives. Similarly, just how religious couples seek to affirm their commitment to one another in a ceremony that reflects their beliefs, secular couples and CFI members wish to solemnize their commitment in a ceremony that reflects their moral and ethical views. And in the same way that ministers, clergy, and other religious officials are trained to bring gravity and solemnity to the proceedings, so too are CFI's celebrants trained to bring dignity to marriage ceremonies of secular couples. Accordingly, Plaintiffs are similarly situated to religious celebrants.

Yet, despite the overwhelming similarities, Plaintiffs are treated differently under Section 2.202 than celebrants who profess to have ties to a religious organization. Under Section 2.202, celebrants tied to a religious organization—even those that obtain their credentials without training through an online church such as the Universal Life Church—may perform a wedding ceremony and simultaneously solemnize the marriage. TEX. FAM. CODE § 2.202. CFI's secular celebrants, on the other hand, would commit a criminal misdemeanor offense if they attempted to do the same. *Id.* §§ 2.202(c), 2.302. To become legally married under Texas law, a secular couple must either disregard their deeply held personal beliefs and have their wedding ceremony performed by a religious clergy or public official or else have two marriage ceremonies—one performed by the

19

celebrant of their choosing (without legal effect), and one performed by a civil celebrant prescribed in the Family Code.  By limiting secular couples to only one non-religious option—i.e., current, former, or retired judges—Section 2.202 effectively denies secular couples the opportunity to be legally married by a person the couple knows and/or by a person who shares their belief system and can incorporate that belief system into the wedding ceremony.

To be sure, Plaintiffs have alleged facts that plausibly show that there is no rational basis for allowing those connected to a religious organization—however tenuously—to perform marriage ceremonies, while denying Plaintiffs that same right.  As discussed above, Section 2.202 condones marriages solemnized by "ministers" of the Universal Life Church which does not require any formal training or even that their clergy hold an articulable set of beliefs.  This fact undermines any possible reasoning the Defendants might offer for treating secular celebrants differently from religious ones.  Courts have recognized that when a statute "singl[es] out a specific trait for accommodation, and then exercis[es] from its protection an organization with that precise trait, it sweeps in arbitrary and irrational strokes that simply cannot be countenanced, even under the most deferential of lenses." *March for Life v. Burwell*, 128 F. Supp. 3d 116, 128 (D.D.C. 2015) (holding the contraceptive mandate as unconstitutional under the Equal Protection Clause because it treated March for Life differently than similarly situated employers).  Accordingly, there can be no rational basis for the state to discriminate between secular celebrants and non-secular ones.

### IV.    Section 2.202 Imposes an Impermissible Religious Test

Article VI of the Constitution states that "no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States."  U.S. Const. art. VI, cl. 3. Courts have recognized that the protections of the Impermissible Religious Test apply to notaries public, jurors, and trial witnesses. *See, e.g., Barker v. Conroy*, 282 F. Supp. 3d 346, 366 (D.D.C. 2017) (noting that "jurors and notaries public . . . have been found by other courts to constitute

20

offices of public trust") (citing *Torcaso*, 367 U.S. at 489; *Society of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1220-21 (5th Cir. 1991)).  Further—and despite Defendant Intervenor's criticism of—the court in *Martinez v. Clark County* extended this protection to marriage officiants.  *See Martinez*, 846 F. Supp. at 1144-45.  Specifically, in *Martinez v. Clark County*, the court denied the state's motion to dismiss an Article VI claim because the law at issue "limite[d] a position of public trust, the authority to solemnize marriages, only to persons who identify themselves with a religious organization."  *Id.* at 1145.

Defendant-Intervenor criticizes certain aspects of *Martinez*—specifically its notion that "[p]ractically speaking, it is fair to say that religious organizations do not tend to place in those types of positions people who do not profess to believe the religious organization's tenets."  AG Motion at 22 (quoting *Martinez*, 846 F. Supp. at 1145).  However, this statement is common sense. Legitimate, religious organizations are going to promote its supporters of that religion to higher-ranking individuals in that religious organization.  Instead, by likening the availability of solemnizing marriages to Universal Life Church who allows individuals to "Get Ordained Instantly" is promoting the kind of "marriages performed by hypocrites" that the Seventh Circuit has already condemned.  *See Ctr. for Inquiry*, 758 F.3d at 874.

Requiring a person to "profess a belief or disbelief in any religion" in order to obtain a position of public trust is impermissible under Article VI.  *See Torcaso*, 367 U.S. at 493; *Martinez*, 846 F. Supp. at 1144-45.  The Texas law requires a person to profess a faith by associating themselves with a religious organization to be allowed to legally solemnize weddings.  TEX. FAM. CODE § 2.202.  The Texas law plainly violates Article VI and the fact that Defendants are state officials does not prevent Plaintiffs from bringing their claims.

## V.    Section 2.202 Violates the Freedom of Speech Clause

The Freedom of Speech Clause of the First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I.; *see also 303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023) ("[T]he First Amendment protects an individual's right to speak his mind regardless of whether the government considers his speech sensible and well intentioned or deeply 'misguided,' and likely to cause 'anguish' or 'incalculable grief[.]'"). Section 2.202 restricts expression and speech based on content and viewpoint because it only denies individuals who wish to perform marriage ceremonies in a non-religious way—and as a byproduct—only non-religious individuals are forced to either limit or change their intended speech. Here, Defendant-Intervenor acknowledges that "the performance of a marriage ceremony is doubtless expressive conduct," but since "Section 2.202 does not place any restrictions on what type of marriage ceremony can be performed" that it does not violate the Freedom of Speech Clause. *See* AG Motion at 23. This view is not in line with recent Supreme Court precedent.

