UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CENTER FOR INQUIRY, INC., AND ERIC MCCUTCHAN; | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | Case No. 4:24-cv-01039-O |
| MARY LOUISE NICHOLSON IN HER CAPACITY | § | |
| AS CLERK OF TARRANT COUNTY, TEXAS, | § | |
| AND PHIL SORRELLS IN HIS CAPACITY AS | § | |
| DISTRICT ATTORNEY OF TARRANT COUNTY, | § | |
| TEXAS; | § | |
| *Defendants.* | § | |

---

**DEFENDANT-INTERVENOR THE ATTORNEY GENERAL OF TEXAS'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

---

# Table of Contents

Table of Contents ........................................................................................................................ ii

Table of Authorities .................................................................................................................. iii

I.     Plaintiffs Failed To Demonstrate That They Had Standing ................................................. 1

    A.     Plaintiffs do not have an injury-in-fact. ................................................................... 1

    B.     Plaintiffs' purported injuries are not fairly traceable to the Defendants. ................... 3

    C.     Plaintiffs' purported injuries are not redressable by a favorable decision. ................. 5

    D.     CFI cannot establish associational or organizational standing. ................................. 6

II.    Plaintiffs Have Failed to Plead A Claim Upon Which Relief Could Be Granted. ............... 6

    A.     Section 2.202 does not violate the Establishment Clause. .......................................... 6

        1.     Section 2.202 reflects a longstanding practice that follows the tradition of religious
               neutrality ............................................................................................................ 6

        2.     While the Lemon test does not apply here, Section 2.202 nevertheless satisfies it. ....... 9

    B.     Section 2.202 does not violate the Equal Protection Clause. ..................................... 12

    C.     Section 2.202 does not impose an impermissible religious test in violation of Article VI,
           Clause Three of the United States Constitution. ...................................................... 13

    D.     Section 2.202 does not violate Plaintiffs' Freedom of Speech. .................................. 15

    E.     Section 2.202 does not impose an unconstitutional condition. .................................. 16

III.    CONCLUSION ..................................................................................................................... 17

CERTIFICATE OF SERVICE ..................................................................................................... 18

## Table of Authorities

**Cases**

*303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) ........................................................ 15

*Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29 (2019) ............................................... 9

*Babbit v. UFW Nat'l Union*, 442 U.S. 289 (1979) ......................................................... 2

*Croft v. Perry*, 624 F.3d 157 (5th Cir. 2010) ......................................................... 10, 11

*Ctr. for Inquiry, Inc. v. Marion Circuit Court Clerk*, 758 F.3d 869 (7th Cir. 2014) ..................... 8

*Ctr. for Inquiry, Inc. v. Warren*, No. 3:18-CV-2943-B, 2019 WL 3859310 ......................... 12, 13

*Dep't of Tex., Veterans of Foreign Wars of the U.S. v. Tex. Lottery Comm'n*, 760 F.3d 427 (5th Cir. 2014) ........................................................................................................... 16

*Freiler v. Tangipahoa Parish Bd. of Educ.*, 185 F.3d 337 (5th Cir. 1999) ................................ 10

*Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ................ 1

*Graham v. Richardson*, 403 U.S. 365 (1971) ............................................................... 16

*Hewitt v. Helms*, 482 U.S. 755 (1987) ......................................................................... 6

*Lemon v. Kurtzman*, 403 U.S. 602 (1971) ..................................................................... 9

*Marsh v. Chambers*, 463 U.S. 783 (1983) ..................................................................... 7

*Martinez v. Clark Cnty., Nev.*, 846 F.Supp.2d 1131 (D. Nev. 2012) ................................. 11, 13

*Perry v. Sinderman*, 408 U.S. 593 (1972) ................................................................... 16

*Regan v. Taxation Without Representation of Wash*, 461 U.S. 540 (1983) ............................. 16

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47 (2006) .................... 3

*Sherbert v. Verner*, 374 U.S. 398 (1963) ................................................................... 16

*Sosna v. Iowa*, 419 U.S. 393 (1975) ........................................................................... 8

*Town of Greece, N.Y. v. Galloway*, 572 U.S. 565 (2014) ..................................................... 7

*Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021 (6th Cir. 2022) .......... 2, 3

*Voting for Am., Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013) ............................................... 3

*Warth v. Seldin*, 422 U.S. 490 (1975) ......................................................................... 7

