IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **ERIC MCCUTCHAN, ET AL.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:24-CV-01039-O** |
| | § | |
| **MARY LOUISE NICHOLSON, ET AL.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Defendants' Motion to Dismiss (ECF No. 16), filed December 31, 2024; and Plaintiffs' Response (ECF No. 21), filed January 21, 2025. Additionally, before the Court are the Attorney General of Texas's Motion to Dismiss (ECF No. 20), filed January 15, 2025; Plaintiffs' Response (ECF No. 22), filed February 6, 2025; and the Attorney General's Reply (ECF No. 26), filed February 19, 2025. The Court held a hearing on the Motions on April 16, 2025.[1] After considering the briefing and relevant case law, the Court determines that the Motions to Dismiss should be and are hereby **GRANTED**.

## I.    BACKGROUND[2]

This dispute involves the constitutionality of Section 2.202 of the Texas Family Code ("Section 2.202" or the "statute"). TEX. FAM. CODE § 2.202. This statute designates who is authorized to solemnize weddings in Texas.

---

[1] *See* Min. Entry, April 16, 2025, ECF No. 31.
[2] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiffs' Amended Complaint. *See* Pls.' Am. Compl., ECF No. 11.

### A.  Texas's Marriage-Licensing System

Section 2.202 states in relevant part that:

(a) The following persons are authorized to conduct a marriage ceremony:

> (1) a licensed or ordained Christian minister or priest;
>
> (2) a Jewish rabbi;
>
> (3) a person who is an officer of a religious organization and who is authorized by the organization to conduct a marriage ceremony; and
>
> (4) a current, former, or retired federal judge or state judge.

TEX. FAM. CODE § 2.202(a). The person who performs the ceremony must return the license to a County Clerk, who will then record and issue the completed marriage certificate. *Id.* §§ 2.206, 2.208. County Clerks, who record a returned marriage license, are not required by the Texas Family Code to examine the credentials of the person who returns a marriage license. *See id.* § 2.208.

A marriage conducted by an unauthorized person is generally invalid, subject to a few exceptions. *See id.* § 2.302. Further, a person who "knowingly conducts a marriage ceremony without authorization" under Section 2.202(a) commits a Class A misdemeanor that carries a punishment of up to one year in county jail and a fine of up to $4,000. *Id.* § 2.202(c); *see* TEX. PENAL CODE § 12.21. District Attorneys are responsible for enforcing Texas's criminal laws, including this statute. *See generally* TEX. LOC. GOV'T CODE.

### B.  The Parties

Plaintiff Center for Inquiry, Inc. ("CFI") is a nonprofit organization whose mission is to foster a secular society. CFI offers secular marriage ceremonies and a secular celebrant program to certify its members to solemnize marriages. Plaintiff Eric McCutchan ("Individual Plaintiff") (collectively, "Plaintiffs") completed the secular celebrant program and is certified by CFI. CFI

2

has supporters across the nation, including nearly 1,000 supporters in Texas, and operates an active branch in Austin, Texas, ("CFI Austin"), which holds regular meetings and events for its members. CFI Austin has received multiple requests to provide secular celebrants to conduct weddings. CFI operates as a purely secular organization and maintains that scientific methods and reasoning should be utilized in examining religion. CFI believes that religion is a human creation, but that there are basic human values and ethical principles that should govern human behavior. CFI expresses a commitment to improve human welfare in this world. CFI has supporters in Texas who would like to be married by a person who has completed the secular celebrant program and is therefore authorized by CFI to solemnize marriages.

Individual Plaintiff is a citizen of Texas, residing in Tarrant County. He has been a secular celebrant certified by CFI since February 2014. Individual Plaintiff wishes to conduct marriages and sign the marriage licenses for those seeking a non-religious marriage ceremony in Texas. Numerous CFI supporters have requested that he conduct their marriage ceremonies. He has informed these couples that secular celebrants may not, under Texas law, solemnize the marriage itself.

Mary Louise Nicholson ("Defendant Nicholson") is the duly elected Tarrant County Clerk and is being sued in her official capacity pursuant to Federal Rule of Civil Procedure 17(d). Phil Sorrells ("Defendant Sorrells" or the "District Attorney") (collectively, "Defendants") is the duly elected Tarrant County District Attorney and is also being sued in his official capacity pursuant to Rule 17(d). The Attorney General of Texas ("Attorney General") intervened in this case to defend the constitutionality of Section 2.202.