In *303 Creative LLC*, the Supreme Court addressed a Colorado law that "prohibits a public accommodation from denying 'the full and equal enjoyment' of its goods and services to any customer based on his race, creed, disability, sexual orientation, or other statutorily enumerated trait." *303 Creative LLC*, 600 U.S. at 581. Plaintiff brought a cause of action alleging that this Colorado law violates the Freedom of Speech Clause of the First Amendment because "if she enters the wedding website business to celebrate marriages she does endorse, she faces a credible threat that Colorado will see to use [the statute] to compel her to create websites celebrating marriages she does not endorse." *Id.* Colorado argued that the case only involved "incidental" speech since the statute's language was just dealing with the sale of an ordinary commercial product (i.e., on its face did not restrict speech). *Id.* at 593. The Supreme Court, however, held that "Colorado does not seek to impose an incidental burden on speech" but instead "seeks to force

22

an individual to 'utter what is not in [her] mind' about a question of political and religious significance." *Id.* at 596 (quoting *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 634 (1943)). Similarly, in the present situation, while Section 2.202 does not explicitly regulate what is said during a marriage ceremony, it ultimately does this by preventing secular celebrants from solemnizing marriages.

Moreover, like Defendants the Clerk and District Attorney of Tarrant County, Defendant-Intervenor also attempts to minimize CFI's mission of expressing its deeply-held belief system with couples espousing that same belief system by providing different (and some would say lesser) options for speech by noting that "[a]ny person can perform any kind of marriage ceremony they want to perform; Section 2.202 merely provides for ceremonies that have legal effect." *See* AG Motion at 23. However, the ability to perform non-legal marriage ceremonies is simply not equivalent to performing legal marriage ceremonies.

## VI.    Section 2.202 Imposes an Unconstitutional Condition

The Supreme Court has long held that "[i]t is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 463 (2017) (internal quotations omitted). Under the Unconstitutional Conditions Doctrine, "[a] state actor cannot constitutionally condition the receipt of a benefit . . . on an agreement to refrain from exercising one's constitutional rights." *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1077 (6th Cir. 1994).

Defendant-Intervenor mischaracterizes the Unconstitutional Conditions Doctrine by asserting that there is no violation of the doctrine because the right to solemnize a marriage is not a valuable government benefit. *See* AG Motion at 24. A law can nevertheless violate the doctrine whether or not an individual has a right to a government benefit. *Perry v. Sindermann*, 408 U.S.

23

593, 597 (1972).  Courts have made it "clear that even though a person has no 'right' to a valuable governmental benefit . . . [i]t may not deny a benefit to a person on a basis that infringes his constitutionally protected interests."  *Dep't of Texas, Veterans of Foreign Wars of U.S. v. Texas Lottery Comm'n*, 760 F.3d 427, 437 (5th Cir. 2014) (quoting *Perry*, 408 U.S. at 597)).

Here, the government is conferring a benefit to certain private individuals—the ability to legally solemnize marriages—and condition that benefit on the *express condition* that those individuals profess a religious faith.  Secular celebrants are excluded based on this condition because they do not affiliate themselves with a religious organization or subscribe to a religious faith.  It is irrelevant that the privilege is not expressly conferred in the constitution, because "the government, having no obligation to furnish a benefit, nevertheless cannot force a citizen to choose between a benefit and" his First Amendment rights.  *Planned Parenthood Ass'n*, 692 F.3d at 348-49.  Section 2.202 requires secular celebrants to choose between the government-provided benefit of authority to solemnize marriages, and the constitutional right not to be coerced into professing a religious affiliation.  *See Torasco*, 367 U.S. at 492-93.  The Plaintiffs have therefore plausibly stated a claim that Section 2.202 fails under the Unconstitutional Conditions Doctrine.

### CONCLUSION

Section 2.202 is unconstitutional because it violates (1) the Establishment Clause; (2) the Equal Protection Clause; (3) Article VI; (4) the Freedom of Speech Clause; and (5) the Unconstitutional Conditions Doctrine.  As such, Plaintiffs respectfully request that the Court deny the AG Motion.

**Plaintiffs respectfully request an oral hearing on the pending Motions to Dismiss [ECF Nos. 16, 20] and further note that if granted, the associate attorney on this matter, Madison M. Gafford, will present oral argument.**

Dated: February 5, 2025

Respectfully submitted,

*/s/ M. Scott Barnard*
M. Scott Barnard
Texas State Bar No. 24001690
sbarnard@akingump.com
Madison M. Gafford
Texas State Bar No. 24120833
mgafford@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

ATTORNEYS FOR PLAINTIFFS

## Certificate of Service

I certify that on February 5, 2025, a copy of the above document was served on all counsel of record via ECF pursuant to Federal Rule of Civil Procedure 5.

*/s/ M. Scott Barnard*
M. Scott Barnard