*Wood v. Collier*, 836 F.3d 534 (5th Cir. 2016) ............................................................. 12

*Zablocki v. Redhail*, 434 U.S. 374 (1978) ..................................................................... 8

**Statutes**

Tex. Fam. Code § 2.202(a) ............................................................................. 8, 9, 10

Tex. Fam. Code § 2.206(a) ................................................................................... 9, 14

Tex. Fam. Code § 2.208(b) .................................................................................. 9, 14

**Other Authorities**

*Atheism*, MERRIAM-WEBSTER ................................................................................ 4

*Secular*, MERRIAM-WEBSTER ................................................................................. 4

**Texas Constitution**

U.S. Const., Art. VI, cl. 3 ...................................................................................... 13

TO THE HONORABLE UNITED STATES DISTRICT JUDGE REED O'CONNOR:

Defendant-Intervenor Ken Paxton in his official capacity as the Attorney General of Texas ("Attorney General") files this Reply in Support of his Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs' claims must be dismissed for lack of jurisdiction because they lack standing. Alternatively, the Plaintiffs fail to state a claim upon which relief can be granted. Plaintiffs reply fails to overcome Defendant-Intervenor's assertions regarding Plaintiffs' claims.

## I.   Plaintiffs Failed To Demonstrate That They Had Standing.

To establish standing, Plaintiffs must have demonstrated (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). McCutchan and CFI both lack standing because they failed to sufficiently allege or show any of these requirements.

### A.   Plaintiffs do not have an injury-in-fact.

Plaintiffs allege that they have pleaded an injury-in-fact because Section 2.202 "has erected a barrier that makes it more difficult to obtain a benefit." (ECF No. 22 at 15). Specifically, Plaintiffs allege that under Section 2.202 religious celebrants have the benefit of the ability to lawfully solemnize a marriage, but the law erects a barrier preventing secular celebrants from being able to do the same. *Id.*  Yet as already demonstrated, Section 2.202 does allow Plaintiffs to solemnize marriages. (ECF No. 20 at 13–18); *see also infra* II.A.2. Thus, Plaintiffs have not demonstrated an injury-in-fact because section 2.202 does not prevent them from celebrating or solemnizing marriages.

Even if Plaintiff's were correct that they cannot solemnize marriages, they still fail to demonstrate a serious intention to engage in conduct proscribed by the law. Plaintiffs cite to two

statutes for the proposition that they need not demonstrate serious intent to engage in conduct proscribed by law, but the facts of those cases are clearly distinct from the facts of this case.

First, Plaintiffs cite to *Babbitt v. UFW Nat'l Union* where the Supreme Court found that the United Farm Workers National Union had standing to file suit. *Babbit v. UFW Nat'l Union*, 442 U.S. 289 (1979). In *Babbitt*, the UFW was challenging a statute that criminalized certain labor practices and acknowledged that the criminal provision had not yet been applied and might never be applied. *Id.* at 302. Nonetheless, the Supreme Court found standing because "when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative a plaintiff need not expose himself to actual arrest or prosecution to be entitled to challenge the statute." *Id.* (quotations omitted). Yet in *Babbitt* the UFW expressed that it did not want to violate the statute but that it was presently engaging, and planned to continue to engage, in conduct that could be deemed a violation of the criminal statute; the Supreme Court observed that erroneous statements are inevitable in a free debate and the UFW had demonstrated that it was engaging in conduct that could open them up to potential criminal liability. *Id.* at 301. Here, CFI has clearly stated that they have not and do not intend to perform marriage solemnizations. (ECF No. 11 ¶ 29). Unlike UFW, Plaintiffs are not engaging in nor do they plan to engage in the alleged unlawful conduct, so they have not shown that they engage in conduct that could potentially be seen as unlawful by Section 2.202.

Second, Plaintiffs rely on *Universal Life Church Monastery Storehouse v. Nabors*, to demonstrate standing. In *Nabors*, the Sixth Circuit was reviewing a Tennessee law that did not allow people who received online ordinations to solemnize marriages. *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1025 (6th Cir. 2022). Notably, the plaintiffs in *Nabors* had stated that they had in fact received online ordinations, had previously solemnized

marriages, had canceled some marriage performances after learning of the statute, and they also alleged that they intended to solemnize future marriages based on their online ordinations as well. *Id*. at 1034–36. Unlike the plaintiffs in *Nabors*, Plaintiffs here have not alleged that they have solemnized marriages in Texas, have not alleged that they plan to solemnize marriages in Texas, and have not alleged cancellations of scheduled marriages in Texas. Rather, Plaintiffs would be allowed to solemnize marriages in the state, something that the plaintiffs in *Nabors* clearly could not do. (ECF No. 11 ¶ 29); *see also infra* II.A.2.