Plaintiffs bring suit asking the Court to declare Section 2.202 unconstitutional and enjoin Defendants from enforcing the statute against Plaintiffs. Plaintiffs do not ask for religious officials

to be prohibited from celebrating marriages. Instead, CFI wants its CFI-certified celebrants to be permitted to conduct legally binding marriages. Defendants and the Attorney General have moved to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). These Motions are ripe for the Court's review.

## II.    LEGAL STANDARD

Motions filed under Federal Rule of Civil Procedure 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court to hear a case. FED. R. CIV. P. 12(b)(1). Because a Rule 12(b)(1) motion concerns a court's power to hear a case, when a Rule 12(b)(1) motion is brought with other Rule 12 motions to dismiss, the Rule 12(b)(1) motion must be addressed first. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Article III of the Constitution limits the exercise of the judicial power to "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 438 (2017) (citation omitted). "The party invoking federal jurisdiction bears the burden of establishing" that it has standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

There are three requirements for Article III standing. A party seeking relief in federal court must demonstrate: (1) an injury-in-fact, which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) that the injury is "fairly traceable to the challenged action"; and (3) that it is "likely . . . that the injury will be redressed by a favorable decision." *Id.* at 560–61 (citation modified).

## III.    PRELIMINARY ISSUE

The Court first addresses a preliminary issue raised by the Attorney General before reaching the remainder of the Motions to Dismiss. The Attorney General asserts that CFI is a

"religious organization" under the Texas Family Code and a "religion" under the First Amendment.[3] The Attorney General believes that Individual Plaintiff and others authorized to solemnize marriage by CFI can *already* conduct marriage ceremonies in Texas *because* it is a religious organization. While Plaintiffs wish to conduct marriage ceremonies, they vehemently disagree that CFI is a religion or religious organization.[4] In any event, the Attorney General's argument that CFI is a "religious organization" or a "religion" such that CFI secular celebrants are permitted to conduct marriage ceremonies in Texas, if true, would eliminate the controversy at the heart of this case, requiring dismissal before reaching any other argument. Thus, the Court must address, as a threshold issue, whether there is even a controversy between the parties to this case. For the following reasons, the Court disagrees with the Attorney General; CFI is neither a religious organization nor a religion.

### A.  What is religion?

To determine if CFI is a religion or religious organization, the Court must trace the history of how the Supreme Court has defined "religion." The word religion makes two appearances in the Constitution. The First Amendment of the United States Constitution declares that "Congress shall make no law respecting the establishment of *religion*, or prohibiting the free exercise *thereof*." U.S. CONST. amend. I (emphasis added)(the "Establishment Clause" and "Free Exercise Clause" respectively). The only other reference is in Article VI of the Constitution, which prohibits the use of "*religious* Tests . . . as a Qualification to any Office or public Trust under the United States." U.S. CONST. art. VI, cl. 3 (emphasis added)(the "Oaths Clause").

---

[3] *See generally* Att'y Gen.'s Mot. Dismiss, ECF No. 20.
[4] *See* Pls.' Resp. to Att'y Gen. 9–10, ECF No. 22 (arguing the Attorney General's Motion is a "novel '11th hour' interpretation of Section 2.202" and contrary to arguments made in previous litigation) (citing *Ctr. for Inquiry, Inc. v. Warren*, No. 3:18-cv-02943, ECF No. 11 at 4–5 (N.D. Tex. Dec. 28, 2018); *Ctr. for Inquiry, Inc. v. Warren*, No. 19-11029, ECF No. 39 at 28 (5th Cir. Feb. 21, 2020)).

In the first case to address this issue, the Supreme Court noted that "the word 'religion' is not defined in the Constitution." *Reynolds v. United States*, 98 U.S. 145, 162 (1878). The Supreme Court needed to "go elsewhere, therefore, to ascertain its meaning." *Id.* And there was "nowhere more appropriate[]" to look "than to the history of the times in the midst of which the provision was adopted." *Id.* The Supreme Court therefore defined religion using James Madison's definition in *Memorial and Remonstrance*, that is, "the duty we owe the Creator." *Id.* at 163 (citation omitted). Thus, *Reynolds* indicates that religion has a theistic definition.