Finally, Plaintiffs allege that they have suffered an injury-in-fact because "freedom of speech claims are provided even more pre-enforcement protection[.]" (ECF No. 22 at 16). Yet, Section 2.202 is not a restriction on speech and Plaintiffs should not be allowed to curtail the standing requirements merely because they wrongly accuse Section 2.202 of restricting their freedom of speech. (ECF No. 20 at 30); *see also infra* II.B.4. Section 2.202 does not prevent Plaintiffs from saying or expressing anything; nor does it require them to say or express anything in particular. *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 388 (5th Cir. 2013) ("only conduct that is 'inherently expressive' is entitled to First Amendment protection.") (quoting *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006)).

Ultimately, Plaintiffs have not suffered an injury-in-fact because they can solemnize marriages. Even if the Court were to find that Plaintiffs cannot solemnize marriages, they still have not shown an injury-in-fact because they have not demonstrated serious intent to engage in conduct proscribed by law. The case law Plaintiffs reference in support of their assertion is easily distinguishable—and in the case of *Nabors*, out-of-circuit with no precedential value before this Court. Plaintiffs' claims should be dismissed for lack of standing.

**B.  Plaintiffs' purported injuries are not fairly traceable to the Defendants.**

Plaintiffs' purported injuries are not fairly traceable to Defendants because their alleged

injury is entirely self-inflicted. Plaintiffs would be allowed to solemnize marriages under Section 2.202. (ECF No. 20 at 13–18).

Plaintiffs' main assertion is that they are not a religious organization for purposes of Section 2.202, and hence their injuries are directly caused by Section 2.202. They state that a "religious organization that eschews religion cannot qualify as a 'religious organization' under the statute at issue here." (ECF No. 22 at 18). Plaintiffs provide no other explanation of why they would not fall within the statute's definition of "religious organization." *See* (ECF No. 22 at 16–18). To be sure, Section 2.202 offers no definition for the term "religious organization" to which Plaintiffs can point to as clearly outlining that they do not qualify as a religious organization. Instead, Plaintiffs allege that they are not a religious organization because they are a "purely secular organization that maintains that scientific methods and reasoning should be utilized in examining religious claims." (ECF No. 11 ¶ 19). The fact that CFI's beliefs are centered around eschewing religion is ultimately what allows it to solemnize marriages if it were to desire to do so. Further, secularism falls within Section 2.202's reach and permits marriage solemnization by Plaintiffs. *See Secular*, MERRIAM-WEBSTER, at http://www.merriam-webster.com/dictionary/secular (as of December January 14, 2025) (defining secular as "not overtly or specifically religious"); *see also Atheism*, MERRIAM-WEBSTER, at http://www.merriam-webster.com/dictionary/atheism (as of January 14, 2025) ("a philosophical *or religious* position characterized by disbelief in the existence of a god or any gods") (emphasis added). CFI itself acknowledges that its belief "system serves the same purpose in its members' lives as a theistic religion" and that, in the same way that a "theistic religion provides ethical guidance to its adherents, CFI's belief system provides moral tenants to guide its members' lives." (ECF No. 22 at 27). Thus, CFI itself acknowledges the similarities between its beliefs system and

the belief system of "religious organizations."

Defendant-Intervenor understands that CFI wishes to portray itself as a secular organization that disavows religion, but that does not mean that CFI falls outside of the broad scope of a religious organization for purposes of Section 2.202. Because CFI could authorize its members to conduct marriages, but are choosing not to, their purported injury is entirely self-inflicted and lacks any traceability to the named Defendants. Even Plaintiffs recognize the breadth of Section 2.202 as they acknowledge that even "'religious' organizations like Universal Life Church or the Church of Body Modification" can solemnize marriages.

Plaintiffs further try circumventing their traceability requirements by alleging that "arguments of self-infliction to defeat the traceability requirements generally fail in freedom of speech cases." (ECF No. 22 at 18). Section 2.202 has not chilled Plaintiffs speech nor have they have alleged that Defendants have threatened them with either not recognizing a marriage solemnized by them or with prosecution for solemnizing a marriage. Plaintiffs should still be required to prove traceability rather than merely relying on their mistaken belief they cannot conduct marriage ceremonies under Section 2.202. *See* (ECF No. 20 at 30); *see also infra* II.B.4.