The Supreme Court's next attempt to define religion also provided a strict theistic definition. *Davis v. Beason*, 133 U.S. 333, 342 (1890) *abrogated by Romer v. Evans*, 517 U.S. 620 (1996). The Supreme Court said, "[t]he term 'religion' has reference to one's view of his relations to his Creator, and to the obligations they impose of reverence for his being and character, and of obedience to his will." *Id.* at 342. Nearly half a century later, Justice Hughes said, "[t]he essence of religion is belief in a relation to God involving duties superior to those arising from any human relation." *United States v. Macintosh*, 283 U.S. 605, 633–34 (1932) (Hughes, C.J., dissenting) *overruled by Girouard v. United States*, 328 U.S. 61, 69 (1946).

Despite this history of imparting a theistic definition to the term "religion," the Supreme Court appeared to reverse course in a footnote in *Torcaso v. Watkins*, 367 U.S. 488, 495 n.11 (1961). There, when interpreting the Oaths Clause of Article VI, the Supreme Court said that "[a]mong religions in this country which do not teach what would generally be considered a belief in the existence of God are Buddhism, Taoism, Ethical Culture, Secular Humanism and others." *Id.* In effect, the Supreme Court for the first time suggested that it is possible to have a religion without God.

Additionally, in two statutory-interpretation cases, the Supreme Court granted conscientious objection to war, which was reserved for "belief in a relation to a Supreme Being," because of an applicant's "purely ethical creed" in *Seeger* and for reasons based in "history and sociology" in *Welsh*. *United States v. Seeger*, 380 U.S. 163, 166 (1965); *Welsh v. United States*, 398 U.S. 333, 341 (1970). By contrast, the Supreme Court seemingly rejected that philosophical objections were equal to religious objections in *Wisconsin v. Yoder*, 406 U.S. 205 (1972). In that case when Amish families refused to comply with Wisconsin's compulsory education law due to their belief in biblical teaching, the Supreme Court said if the plaintiffs had instead been resting their objection on the philosophy of Henry David Thoreau, it "would not rest on a religious basis" and thus not "rise to the demands of the Religion clauses." *Id.* at 216.

In sum, the Supreme Court has never consistently defined the term "religion," as used in the Constitution, but instead has provided both theistic and seemingly non-theistic definitions. With this context in mind, the Court must address the Attorney General's argument that CFI is a religious organization under the Texas Family Code and a religion under the First Amendment.

### B.  Is CFI a religion?

The Attorney General argues that any "CFI-certified secular celebrant, including [Individual Plaintiff], is authorized to solemnize a marriage pursuant to Section 2.202" because CFI is a "religious organization" under the Texas Family Code.[5] The Court disagrees: CFI is not a religious organization or a religion under the First Amendment.

First, the Attorney General invokes *Torcaso* to argue that "it would be unconstitutional to deny CFI celebrants the ability to solemnize marriages in Texas where that same right is extended

---

[5] Att'y Gen.'s Mot. Dismiss 6–7, ECF No. 20.

to other religious organizations."[6] The Attorney General argues that *Torcaso* prohibits states from "'aid[ing] those religions based on a belief in the existence of God as against those religions founded on different beliefs,' such as 'Buddhism, Taoism, Ethical Culture, Secular Humanism, and others.'"[7] The Attorney General reasons that because CFI "promotes values often denominated as secular humanism," *Torcaso* controls this case.[8]

The Court disagrees—*Torcaso* does not control this case. In *Torcaso*, the Supreme Court addressed the question of whether a notary public was unconstitutionally denied his appointed office under the Oaths Clause because he refused to declare a belief in the existence of God. 367 U.S. at 489. It does not necessarily follow from *Torcaso*'s mention of religions that lack the belief in God that CFI is a religion. In any event, the Supreme Court in *Torcaso* did not designate *any* group with an ethical belief system a religion.[9] Instead, *Torcaso* only held that "neither a State nor the Federal Government can constitutionally force a person 'to profess a belief or disbelief in any religion.'" *Id.* at 495.