### C.  Plaintiffs' purported injuries are not redressable by a favorable decision.

Plaintiffs allege that their injuries would be redressed by Nicholson, as the County Clerk, recording licenses by them and other qualified individuals, and Sorrells, as District Attorney, in turn being prevented from prosecuting them or other qualified officials. (ECF No. 22 at 19) Yet, Plaintiffs have not alleged that Nicholson, as County Clerk, would refuse to record a marriage solemnized by Plaintiffs, or that Sorrells, as District Attorney, would prosecute them. Plaintiffs are not asking this Court to issue an order that affects the behavior of Nichols or Sorrells but rather are asking the Court to give an advisory opinion on the constitutionality of Section 2.202. What makes a judicial pronouncement a proper judicial resolution as opposed to an advisory opinion "is

in the settling of some dispute which affects the behavior of the defendants towards the plaintiff." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987). Plaintiffs have failed to allege any facts that demonstrate that there is some dispute between them and Defendants. Currently there are no allegations that Defendant Nicholson plans on not recognizing marriages solemnized by Plaintiffs or that Defendant Sorrells has prosecuted anyone for illegally solemnizing a marriage, let alone Plaintiffs. Currently a judicial pronouncement by this court would have no effect on the behavior of Defendants towards Plaintiffs.

**D.  CFI cannot establish associational or organizational standing.**

CFI specifically alleges that it has associational standing to bring suit because its members, like McCutchan, have suffered an injury-in-fact that is traceable to Section 2.202 and would be redressable by a favorable decision. (ECF No. 22 at 19). But, as already demonstrated, McCutchan, as well as CFI's members, do not have standing to bring suit, and thus CFI cannot assert associational standing on their behalf. (ECF No. 20 at 11–20); *see also supra* II.A.1–3.

**II.  Plaintiffs Have Failed to Plead A Claim Upon Which Relief Could Be Granted.**

**A.  Section 2.202 does not violate the Establishment Clause.**

**1.  Section 2.202 reflects a longstanding practice that follows the tradition of religious neutrality.**

Plaintiffs allege that Section 2.202 is unconstitutional because (1) it is inconsistent with historical practices and understandings and (2) it unconstitutionally coerces individuals to associate with a religious organization to solemnize weddings and to be married by individuals who do not share their belief system. (ECF No. 22 at 21).

First, Section 2.202 is consistent with historical practices and understandings. Texas has a long history of limiting the class of individuals authorized to solemnize a marriage, similar to other states, and this history and tradition dates back to legal traditions inherited from England. (ECF

No. 20 at 22–25). Plaintiffs only contrary assertion is that in England marriages could be solemnized by clergy, public officials, sea captains, notaries public, and the celebrant themselves. (ECF No. 22 at 22). Yet, Plaintiff offers no explanation as to why this Court should place greater emphasis on the practices of pre-colonial England when Texas and other states have had a long history of limiting who can solemnize marriages. While looking towards similar laws in England is sometimes done when making a historical analysis of a statute, The United States Supreme Court tends to focus on the history of *this* nation rather than England's historical practices when performing a historical analysis of a statute for First Amendment purposes. *See Marsh v. Chambers*, 463 U.S. 783, 789–92 (1983) (only viewing the nations history dating back to colonial times when conducting a historical analysis); *see also Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 575–578 (2014) (conducting historical analysis by only viewing the nations history as far as colonial times and not reviewing what England had done prior). Texas, and several other states, have had a history of limiting who can solemnize marriages that is consistent with Section 2.202, and Plaintiffs offer no other explanation as to why Section 2.202 is inconsistent with historical practices in Texas and this nation. (ECF No. 20 at 22–25).

Second, plaintiffs allege that Section 2.202 unconstitutionally coerces individuals to associate with a religious organization to solemnize weddings and to be married by individuals who do not share their belief system. (ECF No. 22 at 21). As a preliminary manner, Plaintiffs cannot assert claims on behalf of other individuals such as those that may be allegedly "coerced" into being married by someone who does not share their beliefs. A plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). CFI has not identified any members that claim they were forced to associate with a religion because they could not have a CFI member solemnize their marriage. Further, individuals need not have a

member of a religious organization solemnize their marriage as they can still have a current, former, or retired federal or state judge solemnize their marriage. Tex. Fam. Code § 2.202(a)(4).