Furthermore, the Attorney General's reliance on *Torcaso* ignores the historical theistic definition of religion declared in *Reynolds* and suggested in *Yoder.* 98 U.S. at 163; 406 U.S. at 216.[10] In sum, the Attorney General's extension of *Torcaso* is wholly unpersuasive, especially here, where Plaintiffs' case is predicated on Texas treating CFI less favorably because it is *not* a religious organization.

---

[6] *Id.* at 7.
[7] *Id.* (quoting *Torcaso,* 367 U.S. 488, 495 & n.11 (1961)).
[8] *Id.* (citation omitted).
[9] Among organizations in this country with ethical belief systems that are not religions are the Boy Scouts, Sierra Club, Rotary International, Lions Club, and others.
[10] *See* Hr'g Tr. at 69:19-21, ECF No. 32 (arguing "more recent Supreme Court precedent would show that we moved away from the idea that religion can only be this idea of man and his creator to mean more things.").

Second, the Attorney General argues that CFI's misunderstanding that it is not a religion is based on the difference between the "proper sense" and the "colloquial sense" of the word "secular."[11] The Attorney General contends the following:

> CFI is not secular because it adopts clear, specific, and overt religious beliefs, namely that it "denies that a supernatural source is required for life to have and for people to be guided by values and ethics." The rejection of God and the supernatural is a religious belief; a truly secular organization would take no stance on the issue. Thus, regardless of what they call themselves, [] CFI is a religious organization both within the meaning of Section 2.202 and within the ordinary meaning of that term.[12]

Again, the Court disagrees with the Attorney General. The Attorney General's argument about the proper and colloquial sense of secular does not prove that CFI is a "religious organization." The Attorney General argues, in essence, that because Plaintiffs are not secular in the "proper sense" of the word, they are a "religious organization" under the Texas Family Code.[13] However, the Texas Family Code does not grant the authority to solemnize marriages to all non-secular organizations. Instead, the statute authorizes "officer[s] of a religious organization" and judges to celebrate a legally recognized marriage. TEX. FAM. CODE § 2.202(a). Said another way, Texas allows a man and a woman to choose either a religious officiant or a secular state official to conduct their wedding. Even if CFI is not a "secular" organization under the proper sense of the word as the Attorney General argues, that does not mean that CFI is a "religious organization."

Third and finally, the Attorney General invokes the canon of constitutional avoidance to argue that this Court should interpret the term "'religious organization' to include [] CFI."[14] The Attorney General's argument is mistaken. While the canon of constitutional avoidance is *often*

---

[11] Att'y Gen.'s Mot. Dismiss 10 n.5, ECF No. 20.
[12] *Id.* at 10 (citation omitted).
[13] *Id.*
[14] *Id.* at 7.

useful to avoid questions that would "raise[] serious constitutional doubts," it does not demand the Court to stretch language beyond its meaning. *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018); *see Nielsen v. Preap*, 586 U.S. 392, 419 (2019) ("The canon 'has no application' absent 'ambiguity.'" (quoting *Warger v. Shauers*, 574 U.S. 40, 50 (2014))). The Attorney General clarified during the April 16, 2025, hearing that Section 2.202 of the Texas Family Code is not ambiguous.[15] Therefore, the Court need not construe the statute contrary to the plain meaning of the text by gerrymandering CFI into the definition of religious organization to avoid constitutional problems.

Finally, the Court notes that the Attorney General's argument is unmoored from both the text of the statute and the Texas history from which Section 2.202 originates. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 536 (2022) ("An analysis focused on original meaning and history . . . has long represented the rule."). Section 2.202 has a long history in Texas, and similar statutes have origins since the time of the American colonies.[16] *See* 1837 Repub. Tex. Laws 233–34 (authorizing only "ordained Ministers of the Gospel" and state and local judges "to celebrate the rites of matrimony" for the Republic of Texas). At oral argument, the Attorney General discarded the history and tradition of the Texas law, stating that Satanism and Atheism were "religion[s]" and "religious organization[s]" under the Texas Family Code.[17] Interpreting the terms "religion" and "religious organization" to cover Satanism and Atheism not only ignores history and tradition but distorts their plain meaning and risks setting a dangerous precedent. *See Ctr. for*

---

[15]*See* Hr'g Tr. at 63:24-25, ECF No. 32 ("So the State states that it's not ambiguous.").