Section 2.202 does not coerce anyone to associate with a religious organization to solemnize weddings. Plaintiffs base their argument on the idea that Section 2.202 is forcing people to engage in a formal religious exercise by requiring them to become ordained by an Internet "church," something that Plaintiffs consider to be akin to "marriages performed by hypocrites[.]" (ECF No. 22 at 23) (citing *Ctr. for Inquiry, Inc. v. Marion Circuit Court Clerk*, 758 F.3d 869, 874 (7th Cir. 2014)). But Section 2.202 is not forcing people to engage in a formal religious exercise. No one is required to become a person qualified to solemnize marriages. To the extent that Plaintiffs allege that Section 2.202 is forcing them to engage in this religious activity, that is simply not the case as being able to solemnize marriages is not a fundamental right that is available to everyone. While the right to marry is a fundamental right protected by the Equal Protection Clause of the Fourteenth Amendment, *see Zablocki v. Redhail*, 434 U.S. 374 (1978), the right to set the prerequisites for securing the legal status of marriage, is a sovereign function of the states. *Sosna v. Iowa*, 419 U.S. 393, 404 (1975) ("The state . . . has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved.").

Further, Plaintiffs are not forced to do anything, because they already qualify as a religious organization for purposes of Section 2.202. Section 2.202 is not forcing CFI to call itself a religious organization or officiate "marriages performed by hypocrites" as they put it. CFI and its members are capable of solemnizing marriages as is right now, and while they qualify as a religious organization for purposes of Section 2.202, as secularism is currently recognized under the statute, they need not call themselves a religious organization nor do they need to do anything that is

contrary to their current beliefs to solemnize marriages under the statute. Defendant-Intervenor understands Plaintiffs concerns with having to portray themselves in a manner contrary to their beliefs, but as it stands the Texas Family Code would not require them to profess anything that is contrary to their beliefs. The Texas Family Code requires that a person who conducts the marriage ceremony to record the date on which it occurred, the county in which it occurred, and their name. Tex. Fam. Code § 2.206(a). The county clerk upon receipt of the marriage license in turn records the date of the marriage ceremony, the county in which it occurred, and the name of the person who conducted the ceremony. Tex. Fam. Code § 2.208(b). Nowhere in these procedures do Plaintiffs have to engage in conduct contrary to their beliefs by denoting themselves as ministers, nor do these statutes outline what needs to be said in a marriage ceremony. Plaintiffs remain free to express and stay true to their secular principles and beliefs when conducting these marriage ceremonies.

Section 2.202 reflects a longstanding practice that follows the tradition of religious neutrality, and in no way does it unconstitutionally coerce Plaintiffs to associate with a religious organization. They have therefore failed to state a claim under the Establishment clause.

**2.    While the Lemon test does not apply here, Section 2.202 nevertheless satisfies it.**

Section 2.202 reflects a longstanding practice and follows the tradition of religious neutrality, so it is unnecessary to apply the *Lemon* test in this scenario. *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 60 (2019). However, even if the *Lemon* test were to be applied, Section 2.202 satisfies that test. The *Lemon* test states that a law violates the Establishment Clause if it: (1) lacks a legitimate secular purpose; (2) has the primary effect of advancing or inhibiting a religion; or (3) fosters an excessive entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971).

Section 2.202 has the secular purpose of establishing what kinds of ceremonies will be recognized by the (secular) State authorities as legitimate for purposes of solemnizing a marriage.

*See* Tex. Fam. Code § 2.202(a). Plaintiffs allege that this is not the case and that the "only purpose for allowing religious clergy to solemnize marriages while preventing non-religious celebrants from doing so is to endorse a religion—a decidedly non-secular purpose." (ECF no. 22 at 24). Plaintiffs essentially argue that Defendant-Intervenor's stated secular purpose is a "sham."