[16] *See* Michael W. McConnell, *Establishment and Disestablishment at the Founding, Part I: Establishment of Religion*, 44 Wm. & Mary L. Rev. 2105, 2175 (2003) (discussing the legal history of who could and could not solemnize marriages); Robert E. Rains, *Marriage in the Time of Internet Ministers: I Now Pronounce You Married, but Who Am I to Do So?*, 64 U. Miami L. Rev. 809, 842–77 (2010) (reproducing analogous statutory provisions from every state, including Texas).

[17] *See* Hr'g Tr. at 65:10-19, ECF No. 32 (answering "Yes" to Satanism and Atheism being a "religion[s]" and "religious organization[s]").

*Inquiry, Inc. v. Warren*, No. 3:18-CV-2943-B, 2019 WL 3859310, at *8–9 (N.D. Tex. Aug. 16, 2019) (upholding Section 2.202 under a historical analysis) *rev'd on other grounds*, 845 F. App'x 325 (5th Cir. 2021). The Court rejects this argument and, since there is a controversy between the parties, will now analyze Defendants' Motions to Dismiss.

## IV.  ANALYSIS

Defendants and the Attorney General request this Court dismiss this action because they argue Plaintiffs do not have standing.[18] Additionally, Defendants and the Attorney General moved to dismiss this action for failure to state a claim under Rule 12(b)(6) in the event the Court has jurisdiction.[19] Plaintiffs contend that they have standing to bring this action and that they have sufficiently stated a claim under Rule 12(b)(6).[20] The Court concludes that Plaintiffs do not have standing in this action against the District Attorney, a necessary defendant. So, the Court dismisses Plaintiffs' claims for lack of jurisdiction.

### A.  Standing

Defendants and the Attorney General collectively challenge Plaintiffs' ability to demonstrate all three elements of standing.[21] Individual Plaintiff argues that he has standing, and CFI asserts that it has associational standing. Because CFI's associational standing argument is predicated on Individual Plaintiff's ability to sue, the Court addresses whether Individual Plaintiff has standing before discussing CFI's standing.

---

[18] Att'y Gen.'s Mot. Dismiss 4–13, ECF No. 20; Defs.' Mot. Dismiss 3–6, ECF No. 16.
[19] Att'y Gen.'s Mot. Dismiss 13–24, ECF No. 20; Defs.' Mot. Dismiss 6–14, ECF No. 16.
[20] Pls.' Resp. to Att'y Gen. 1, ECF No. 22; Pls.' Resp. to Defs. 1, ECF No. 21.
[21] The Court does not address the Attorney General's argument regarding traceability because this argument is based on CFI being a religion.

### 1.  Individual Plaintiff's Standing

For Individual Plaintiff to have standing, each of his claims must satisfy the *Lujan* standing analysis. *See Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)) ("'[A plaintiff] must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'"). The Court addresses whether Individual Plaintiff satisfies *Lujan*'s tripartite test below.

### a.  Injury in Fact

Individual Plaintiff brings five counts in this action against *both* Defendant Nicholson and Defendant Sorrells: (1) violation of the establishment clause of the First Amendment; (2) violation of the equal protection clause of the Fourteenth Amendment; (3) violation of Article VI of the Constitution; (4) violation of the free speech clause of the First Amendment; and (5) violation of the unconstitutional conditions doctrine. For all of Individual Plaintiff's claims, he alleges two injuries in fact: (1) Texas's discrimination against Individual Plaintiff, namely, providing a barrier to obtain the benefit of solemnizing marriages in Texas; and (2) the threat of prosecution for the unauthorized solemnization of marriages.[22] In addition, for his freedom of speech claim, Individual Plaintiff argues the Court can engage in pre-enforcement review under the relaxed standing requirements because Section 2.202 chills his speech.[23]

Regarding Individual Plaintiff's injury with respect to Defendant Nicholson, the County Clerk, Individual Plaintiff argues the barrier to obtain the benefit of solemnizing marriages is a sufficient injury.[24] The Court agrees. The Supreme Court has stated:

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have

---

[22] *See* Pls.' Am. Compl. ¶ 31, ECF No. 11.
[23] *Id.* ¶ 59.
[24] Pls.' Resp. to Att'y Gen. 6–7, ECF No. 22; Pls.' Resp. to Defs. 7–8, ECF No. 21.