"In undertaking [a] 'sham' inquiry, [the court] consider[s] whether [the challenged action] furthers the particular purposes articulated by the [legislature] or whether the [challenged action] contravenes those avowed purposes." *Croft v. Perry*, 624 F.3d 157, 166–67 (5th Cir. 2010) (internal quotations omitted). The Fifth Circuit has held "[i]n order for state activity to pass muster under *Lemon*'s first criterion a sincere secular purpose for the contested state action must exist; even if that secular purpose is but one in a sea of religious purposes." *Freiler v. Tangipahoa Parish Bd. of Educ.*, 185 F.3d 337, 344 (5th Cir. 1999). Section 2.202 also allows secular individuals, current, former, or retired federal or state judges, to solemnize marriages. Tex. Fam. Code § 2.202(a)(4). Plaintiffs offer no explanation why Section 2.202 would allow for these secular individuals to solemnize marriages when its alleged purpose is to endorse religion. The State's secular purpose is therefore not a "sham."

Section 2.202 also satisfies the second prong of the *Lemon* test as it treats all religions equally and provides for secular ceremonies for those who do not desire a religious ceremony. Plaintiffs incorrectly state that Section 2.202 asks secular celebrants to "falsely tie themselves to an online 'faith'[.]" (ECF No. 22 at 25). Once again, to the extent that Plaintiffs are attempting to argue that Section 2.202 does not allow a person getting married to freely choose who they want to officiate their wedding, they lack standing to bring such a claim. Plaintiffs bring their cause of action on behalf of themselves as marriage officiants, not as individuals attempting to get married. Further, Plaintiffs are mistaken in their assertion that Section 2.202 forces people to tie themselves

to an online "faith." Section 2.202 allows former, current, or retired judges to solemnize a marriage, and Plaintiffs have no way of demonstrating that having a judge solemnize a marriage is itself a way of endorsing religion. At most Section 2.202 provides an incidental or indirect benefit to "religion," as the term "religious organization" is used in the broadest sense possible, and this does not make Section 2.202 unconstitutional. *See Croft*, 624 F.3d at 168 (explaining that the Establishment Clause does not forbid statutes whose effect merely happens to coincide or harmonize with some tenets of some religions).

Finally, Section 2.202 satisfies the third prong of the *Lemon* test because it does not "foster excessive entanglement with religion" as it allows for secular ceremonies for those who wish. Plaintiffs contend that Section 2.202 "delegates the government function of solemnizing marriages to religious celebrants but not to secular people" and that in doing so excessively entangles government with religion. (ECF No. 22 at 26). Yet, Section 2.202 also grants secular government officials over whom religious organizations have no control, to solemnize marriages, so it is not something that only religious organizations can do. Section 2.202 also grants solemnization authority to religious officials regardless of their religion—to include secularism—and without any inquiry or qualification requirements on the part of the state. *Martinez v. Clark Cnty., Nev.*, 846 F.Supp.2d 1131, 1144 (D. Nev. 2012) (finding Nevada's solemnization statute violated *Lemon*'s third prong in part because "the Nevada statute appears to give unfettered discretion to the county clerk to decide whether a particular organization qualifies as a religious organization to trigger eligibility for the applicant seeking a certificate").

While the *Lemon* test should not apply due to Section 2.202 reflecting a longstanding practice that follows the tradition of religious neutrality, it nonetheless also satisfies the *Lemon* test and Plaintiffs' establishment clause claim should be dismissed.

**B. Section 2.202 does not violate the Equal Protection Clause.**

Section 2.202 does not violate the equal protection clause because it does not burden a fundamental right; it does not target a suspect class; and it does not treat Plaintiffs differently from a similarly situated group without a rational basis for the difference. *See Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016); *see also* (ECF No. 20 at 27).

Plaintiffs merely allege that they are similarly situated to religious celebrants but treated differently under Section 2.202. (ECF No. 22 at 27). As previously stated though, Plaintiffs are not treated differently under Section 2.202 because they would qualify as a religious organization for purposes of Section 2.202 and can solemnize marriages. *See* (ECF No. 20 at 13–18); *see also supra* II.A.2.

Even if Plaintiffs were treated differently though, it is still both rational and a legitimate goal for the state to accommodate both religious beliefs and secular beliefs, while still maintaining some limitations on who is authorized to perform marriages in order to maintain the respect and solemnity that marriage deserves. *See Ctr. for Inquiry, Inc. v. Warren*, No. 3:18-CV-2943-B, 2019 WL 3859310, at *15 (N.D. Tex. Aug. 16, 2019), *vacated*, 845 F. App'x 235 (5th Cir. 2021). Plaintiffs contend that the Defendant-Intervenor's reasoning is undermined because Section 2.202 allows certain religious organizations, such as Universal Life Church, to solemnize marriages without requiring its officiants to undergo formal training or to articulate a set of beliefs. (ECF No. 22 at 28). Yet the only thing this undermines is Plaintiffs' argument that Section 2.202 forbids them from solemnizing marriages. Plaintiffs essentially want this Court to disregard the fact that the state clearly views "religious organization" as a very broad term that encompasses many different types of organizations so that they can continue to argue that they do not qualify as a religious organization for purposes of Section 2.202, while at the same time asking the Court to find that rational basis cannot exist because the state views "religious organization" as such a broad

term.