> obtained the benefit but for the barrier in order to establish standing. The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). Thus, "[d]iscriminatory treatment at the hands of the government is an injury 'long recognized as judicially cognizable.'" *Tex. Cable & Telecomms. Ass'n v. Hudson*, 265 F. App'x 210, 218 (5th Cir. 2008) (quoting *Heckler v. Mathews*, 465 U.S. 728, 738 (1984)). Individual Plaintiff pled that Texas has "erect[ed] a barrier that makes it more difficult" for him to solemnize marriages than a religious individual. *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am.*, 508 U.S. at 666. Thus, the Court concludes that Individual Plaintiff has alleged sufficient facts at this stage to proceed against Defendant Nicholson, the County Clerk.

However, Individual Plaintiff's injury against the District Attorney is only based on his threat of prosecution. Defendant Sorrells does not erect any barrier for Individual Plaintiff's ability to solemnize marriage, but instead only enforces the criminal laws of Texas. Individual Plaintiff has not conducted an unauthorized marriage ceremony and thus he brings a pre-enforcement challenge to Section 2.202. As explained below, that is insufficient to support standing against Defendant Sorrells, the District Attorney.

The Fifth Circuit has developed a three-part test to determine whether a plaintiff has pre-enforcement standing. *Umphress v. Hall*, 133 F.4th 455, 463–64 (5th Cir. 2025). A plaintiff must demonstrate "(1) [he] has an 'intention to engage in a course of conduct arguably affected with a constitutional interest,' (2) his intended future conduct is 'arguably . . . proscribed by [the policy in question],' and (3) 'the threat of future enforcement of the [challenged policies] is substantial.'" *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) (second and third alterations in original) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014)).

Individual Plaintiff argues that he is not required to "first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute."[25] *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). While a true statement of law, it does not help Individual Plaintiff. To bring a pre-enforcement challenge, the caselaw requires a real, credible threat of prosecution.

For instance, *Terrace v. Thompson* involved plaintiffs who alleged in their complaint the Attorney General "threatened to and will take steps to enforce the act against the [plaintiffs]" if they violate the law. 263 U.S. 197, 211–12 (1923). The Supreme Court later remarked that "[g]iven *this genuine threat* of enforcement, [the Supreme Court] did not require, as a prerequisite to testing the validity of the law in a suit for injunction, that the plaintiff[s] bet the farm, so to speak, by taking the violative action." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) (emphasis added) (explaining the Supreme Court's holding in *Terrace*).

Here, the facts alleged support neither a credible nor a substantial threat of prosecution. The only fact in Plaintiffs' Complaint about Defendant Sorrells is that he "may bring criminal charges" against an unauthorized celebrant who solemnizes a wedding.[26] This injury is wholly speculative.

Individual Plaintiff also attempts to liken the facts of this action to a recent Fifth Circuit case that granted a pre-enforcement challenge to speech policies at a university. *See Speech First Inc.*, 979 F.3d 319. But a notable distinction exists. The plaintiffs in *Speech First* lodged a challenge to university policies *intended to regulate speech*. *Id.* at 322. The Circuit clarified when a challenge is raised against "recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Id.* at 335 (quoting *N.H.*

---

[25] Pls.' Resp. to Att'y Gen. 8, ECF No. 22; Pls.' Resp. to Defs. 8, ECF No. 21.
[26] Pls.' Am. Compl. ¶ 31, ECF No. 11.

*Right to Life PAC v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996)). Here, Section 2.202 does not facially restrict expressive activity. Plaintiffs admit as much in their free speech claim.[27] Section 2.202 only regulates who is authorized to sign a marriage license in Texas. Critically, the Texas Family Code does not have a verification system for "officers of a religious organization." *See* TEX. FAM. CODE §§ 2.202(a); 2.206; 2.208. Thus, it is unlikely—if not impossible—for a non-authorized celebrant to be discovered, much less prosecuted.