The reality is that the state has to balance its interest in ensuring the respect, solemnity, and gravity of marriage ceremonies in the state with its obligation to not discriminate on the basis of religion or significantly entangle itself in the practices of religious organizations. *Warren*, No. 3:18-CV-2943-B, 2019 WL 3859310 at *15. Section 2.202 rationally serves that purpose by having a broad definition of "religious organization" as well as allowing former, current, and retired judges to solemnize marriages. Thus, Plaintiffs have failed to state an Equal Protection Clause claim.

**C. Section 2.202 does not impose an impermissible religious test in violation of Article VI, Clause Three of the United States Constitution.**

Plaintiffs allege that Section 2.202 is an impermissible religious test in violation of Article VI, Clause Three of the United States Constitution. This Clause provides that "no religious Test shall even be required as a Qualification to any Office or public Trust under the United States." U.S. Const., Art. VI, cl. 3. Plaintiffs essentially allege that persons "grant[ed] the official authority to solemnize marriages to private individuals" are officers of public trust, relying on *Martinez*. (ECF No. 11 ¶ 50). Yet, in *Martinez* the Court did not analyze whether officiants were actually considered officers of public trust, and even stated that the "parties have failed to adequately brief the issue." *Martinez*, 846 F.Supp.2d at 1145.

Further, looking at the entirety of the Clause, it becomes clearer that wedding officiants are not considered officers of public trust. The Clause specifically mentions "Senators", "Representatives", "Members of the several State Legislatures," and all "Executive and Judicial Officers" of the United States and the several States as being bound, by oath or affirmation, to support the Constitution. U.S. Const., Art. VI, cl. 3. It then states that no religious test shall ever be required as a qualification to any office or public trust under the United States. *Id*. A plain

13

reading of the Clause would indicate that it was specifically referencing senators, representatives, members of the several state legislatures, and all executive and judicial officers. An expanded interpretation of the Clause could be read as stating that those members who were duly elected into office or appointed by duly elected officers are considered officers of public trust. All the positions referenced by the Clause, specifically reference positions in which a person is elected to (senators, representatives, members of the several state legislatures, the executive, or judicial officers in certain circumstances) or positions one obtains by being appointed by an elected representative (executive and judicial officers). Contrarily, people authorized to solemnize marriages are not a position upon which a person is elected to, nor are they appointed by a person who was elected. Rather it is something that the state legislature has enacted through statute, and thus cannot be considered an officer of public trust based on the plain reading of Clause 3.

More importantly, even if this court were to treat persons granted the official authority to solemnize marriages as officers of public trusts, *Martinez* is clearly distinct from the facts of this case. In *Martinez*, the court had found that the statute in question could be perceived as a religious test because an applicant for a certificate allowing them to solemnize marriages needed to profess an association with a religious organization in order to obtain the certificate. *Id* at 1145. Here, Section 2.202 does not require Plaintiffs to profess an association with a religious organization to the extent that the statute in *Martinez* did. While Section 2.202 does require for a person to be an officer of a religious organization and authorized by the organization to conduct a marriage, Section 2.202 does not in fact require Plaintiffs to profess or submit proof of their specific religion or religious beliefs. *See* Tex Fam. Code § 206(a) (requiring the marriage officiant to only include date of ceremony, county in which it happened, and the officiant's name); Tex. Fam. Code § 2.208(b) (requiring the county clerk to only record the date of the marriage ceremony, county in

which it was conducted, and name of the person who conducted the ceremony). Thus, while Plaintiffs are mistaken in their belief that people who are allowed to solemnize marriages are officers of public trusts, even if they were correct in that assertion, Section 2.202 would still not constitute a religious test.