Even under the relaxed standing requirements to assert a free speech claim, the Court must dismiss Individual Plaintiff's claim against Defendant Sorrells because Plaintiffs' Complaint lacks a cognizable threat of prosecution, examples of past enforcement, sufficient factual pleadings, and expressive activity that is facially restricted. *See, e.g.*, *Terrace*, 263 U.S. at 211–12 (actual threat of prosecution); *Steffel,* 415 U.S. at 459 (past enforcement); *Umphress*, 133 F.4th at 465–67 (more in-depth factual allegations about enforcement); *Speech First Inc.*, 979 F.3d at 322 (facially restricted expressive activity). Unlike other cases involving pre-enforcement challenges, Individual Plaintiff provides no examples of past enforcement, no public statements regarding enforcement of the statute, and no facts about how the District Attorney *could know* a secular celebrant violated the law. Instead, this action is much more like *Clapper v. Amnesty International* where the plaintiffs "fail[ed] to offer any evidence that their communications ha[d] been monitored" under the challenged statute. 568 U.S. 398, 411 (2013). Accordingly, Individual Plaintiff has no standing to pursue his action against the District Attorney.

---

[27] *See* Pls.' Resp. 23, ECF No. 22 (admitting "Section 2.202 does not explicitly regulate what is said during a marriage ceremony," but arguing that this action is analogous to *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023)).

### b. Redressability

Having determined that Individual Plaintiff has not alleged an injury in fact against the District Attorney, the Court must next consider whether this action can proceed without Defendant Sorrells. It cannot.

"To demonstrate redressability, a plaintiff must establish that the practical consequence of a declaration 'would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.'" *Ctr. for Inquiry, Inc. v. Warren*, 845 F. App'x 325, 328 (5th Cir. 2021) (unpublished) (quoting *Utah v. Evans*, 536 U.S. 452, 464 (2002)). A panel of the Fifth Circuit determined that a previous filing of this action could not proceed without the local prosecutor. *Id.* at 328–29. In that action, a panel of the Fifth Circuit held that the plaintiffs did not have standing because "[t]he County Prosecutor [was] not a party in this case, and the [defendant county clerk] does not prosecute or investigate criminal offenses." *Id.* at 329. The panel concluded that without the prosecutor "[a] favorable decision would not fully redress the [Plaintiffs'] purported injury and eradicate the barrier to legally solemnizing marriages." *Id.*

Like the previous lawsuit, Plaintiffs only have a viable injury against the County Clerk responsible for recording marriages conducted by secular celebrants. Any order from this Court that does not include the District Attorney, responsible for prosecuting or investigating criminal offenses, cannot adequately provide relief to Plaintiffs. *See* TEX. FAM. CODE § 2.202(c) (providing for a Class A misdemeanor for knowingly conducting a marriage ceremony without the designated authority under Section 2.202(a)). Plaintiffs conceded at the hearing that without the District Attorney, this case must be dismissed.[28]

---

[28] *See* Hr'g Tr. at 53:15-18, ECF No. 32 ("[I]t needs to include both of them, according to the Fifth Circuit in the past case, have that redressability problem. We're willing to admit that.").

Even if the Court rules on behalf of Individual Plaintiff against Defendant Nicholson, thereby enjoining the County Clerk, his injuries would not be redressed without a favorable judgment against the District Attorney. A ruling in Individual Plaintiff's favor, thus, would not amount to "relief that directly redresses the injury suffered." *Evans*, 536 U.S. at 464. Accordingly, the Court rules that Individual Plaintiff's action is **DISMISSED without prejudice**.

### 2. Associational Standing

CFI attempts to assert associational standing. When an organization seeks relief on behalf of its members, it must establish associational standing. *Hunt v. Wash. St. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The associational standing doctrine permits a traditional membership organization "to invoke the court's remedial powers on behalf of its members." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). To establish associational standing, the organization must satisfy a three-prong test by showing that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (quoting *Hunt*, 432 U.S. at 343).

Here, CFI cannot satisfy the three-prong *Hunt* test because its members, namely Individual Plaintiff, do not have standing. CFI did not argue there is standing for any other member. Accordingly, this case is **DISMISSED without prejudice**.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 16). The Attorney General's Motion to Dismiss is **GRANTED in part** and **DENIED in part** (ECF No. 20). The Court denies in part because the Court rejects the Attorney General's assertion

that CFI is a "religious organization." Accordingly, Plaintiffs' claims are hereby **DISMISSED without prejudice.** Final judgment shall follow separately.

      **SO ORDERED** this **2nd day** of **July, 2025**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**