### D. Section 2.202 does not violate Plaintiffs' Freedom of Speech.

Section 2.202 is not a restriction on speech because it does not restrict any expressive conduct. Plaintiffs allege that "Section 2.202 restricts expression and speech based on content and viewpoint because it only denies individuals who wish to perform marriage ceremonies in a non-religious way—and as a byproduct—only non-religious individuals are forced to either limit or change their intended speech." (ECF No. 30). But Section 2.202 does not require any magic or religious words when conducting a marriage ceremony.

Plaintiffs cite to *303 Creative LLC v. Elenis*, as their justification for why Section 2.202 limits their speech, but the facts in *303 Creative LLC*, are clearly distinct from the facts in this case. *303 Creative LLC* addressed whether an individual could be required to create a wedding website that contradicted her belief that marriage was between one man and one woman, with the Supreme Court holding that the website qualified as the petitioner's "pure speech." *303 Creative LLC v. Elenis*, 600 U.S. 570, 587 (2023). More importantly, the case dealt with Colorado's Colorado Anti-Discrimination Act ("CADA") which prohibited public accommodations, such as 303 Creative LLC's website services, from denying the full and equal enjoyment of its goods and services to any customer based on his race, creed, disability, sexual orientation, or other statutorily enumerated trait. *Id*. at 580–81 (citing Colo. Rev. Stat. §§ 24-34-601(1), 24-34-601(2)(a)). The Supreme Court found that this statute would seek to compel speech that petitioner did not wish to provide, specifically that it would force her to create custom websites celebrating marriages that do not align with her beliefs. *Id*. at 588.

15

This case is nothing like *303 Creative LLC*. Section 2.202 does not compel speech. Section 2.202 does not compel Plaintiffs to say or do any specific act while solemnizing a marriage. It merely dictates the requirements to be able to legally solemnize a wedding. Under Section 2.202 Plaintiffs are free to chose which marriages they would like to solemnize and what is—or is not—said during the ceremonies. As previously demonstrated, Plaintiffs are allowed to solemnize marriages, and CFI's secular beliefs fall within Section 2.202's definition of a religious organization. *See* (ECF No. 20 at 13–18); *see also supra* II.A.2. Section 2.202 in no way compels speech like CADA did and Plaintiffs are in no way forced to become part of a religious organization that they do not wish to be a part of. Since Section 2.202 does not infringe on Plaintiffs free speech, their claim should be dismissed for failure to state a claim.

### E.  Section 2.202 does not impose an unconstitutional condition.

Section 2.202 does not impose an unconstitutional condition on receiving a governmental benefit because the ability to legally solemnize a marriage is not a governmental benefit. Section 2.202 also does not place an unconstitutional condition on the ability to solemnize marriages. First, it has already been demonstrated that Section 2.202 is constitutional under the First and Fourteenth Amendments as well as Article VI, Clause 3. *See generally* (ECF No. 20 at 20–31); *see also supra* II.B.1–4. Second, Plaintiffs allege that the ability to legally solemnize a marriage is a governmental benefit but offer no case law in support of this assertion. (ECF No. 22 at 31–32). The unconstitutional conditions doctrine is only implicated by a "valuable governmental benefit[.]" *Dep't of Tex., Veterans of Foreign Wars of the U.S. v. Tex. Lottery Comm'n*, 760 F.3d 427, 437 (5th Cir. 2014) (quoting *Perry v. Sinderman*, 408 U.S. 593, 597 (1972)). While in the past the Supreme Court has found valuable governmental benefits to include tax exemptions, *Regan v. Taxation Without Representation of Wash*, 461 U.S. 540, (1983); welfare payments, *Graham v. Richardson*, 403 U.S. 365 (1971); and unemployment benefits, *Sherbert v. Verner*, 374 U.S. 398

(1963), it has not held that the right to solemnize marriages is a valuable governmental benefit, and Plaintiff has pointed to no case law in which any Court has held otherwise. Therefore, their claim should be dismissed.

### III. CONCLUSION

For all the foregoing reasons and those stated in Defendant-Intervenor's Motion to Dismiss, (ECF No. 20), the Attorney General asks that Plaintiffs claims be dismissed with prejudice in their entirety.

Respectfully submitted.

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

*/s/ Martin Arroyo Jr.*
**MARTIN ARROYO JR.**
Attorney-in-Charge
Texas Bar No. 24133114
Office of the Attorney General
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667
**LEAD COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I certify that on February 19, 2025, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Martin Arroyo Jr.*
**MARTIN ARROYO JR.**
Assistant Attorney General

18